UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

AARON L. HIGHTOWER,

                                    Plaintiff,

                                                                1:19-cv-00577
v.                                                              (GTS/TWD)

GREGORY VEITCH, Chief of Police, Saratoga
Springs Police Department, *et al.*,

                                    Defendants.

───────────────────────────────────────────

APPEARANCES:

AARON L. HIGHTOWER
*Plaintiff, pro se*
17-A-3545
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

        The Honorable Glenn T. Suddaby, Chief United States District Judge, has referred *pro se*

Plaintiff Aaron L. Hightower's amended complaint to this Court for a report and

recommendation pursuant to 28 U.S.C. § 1915(e).  (*See* Dkt. Nos. 10, 11, 12.)  The amended

complaint asserts claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against

Defendants Gregory Veitch ("Veitch"), Chief of Police, Saratoga Springs Police Department

("Police Department"); Police Department Sergeant Andrew Prestigiacomo ("Prestigiacomo");

Police Department Patrolman Shawn Thorpe ("Thorpe"); and the City of Saratoga Springs (also

the "City").  (Dkt. No. 10.)  For the reasons explained below, the Court recommends that the

amended complaint be accepted for filing, that Thorpe be directed to respond to Plaintiff's §§

1981 and 1983 Fourth Amendment claims, and that all other claims be dismissed with prejudice and without leave to amend.

## I.      PROCEDURAL BACKGROUND

On or about May 15, 2019, Plaintiff commenced this action by filing a complaint, accompanied by an application to proceed *in forma pauperis* ("IFP"), asserting claims pursuant to §§ 1981(a), 1983 and 1986 against Veitch, Prestigiacomo, Thorpe; the City of Saratoga Springs, the County of Saratoga Springs (also the "County"); and Saratoga County Assistant District Attorney Matthew Coseo ("Coseo").  (Dkt. No. 1, 2.)

In accordance with § 1915, this Court reviewed those submissions and issued an Order and Report-Recommendation on June 21, 2019, granting Plaintiff's IFP application[1] and recommending that (1) Plaintiff's § 1981(a) and § 1983 Fourth Amendment claims for unreasonable search and seizure, false arrest, and malicious prosecution against Thorpe be permitted to proceed; (2) Plaintiff's claims against Coseo and the County of Saratoga be dismissed with prejudice; and (3) Plaintiff be permitted a reasonable opportunity to amend his defective claims against Prestigiacomo, Veitch, and the City.  (Dkt. No. 9.[2])  Plaintiff did not file an objection to the Report-Recommendation.  (*See* Dkt. Report.)

However, on July 18, 2019, prior to the District Court's action on the Report-Recommendation, Plaintiff filed a proposed amended complaint.  (Dkt. No. 10.)  On September 27, 2019, the District Court accepted and adopted the Report-Recommendation in its entirety and

---

[1]  Plaintiff should note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2]  The Court further stated that a claim under § 1986 for neglect to prevent a conspiracy to interfere with civil rights is contingent upon a plaintiff having a valid conspiracy claim under 42 U.S.C. § 1985.  (Dkt. No. 9 at 1 n.1 (citing *Mian v. Donaldson, Lufkin & Jenrette Securities*, 7 F.3d 1085, 1088 (2d Cir. 1993)).)  The original complaint did not assert a claim under §1985 and, therefore, the Court found Plaintiff had no claim under § 1986.  (*Id.*)

ordered, *inter alia*, Plaintiff to either notify the Court that he wished to proceed on the already filed proposed amended complaint (Dkt. No. 10) or file a revised amended complaint. (Dkt. No. 11.) By letter dated October 21, 2019, Plaintiff notified the Court that he wished to proceed on the previously filed amended complaint. (Dkt. No. 12.) Accordingly, Plaintiff's amended complaint has been referred to this Court for initial review.

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    Standard of Review

28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner[3] seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both §§ 1915 and 1915A are available to evaluate prisoner *pro se* complaints).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325

---

[3] As used in this section, the term "prisoner" means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

(1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). Moreover, a *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B.    Summary of the Amended Complaint[4]

On December 18, 2015, at approximately 3:40 am, Plaintiff, an African-American, who was on Caroline Street in Saratoga Springs, offered to give a friend and his wife, both of whom are Caucasian-Americans, a ride to their motel. (Dkt. No. 10 at ¶¶ 9, 12.) Upon crossing the street, Plaintiff noticed the headlights of a marked police car at the top of Caroline Street and Broadway looking down onto Caroline Street. (*Id*. at ¶¶ 10, 13.) After assuring the right of way, Plaintiff and his friends crossed Caroline Street and entered Plaintiff's vehicle. (*Id*. at ¶ 11.)

According to Plaintiff, at no time did he violate any New York State law or City of Saratoga Springs ordinance. (*Id*.) As Plaintiff was lawfully operating his vehicle, Thorpe, a Caucasian-American, began following the vehicle and ultimately activated his lights directly behind Plaintiff and effected an unlawful traffic stop of Plaintiff. (*Id*. at ¶¶ 14-15.)

---

[4] The facts as pleaded in the original complaint and the amended complaint are substantially the same. (*Compare* Dkt. No. 1, *with* Dkt. No. 10.)

Thorpe approached Plaintiff's vehicle and began interrogating him because Plaintiff was an "unknown" African-American in the City, which is "predominately" Caucasian-American. (*Id*. at ¶¶ 15, 16.) Plaintiff produced his valid New York license and registration upon request by Thorpe. (*Id*. at ¶ 16.) Thereafter, two more non-party Saratoga Springs Police Officers approached the scene and Plaintiff stepped out of his vehicle in compliance with Thorpe's order. (*Id*. at ¶ 17.) Thorpe then required Plaintiff to go through a series of tests, allegedly without justification and to vex, harass, and humiliate Plaintiff due to Thorpe's ill-will and hatred towards Plaintiff for being an African-American in the City, a predominately white community. (*Id*. at ¶ 18.) Plaintiff claims that nothing in Thorpe's unwarranted interrogation of Plaintiff gave him any evidence of probable cause that Plaintiff had violated any New York State law or City ordinance. (*Id*. at ¶ 19.) Even after the "involuntary and unwarranted interrogation," Thorpe did not return Plaintiff's license and registration, and while he did not arrest Plaintiff at that time, Thorpe did not permit Plaintiff to re-enter his vehicle to go home. (*Id*. at ¶ 20.)

Plaintiff alleges Thorpe willingly and knowingly deprived him of his rights to be secure in his person against unlawful and unreasonable seizure of his person and denied him rights and privileges that were afforded to the Caucasian-Americans who were on Caroline Street in the City of Saratoga Springs. (*Id*. at ¶ 21.)

Thorpe also threatened to arrest Plaintiff for the actions of his passenger for the purpose of vexing and harassing him further by instilling fear in him "through the use of intimidation, due to his ill-will and hatred towards [him] for being African-American" in the predominately Caucasian-American community of the City of Saratoga Springs. (*Id*. at ¶ 23.)

At approximately 4:10 a.m., Plaintiff gave Thorpe consent to search his vehicle under duress caused by Thorpe and his ill-will towards Plaintiff, leading Plaintiff to believe if he did

not consent, Thorpe would retaliate against him.  (*Id*. at ¶ 24.)  After the "unlawful and unreasonable" search, Thorpe falsely arrested Plaintiff and transported him to the City of Saratoga Springs Police Department.  (*Id*. at ¶¶ 27-28.)

While being detained at the police station, Plaintiff was allegedly informed by Thorpe that he had blown under the legal limit on his breathalyzer test but had to have blood drawn to determine who possessed the crack cocaine.  (*Id*. at ¶ 31.)  When Thorpe told Plaintiff he would lose his driver's license if he did not sign a consent to have his blood drawn, Plaintiff consented. (*Id*. at ¶ 32.)  A short while later Thorpe told Plaintiff he had a right to refuse a blood test but it did not matter since Plaintiff had already consented.  (*Id*. at ¶ 33.)

On December 18, 2015, Thorpe submitted a report to Prestigiacomo, knowing his statements were false and contrived maliciously without probable cause or justification, in order to justify the arrest of Plaintiff for being African-American in the City of Saratoga Springs.  (*Id*. at ¶ 38.)

Plaintiff alleges that with the advice, consent, and direction of Prestigiacomo, Thorpe wantonly, maliciously, and without reasonable probable cause, caused Plaintiff to appear in Saratoga City Court on charges of possessing crack-cocaine, driving while intoxicated, driving while his ability was impaired by drugs, and driving on the sidewalk.  (*Id*. at ¶ 39.)  Plaintiff was released on a $500 cash bond and lost his job delivering pizza as a result of the charges.  (*Id*. at ¶¶ 40, 41.)

Thorpe did not appear in court on the date of Plaintiff's trial on the charges and, therefore, the charges were dismissed by City Judge James E. Doern on July 25, 2016.  (*Id*. at ¶ 42.)  Plaintiff seeks monetary damages.  For a complete statement, reference is made to the amended complaint.  (*See generally* Dkt. No. 10.)

**C.    Analysis**

**1.    City of Saratoga Springs**

Plaintiff claims the City violated §§ 1981 and 1983, by denying him due process of law and equal protection under the Fourteenth Amendment and authorizing, tolerating, and ratifying the misconduct at issue by:

> A.)  Failing to properly discipline, restrict and control employees, including Thorpe and Prestigiacomo, known to be irresponsible in their dealings with written reports, statements and filed informations and/or complaints offered and filed by them against African-American citizens;
>
> B.) failing to take adequate precautions in the hiring, promotion, and retention of police personnel, including Thorpe and Prestigiacomo;
>
> C.) failing to forward the office of the District Attorney of Saratoga County evidence of criminal acts committed by police personnel; [and]
>
> D.) failing to establish and/or assure the functioning of a bona fide and meaningful departmental system for dealing with police misconduct and complaints thereof, but instead responded to such misconduct and/or complaints with a "Code of Silence" used within the brotherhood amongst the Saratoga Springs Police Department with bureaucratic power and official denials calculated to mislead the public.
>
> This failure amounted to deliberate indifference and deliberate misconduct which caused the deprivation suffered by the Plaintiff and constitutes official misconduct under New York State law.

(Dkt. No. 10 at ¶ 55.)  Plaintiff also contends the alleged "discrimination and deprivations" were "consistent with an institutionalized practice of the Saratoga Springs Police Department, which was known to and ratified by Gregory Veitch and the City of Saratoga Springs."  (*Id*. at ¶ 53.) Additionally, the City did not take any "action to prevent Saratoga Springs police personnel from continuing to engage in such conduct."  (*Id*.)  He claims the City of Saratoga Springs "had prior

knowledge of the vicious propensities of Thorpe and Prestigiacomo, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority." (*Id*. at ¶ 54.) Specifically, he claims the "failure to properly trai[n] Thorpe and Prestigiacomo included the failure to instruct them in applicable provisions of the Vehicle and Traffic Laws of New York State and how to take proper preventative remedial measures to correct and report police misconduct." (*Id*.)

### a.    Section 1983

Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional  rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection – an affirmative link– between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).

Plaintiff has failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of the City authorizing, permitting, allowing, or tolerating racial animosity and intentional discrimination toward African-American citizens, or any affirmative link between such a policy and Thorpe, Prestigiacomo, or Veitch's actions with regard to Plaintiff.  Plaintiff's conclusory allegation of a "Code of Silence" is insufficient.

Furthermore, Plaintiff's conclusory statements that the City of Saratoga Springs had "prior notice of the vicious propensities of Thorpe and Prestigiacomo, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority," without supporting factual allegations, fails to state a *Monell* claim against the City that is plausible on its face.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation."); *see also Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (*Monell* claim requires "factual allegations that would support a plausible inference that the [county's] 'policies' or 'customs' caused . . . violations . . . of rights.").

Based upon the foregoing, the Court recommends that Plaintiff's § 1983 *Monell* claim against the City of Saratoga Springs be dismissed for failure to state a claim.

### b.   Section 1981

The Court also finds Plaintiff has failed to state a claim for violation of § 1981.  A municipality cannot be held liable on a § 1981 claim solely on a theory of *respondeat superior*. *Patterson v. City of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).  As with a § 1983 *Monell* claim, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom."  *Jett v. Dallas Independent School District*, 491 U.S. 701, 733-36 (1989).  As

noted above, Plaintiff has failed to allege facts plausibly showing that the actions of Thorpe, Prestigiacomo, or Veitch were performed pursuant to a municipal policy or custom of the City authorizing, permitting, allowing, or tolerating racial animosity and intentional discrimination toward African-American citizens and conclusory allegations of a "Code of Silence" are insufficient.

Based upon the foregoing, the Court recommends that Plaintiff's claim under § 1981 against the City of Saratoga Springs be dismissed for failure to state a claim.

### 2.    Veitch

Plaintiff sues Veitch under §§ 1983 and 1981 in his official capacity only.  (Dkt. No. 10 at ¶ 6.)  As Chief of Police of the Saratoga Spring Police Department, Plaintiff claims Veitch is the "responsible party for supervising the training, instructing, discipline, control and conduct of Thorpe and Prestigiacomo" and is "charged with promulgating all orders, rules, instructions and regulations of the Saratoga Springs Police Department."  (*Id*.)  Like his claims against the City, Plaintiff alleges the discrimination and deprivations detailed above were "known to and ratified by" Veitch and that he failed to take any "effective action to prevent Saratoga Springs police personal from continuing to engage in such misconduct."  (*Id*. at ¶ 53.)  Plaintiff claims Veitch had "prior notice of the vicious propensities of Thorpe and Prestigiacomo, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority."  (*Id*. at ¶ 54.)  He alleges Veitch "authorized, tolerated as institutional practices, and ratified the misconduct" described above.  (*Id*. at ¶ 55.)

### a.    Section 1983

Inasmuch as the Court is recommending dismissal of the § 1983 *Monell* claim against the City of Saratoga Springs, the Court also recommends dismissal of the official capacity claim

against Veitch.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotation marks and citations omitted).[5]

### b.    Section 1981

The Court also finds Plaintiff has failed to state a claim against Veitch under § 1981.  The purpose of § 1981 is "to protect from discrimination identifiable classes of people who are subjected to intentional discrimination because of their ancestry or ethnic characteristics."  *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  Section 1981(a) prohibits "intentional racial discrimination" by public or private actors.  *Brown v. City of Oneida*, 221 F.3d 329, 339 (2d Cir. 2000).

"To establish a claim under § 1981, a plaintiff must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities."  *Id*.; *see also Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (§ 1981 requires that a defendant's actions have been intentionally and purposefully discriminatory, and plaintiff's race must have been the motivating factor behind the discriminatory act).  It is "well established" that a plaintiff bringing a § 1981 claim must allege with specificity "circumstances giving rise to

---

[5]  Even if Veitch was sued in his individual capacity, which he is not, for the reasons explained in the 2019 Report-Recommendation (Dkt. No. 9 at 13-14) and *infra*, Plaintiff's vague and conclusory allegation that Veitch failed to properly train and supervise Thorpe and Prestigiacomo fails to state a supervisory liability claim under § 1983.

a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713

(2d Cir. 1994). "Conclusory allegations" of racially motivated animus are insufficient. *Id.*

Plaintiff has failed to allege facts plausibly showing any action by Veitch suggesting an

intent on his part to discriminate against Plaintiff because of race.

Based on the foregoing, the Court finds Plaintiff has failed to state a claim against Veitch

under either §§ 1981 or 1983 and recommends that Plaintiff's claims be dismissed.

### 3.    Prestigiacomo

Plaintiff sues Prestigiacomo in both his individual and official capacity and asserts claims

pursuant to §§ 1983, 1981, 1985, and 1986. (Dkt. No. 1 at ¶¶ 5, 51.) As a Sergeant in the

Saratoga Springs Police Department during the relevant time period, Plaintiff claims he was

"responsible" for "supervising the control, conduct and discipline of Thorpe." (*Id.* at ¶ 5.)

Specifically, Plaintiff claims Prestigiacomo "should have known that the conduct of Thorpe was

likely to occur when he advised, consented[,] and allowed Thorpe to misuse the power bestowed

upon him by the City of Saratoga Springs to maliciously prosecute" Plaintiff. (*Id.* at ¶ 48.)

Plaintiff contends Prestigiacomo "failed to take any remedial measures to guard against the

conduct of Thorpe when he decided not to uphold the 'Code of Ethics' set forth by the Saratoga

Springs Police Department," which resulted in the above detailed "deprivations." (*Id.*)

Liberally construed, Plaintiff brings a supervisory liability claim against Prestigiacomo

for failure to "properly instruct, supervise and discipline Thorpe." (*Id.* at ¶ 49.) Plaintiff also

claims Prestigiacomo "participated directly" in the "unlawful detention and malicious

prosecution" of Plaintiff. (*Id.* at ¶ 50.) Plaintiff alleges Thorpe submitted reports to

Prestigiacomo and "with the advice, consent and direction of Prestigiacomo, on December 18,

2015, Thorpe wantonly and willingly caused Plaintiff to be maliciously prosecuted and

unlawfully charged with various false crimes." (*Id*. at ¶¶ 38, 39.) He further claims

Prestigiacomo had "knowledge of the widespread and pervasive custom and practice of Saratoga

Springs Police Department to invoke the 'Code of Silence' when police misconduct and

intentional discrimination towards African-Americans were used, and had the power to prevent

the commission of such conspiratorial wrongs, and neglected to do so." (*Id*. at ¶ 50.)

### a.    Sections 1981 and 1983

As an initial matter and for the reasons discussed above, because the Court is

recommending dismissal of the § 1983 *Monell* claim against the City, the Court also

recommends dismissal of the official capacity claim against Prestigiacomo. *See Kentucky*, 473

U.S. at 165. ("Official-capacity suits . . . generally represent only another way of pleading an

action against an entity of which an officer is an agent. As long as the government entity

receives notice and an opportunity to respond, an official-capacity suit is, in all respects other

than name, to be treated as a suit against the entity.") (internal quotation marks and citations

omitted).

As to the individual capacity claims, personal involvement in alleged constitutional

deprivations is a prerequisite to an award of damages under §1983. *Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994). "Because vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 ("Government officials

may not be held liable for the unconstitutional conduct of their subordinates under a theory of

*respondeat superior*."). "Holding a position in a hierarchical chain of command, without more,

is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-

1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v.*

*Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

"Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of a subordinate employee will not suffice to establish the requisite personal involvement and support a finding of liability" on a § 1983 claim.  *White v. Fischer*, No. 9:09-CV-240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010) (citing *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d. Cir. 2009)).

Here, the Court finds Plaintiff's totally naked assertions regarding Prestigiacomo, which are wholly devoid of enhancement, fail to state a claim under §§ 1981 and 1983.

### b.    Conspiracy

The Court also finds the amended complaint fails to state a claim for conspiracy against Prestigiacomo under §§ 1983, 1985, and 1986.  The elements of a conspiracy claim under § 1983 are: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages.  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  "[T]o make out a violation of § 1985(3), . . . the plaintiff must allege . . . four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). In addition, "[t]he conspiracy must be motivated by racial animus." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000). A claim under § 1986 for neglect to prevent a conspiracy to interfere with civil rights is contingent upon a plaintiff having a valid conspiracy claim under 42 U.S.C. § 1985. *See Mian*, 7 F.3d at 1088 (2d Cir. 1993).

"[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (internal quotations and citation omitted); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554). Moreover, conspiracy claims under §§ 1983 and 1985 "fail[ ] as a matter of law where there is no underlying constitutional violation." *Tirse v. Gilbo*, 15-CV-0987 (GTS/ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016).

Here, inasmuch as the Court is recommending dismissal of the predicate claims against Prestigiacomo, the Court also recommends dismissing the conspiracy claims under §§ 1983 and 1985. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *9 (N.D.N.Y. July 24, 2019) (collecting cases), *report-recommendation adopted by* 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019). Additionally, the Court finds Plaintiff's allegations, even liberally construed, are impermissibly vague and conclusory to plausibly suggest a conspiracy under §§ 1983 and 1985. For example, Plaintiff alleges:

> Thorpe and Prestigiacomo, acting in their individual capacities and under color of law, having conspired together, reached a mutual understanding and acted to undertake a course of conduct that violated the Plaintiff's civil rights, at the Saratoga Springs Police Department, to wit: . . . agreed and acted to intentionally [(1)] unlawfully imprison the plaintiff; [(2)] fabricate and contrive the charges lodged against the plaintiff to maliciously prosecute him; [(3)] submit false police and incident reports as well as statements to corroborate the fabricated and contrived charges against the plaintiff with the intent to procure the unlawful detention, arrest, search and seizure of the plaintiff; [(4)] abuse a process when Thorpe filed a misdemeanor complaint and [three] simplified informations (sic) against the plaintiff . . . ; and [(5)] practice a custom within the Saratoga Springs Police Department that did not report the misconduct of their peers or subordinates known as the "Code of Silence" with blanketed under a 'brother-hood' amongst Saratoga Springs Police officers.

(Dkt. No. 10 at ¶ 45.) Moreover, Plaintiff's claims also would likely be barred by the "intra-agency conspiracy" doctrine, which provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002); *see also Wellington*, 2019 WL 3315181, at *9 ("[E]ven if [the plaintiff's] conspiracy claims were found to be more than conclusory as pleaded, [his] claims would likely be barred by the 'intra-agency conspiracy doctrine.'"); *see, e.g.*, *Griffin-Nolan v. Providence Washington Ins. Co.*, No. 04-CV-1453 (FJS/GJD), 2005 WL

1460424, at *10-11 (N.D.N.Y. June 20, 2005) (dismissing the plaintiff's conspiracy claims where the defendants were officers of the City of Syracuse and the plaintiff did not allege that the individual defendants had a personal interest in their alleged conspiracy); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (dismissing the plaintiff's conspiracy claims where the officers were part of a single corporate entity, the City of New York, and plaintiff did "not provide any evidence to suggest that either of the officers were motivated by an independent personal stake in his arrest and prosecution").

Lastly, because a § 1986 claim only provides a cause of action against anyone with the power to prevent a § 1985 violation who fails to do so, it must be predicated upon a valid § 1985 claim. *See Witlz v. New York University*, No 1:18-cv-0123 (GHW)(SDA), 2019 WL 721658, at *14 (S.D.N.Y. Feb. 1, 2019). Because the Court finds Plaintiff has not stated a viable § 1985 claim, Plaintiff has no claim under § 1986.

Based on the foregoing, the Court finds Plaintiff has failed to state a claim against Prestigiacomo under §§ 1981, 1983, 1985, and 1986 and recommends that Plaintiff's claims be dismissed.

### 4.    Thorpe

Plaintiff sues Thorpe in both his individual and official capacity and asserts claims pursuant to §§ 1981, 1983, 1985, and 1986. (Dkt. No. 1 at ¶¶ 5, 51.)

### a.    Sections 1981 and 1983

As an initial matter and for the reasons discussed above, because the Court is recommending dismissal of the § 1983 *Monell* claim against the City, the Court also recommends dismissal of the official capacity claim against Thorpe. *See Kentucky*, 473 U.S. at 165.

18

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Thorpe be directed to respond to Plaintiff's § 1981 and § 1983 Fourth Amendment claims for search and seizure in connection with the search of Plaintiff's vehicle and blood test, false arrest, and malicious prosecution.[6]  The Court expresses no opinion as to whether these claims under §§ 1981 and 1983 can withstand a properly filed dispositive motion.

### b.    Conspiracy

However, the Court also finds the amended complaint fails to state a claim for conspiracy against Thorpe under §§ 1983, 1985, and 1986.  First, as set forth above, to set forth a claim of conspiracy under §§ 1983 and 1985, plaintiff must show "an agreement existed between two or more state actors." *Vega*, 610 F. Supp. 2d at 202.  Inasmuch as the Court is recommending dismissal of all claims against Prestigiacomo, Plaintiff's claims against Thorpe necessarily fails. Second, the Court finds Plaintiff's allegations, even liberally construed, are impermissibly vague and conclusory to plausibly suggest a conspiracy.  Third, Plaintiff's conspiracy claims also would likely be barred by the "intra-agency conspiracy" doctrine.  Fourth, because the Court finds Plaintiff has not alleged a viable § 1985 claim, Plaintiff has no claim under § 1986.

Therefore, the Court recommends dismissing Plaintiff's conspiracy claims under §§ 1983, 1985, and 1986.

## III.    CONCLUSION

For the reasons stated above, the Court finds only Plaintiff's §§ 1981 and 1983 Fourth Amendment claim for search and seizure in connection with the search of Plaintiff's vehicle and

---

[6]  The Court finds that Plaintiff has alleged "circumstances giving rise to a plausible inference of racially discriminatory intent" with sufficient specificity to survive initial review. *See Yusuf*, 35 F.3d at 713.

blood test, false arrest, and malicious prosecution against Thorpe survive *sua sponte* review. Because Plaintiff has already been afforded the opportunity to amend, the Court recommends that all remaining claims be dismissed with prejudice and without leave to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. Mar. 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord*, Smith v. Fischer, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. Mar. 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008); *see also Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once).

ACCORDINGLY, it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 10) be accepted for filing; and it is further

**RECOMMENDED** that Plaintiff's §§ 1981 and 1983 Fourth Amendment claims for unreasonable search and seizure, false arrest, and malicious prosecution against Defendant Thorpe survive initial review; and it is further

**RECOMMENDED** that all remaining claims be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted and without leave to amend; and it is further

**RECOMMENDED** that the Clerk be directed to terminate Defendants City of Saratoga Springs, Veitch, and Prestigiacomo from this action; and it is further

**RECOMMENDED** that if the District Court adopts this Report-Recommendation, the Clerk be directed to: (1) provide the superintendent of the facility that Plaintiff designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 5) and notify that official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915 through periodic withdrawals from his inmate accounts; (2) provide a copy of Plaintiff's authorization form (Dkt. No. 5) to the Financial Deputy of the Clerk's Office; (3) issue a summons and forward it, along with a copy of the amended complaint (Dkt. No. 10), to the United States Marshal for service upon Defendant Thorpe; and (4) Defendant Thorpe be ordered to file a formal response to Plaintiff's amended complaint as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **<u>Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action</u>**; and it is further

21

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 21, 2020
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

***MEMORANDUM DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Kenneth Carl Groves, Sr. ("Plaintiff"), against
numerous employees of New York State or the Central New
York Psychiatric Center ("Defendants"), are Plaintiff's motion
to proceed *in forma pauperis,* his motion for a temporary
restraining order and preliminary injunction, and his motion
for appointment of counsel. (Dkt.Nos.2, 3, 4.)[1] For the
reasons set forth below, Plaintiff's motion to proceed *in
forma pauperis* is granted; his motion for a preliminary
injunction is denied; his motion for appointment of counsel
is denied; Plaintiff's claims of deliberate indifference to his
mental health needs against Defendants Bill, Carver and
DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's
claims against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged personal
involvement in the August 8, 2011 assault are *sua sponte*
dismissed without prejudice and with leave to amend in this
action in accordance with Fed.R.Civ.P. 15; Sgt. Sweet is *sua*

*sponte* dismissed without prejudice as a Defendant in this
action; the Clerk is directed to issue summonses, and the U.S.
Marshal is directed to effect service of process on Defendants
Davis, Sill, and Nicolette.

1       This is the fourth civil rights action filed by Plaintiff
        in this District. Generally, two of these actions arose
        out of Plaintiff's refusal to consent to a strip search
        and the subsequent actions taken against Plaintiff as
        a result of his refusal. *See Groves v. New York,* 09–
        CV–0406, Decision and Order (N.D.N.Y. filed May
        11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint
        pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The
        State of New York,* 9:09–CV–0412, Decision and Order
        (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting
        defendants' motion to dismiss the complaint pursuant
        to Fed.R.Civ.P. 12[b][6] ). The third action alleged
        numerous violations of Plaintiff's constitutional rights
        during the period July 23, 2009, and August 26, 2009,
        and was dismissed without prejudice upon Plaintiff's
        request in October, 2010. *See Groves v. Maxymillian,*
        9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct.
        8, 2010) (Suddaby, J.). As a result, it does not appear
        that the current action is barred because of res judicata,
        collateral estoppel, and/or the rule against duplicative
        litigation.

**I. RELEVANT BACKGROUND**

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with a
motion to proceed *in forma pauperis.* (Dkt. Nos.1, 2.)[2]
Liberally construed, Plaintiff's Complaint alleges that the
following constitutional violations against him occurred
during his confinement at Central New York Psychiatric
Center ("CNYPC"): (1) Defendants Davis and Sill used
excessive force against him under the Eighth and/or
Fourteenth Amendments; (2) Defendant Nicolette knew of
and failed to take action to protect Plaintiff from the
assault under the Eighth and/or Fourteenth Amendments;
(3) Defendants Bill, Carver, and DeBroize were deliberately
indifferent to his mental health needs under the Eighth and/
or Fourteenth Amendments; and (4) Defendants Bill, Carver,
DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed to
"adequately train the staff under their supervision" and to take
appropriate action in response to the incident. (*See generally*
Dkt. No. 1.) For a more detailed description of Plaintiff's
claims, and the factual allegations giving rise to those claims,
the reader is referred to Part III.B of this Decision and Order.

2012 WL 651919

2    At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis*. (Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

28 U.S.C. § 1915(e)(2)(B).[3]

3    The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### A. Governing Legal Standard

*2 It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view,

this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained

that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading

are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

4    *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5    *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision in *Erickson v. Pardus,* two weeks later) in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at \*7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under

the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009). [7]

[7]    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

## 1. Excessive Force Claims Against Defendants Davis, Still and Nicolette

 **\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses

Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

## 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.)

Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct.

2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

[8]    Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

[9]    Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any

of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

10    The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy

or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

11    *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at \*9 (N.D.N.Y. Feb.4, 2011). [13]

12    *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at \*7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwalt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at \*4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at \*5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13    *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF
A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,*

806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at \*2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at \*2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at \*2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and

the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. See *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. See *Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the

Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

14    For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341

(2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

[15]    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing**

**Groves v. Davis, Not Reported in F.Supp.2d (2012)**

2012 WL 651919

parties or their counsel. **Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office**

**and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 624081
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason R. WHITE, Plaintiff,

v.

Brian FISCHER, Commissioner, Dept.
of Correctional Services; Theresa A.
Knapp–David, Director, Classification and
Movement; and R. Woods, Superintendent,
Upstate Correctional Facility, Defendants.

No. 9:09–CV–240.
|
Feb. 18, 2010.

**Attorneys and Law Firms**

Jason R. White, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Brian J. O'Donnell, Esq., Asst. Attorney General,
of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

DAVID N. HURD, District Judge.

**\*1** Plaintiff, Jason R. White, commenced this civil rights
action in February 2009, pursuant to 42 U.S.C. § 1983.
By Report–Recommendation dated January 25, 2009, the
Honorable David E. Peebles, United States Magistrate Judge,
recommended that defendant's motion to dismiss (Dkt. No.
10) be granted, and that plaintiff's complaint in this action
be dismissed without leave to replead. No objections to the
Report–Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Peebles, the Report–
Recommendation is accepted and adopted in all respects. *See*
28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 10) is GRANTED;

2. Plaintiff's complaint in this action is DISMISSED without
leave to replead; and

3. The Clerk is directed to file judgment accordingly and close
the file.

IT IS SO ORDERED.

JASON R. WHITE,

Plaintiff,

-v.-

BRIAN FISCHER, THERESA A. KNAPP–DAVID, and R.
WOODS,

Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Jason R. White, a New York State prison inmate who
is proceeding *pro se* and *in forma pauperis,* has commenced
this action pursuant to 42 U.S.C. § 1983, alleging deprivation
of his civil rights. In his complaint, plaintiff asserts that
his transfer into special housing unit ("SHU") disciplinary
confinement at the Upstate Correctional Facility, to serve
what was originally intended to be a three-month disciplinary
sentence of less restrictive keeplock confinement imposed
while at another facility, represented a deprivation of a liberty
interest without the requisite procedural due process. As relief
for the violation, plaintiff's complaint seeks an award of
compensatory damages in the amount of $25,000.

In response to plaintiff's complaint, defendants have moved
seeking its dismissal for failure to state a cause of action
upon which relief may be granted. In their motion, defendants
argue that plaintiff's allegations do not demonstrate the
existence of a meritorious due process claim since, at best,
it implicates a failure of prison officials to comply with
governing regulations regarding transfers into an SHU unit,
a matter not of constitutional concern, noting further that
plaintiff has no constitutional right to be designated to
a particular correctional facility or to a desired security
classification. Defendants also seek dismissal of plaintiff's
claims against them based upon lack of personal involvement,
and additionally assert their entitlement to qualified immunity
from suit as a basis for their dismissal motion.

For the reasons set forth below, I find that White's complaint fails to set forth a plausible due process violation and that defendant Fischer is also entitled to dismissal of the claims against him based upon the lack of allegations showing of his personal involvement in the conduct allegedly giving rise to plaintiff's claims. I further recommend a finding that, even if plaintiff were able to plead a cognizable due process cause of action, defendants Knapp–David and Woods nonetheless should be granted qualified immunity from suit in this instance.

## I. *BACKGROUND* [1]

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964). I have also considered the exhibits attached to plaintiff's memorandum, which accompanied his complaint, to the extent that they are consistent with the allegations of his complaint. *See Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

**\*2**  Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"). *See generally* Complaint (Dkt. No. 1). At the times relevant to his claims plaintiff was designated first to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York, and later to the Upstate Correctional Facility ("Upstate"), located in Malone, New York. *Id.,* § 6.

On March 28, 2007, while confined at Auburn, plaintiff was found guilty following a Tier I II disciplinary hearing of engaging in violent conduct and refusing a direct order, in violation of disciplinary rules 104.11 and 106.10, respectively. [2]  *See* Plaintiff's Memorandum (Dkt. No. 1–1) Exh. A. [3]  As a result of that determination plaintiff was sentenced to serve three months of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges. *See id.*

[2]    The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings

involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

[3]    Plaintiff filed what he labeled as a "memorandum of law", with exhibits attached, in conjunction with his complaint. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his ... memorandum." *Rivera v. Selsky,* No. 9:05–CV–0967, 2007 WL 956998, at \*1 n. 2 (N.D.N.Y. Jan. 5, 2007) (quoting *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, at \*1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

On April 11, 2007, while serving his keeplock sentence at Auburn, White was processed out of that facility and, following completion of an inter-prison transfer process which included a stop at another facility, was transferred into Upstate on or about April 13, 2007. Complaint (Dkt. No. 1) § 6. At Upstate, plaintiff was assigned to a two-person cell in the facility's SHU to serve the balance of his disciplinary confinement sentence. [4]  *Id.*

[4]    Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky,* No. 01 CIV. 8235, 2002 WL 31040370, at \*4 n. 11 (S.D.N.Y. Sept. 12, 2002).

On April 23, 2007 plaintiff filed a grievance with prison authorities, arguing that his transfer into the SHU at Upstate was not authorized by DOCS directives. Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. C. The grievance was denied by the facility's Inmate Grievance Review Committee ("IGRC"). Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff appealed the denial to defendant Woods, the Superintendent at Upstate, who upheld the IGRC's unfavorable determination by decision dated May 15, 2007. Complaint (Dkt. No. 1) § 6 at p. 4B. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff's further appeal of the matter to the DOCS Central Office Review Committee ("CORC") was likewise unsuccessful. *Id.* Exh. E.

Also on April 23, 2007, plaintiff sent a letter to the DOCS Commissioner Brian Fischer, complaining of the SHU designation. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. F. That letter was referred by Commissioner Fischer to defendant Theresa A. Knapp–David, the DOCS Director of Classification and Movement. Complaint (Dkt. No. 1) § 6 at pp. 4B–4C. In response, defendant Knapp–David wrote to the plaintiff on May 7, 2007, advising that his SHU assignment was in accordance with established DOCS procedures. Plaintiff's Memorandum at (Dkt. No. 1.1) Exh. G.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on February 27, 2009, and was thereafter granted leave to proceed *in forma pauperis.* Dkt. Nos. 1, 4. Named as defendants in plaintiff's complaint are Commissioner Fischer; Director Knapp–David; and Upstate Superintendent R. Woods. Complaint (Dkt. No. 1) § 3. Plaintiff's complaint asserts a single cause of action for deprivation of procedural due process. *Id.,* § 7.

**\*3** Following service, in lieu of answering plaintiff's complaint, defendants filed a motion to dismiss asserting a variety of grounds for the relief sought. Dkt. No. 10. In their motion defendants argue, *inter alia,* that plaintiff's complaint 1) does not implicate a cognizable due process violation, 2) plaintiff's complaint fails to establish their personal involvement in the deprivation alleged; and 3) in any event they are entitled to qualified immunity. [5] Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 13, which is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

[5]   Defendant's also seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery in this matter pending final determination of their dismissal motion. Discerning no basis to conclude that plaintiff would be unduly prejudiced by such a stay, that application will be granted.

## III. *DISCUSSION* A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* –––U.S. ––––, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570 127 S.Ct. at 1974). When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)).

## B. *Procedural Due Process*

**\*4** In their motion, defendants assert that because plaintiff's due process claim rests on alleged violations of DOCS regulations, his complaint in fact fails to assert a cognizable due process claim.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Inmates' liberty interests may arise out of the Due Process Clause of the Fourteenth

Amendment, or state statute or regulation. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

Recognizing that lawful imprisonment necessarily restricts the rights and privileges of inmates, the Supreme Court has narrowly circumscribed the scope of liberty interests arising out of the Due Process clause to protect only the most basic liberty interests of prisoners. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869 (1983). Accordingly, the Due Process Clause does not guard against every change in the conditions of confinement having a substantial adverse impact on inmates, but only those conditions or restraints that "exceed[ ] the sentence in ... an unexpected manner." *Arce,* 139 F.3d at 333 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)).

In this instance plaintiff does not claim that he was denied procedural due process in connection with the disciplinary hearing that led to the imposition of a three-month period of keeplock confinement as a sanction. Instead, he argues that his due process rights were abridged after the sanction was imposed when, in violation of DOCS Directive No. 4933, [6] he was transferred from keeplock confinement at Auburn to an SHU cell at Upstate, and as a result required to endure a more restrictive confinement. Unfortunately for plaintiff, neither the Due Process Clause nor state statute or regulation give rise to a liberty interest in these circumstances.

[6]    Section 301.6(a) of DOCS Directive No. 4933 permits an inmate confined in a medium or minimum security facility, or at Upstate, to be admitted into an SHU for various reasons, which can include confinement pursuant to a Tier II or III hearing disposition. Plaintiff asserts that because he was transferred from Auburn, a maximum security facility, into an SHU unit, that section does not apply. Interestingly, a prior version of DOCS Directive No. 4933 provided, in relevant part, that

[a]n inmate who is assigned to keeplock status and who is transferred to a maximum security facility shall not be assigned to the special housing unit at the receiving facility. Such inmate shall be assigned to keeplock within general population and shall have the same rights and responsibilities as other keeplock inmate in that facility.

*Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998) (quoting prior version of 7 NYCRR § 301.6(h)).

Preliminarily, it is well recognized that an inmate has no constitutional right to be incarcerated at a particular correctional facility, "and transfers among facilities do

not need to be proceeded by any particular due process procedure." *Halloway v. Goord,* No. 9:03–CV01524, 2007 WL 2789499, at * 5 (N.D.N.Y. Sept. 24, 2007) (Kahn, J. and Treece, J.) [7] (citing *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005)) (other citation omitted); *see also, Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir.2009) (per curiam); *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998). As a result, the constitution did not present any impediment to plaintiff's transfer to Upstate.

[7]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

**\*5** Additionally, it is equally well established, as defendants now argue, that state regulations, including DOCS Directives, do not ordinarily confer constitutional rights sufficient to give rise to a due process claim. *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 (N.D.N.Y.2009). A state can, however, by statute or regulation confer a liberty interest that cannot be abridged without due process. *Black v. Lansberg,* No. 9:06–CV–1243, 2009 WL 3181111, at *3 (Sept. 29, 2009) (Suddaby, J., adopting Report and Recommendation of Lowe, M.J.). Nonetheless, contrary to plaintiff's contention, DOCS Directive No. 4933 does not give rise to a cognizable liberty interest.

It should be noted that on at least four separate occasions, addressing the same issues raised by the plaintiff in this case, this court has held that an inmate's transfer from keeplock to SHU after being sentenced to serve time in keeplock does not implicate a cognizable liberty interest. *McEachin v. Goord,* No. 9:06–CV–1192, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J. and Treece, M.J.) (dismissing complaint alleging that plaintiff was unlawfully transferred from keeplock to SHU while serving disciplinary sentence); *Halloway,* 2007 WL 2789499 (granting summary judgment dismissing claim that plaintiff should have received hearing before transfer to Upstate after sentenced to keeplock at Elmira Correctional Facility); *Carlisle v. Goord,* No. 9:03–CV–296, 2007 WL 2769566, at *2 n. 1 (N.D.N.Y. Sept. 21, 2007) (Scullin, S.J., adopting Report and Recommendation of Lowe, M.J.) (granting summary judgment finding that "an inmate has no liberty interest in not having his sentence of keeplock confinement at one prison converted to a sentence of SHU confinement at another facility without receiving a hearing regarding the conversion."); and, *Chavis v. Kienert,* 9:03–CV–0039, 2005 WL 2452150, at *9–10 (N.D.N.Y. Sept.

30, 2005) (Scullin, C.J.) (finding that transfer from keeplock at Coxsackie Correctional Facility to SHU at Upstate did not implicate a liberty interest). *See also, Holloway v. Grant,* No. 03–Civ. 3426, 2006 WL 851753, at *18–19 (S.D.N.Y. mar. 31, 2006 (dismissing claim plaintiff's claim that disciplinary sentence was improperly converted from keeplock sentence to SHU). These decisions are premised upon the court's conclusion that a transfer from keeplock in one facility to SHU in another does not implicate a constitutionally protected liberty interest and that "New York has not created, by regulation or statute, any liberty interest in remaining in one particular prison[,]" noting that "the DOCS ... possesses sole discretion to determine 'where a [state] inmate will be housed.' " *Halloway,* 2007 WL 2789499, at *5 (quoting *Grullon v. Reid,* No. 97 CIV. 7616, 1999 WL 436457, at *10 (S.D.N.Y. Jun. 24, 1999)) (other citations omitted). These cases are indistinguishable from the case presently before the court.

**\*6** Moreover, contrary to the interpretation offered by the plaintiff, the court has read section 301.6 of DOCS Directive No. 4933 as "explicitly permitt[ing] keeplock sentences to be served in SHU and subject to the same restrictions and amenities ...." *McEachin,* 2008 WL 1788440, at *4; *see also, Halloway,* 2007 WL 278499, at * 5 ("[N]ot only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same ... limitations.") and *Holmes,* 2006 WL 851753, at * 19 ("Section 301.6 ... relat[es] to keeplock admissions and authorizes placement of inmates in SHU 'at a medium or minimum security correctional facility or *Upstate Correctional Facility ...* for confinement pursuant to disposition of a disciplinary (Tier II) or superintendent's (Tier II hearing.' ") (emphasis in original).

In view of the foregoing, it is clear that plaintiff's transfer from Auburn, where he was keeplocked, to SHU confinement at Upstate does not implicate a liberty interest arising out of either Due Process Clause, or state statute or regulation. According to plaintiff's complaint, he was sentenced to keeplock after a Tier III disciplinary hearing; he does not allege that he was denied due process in connection with that hearing. The Tier II hearing that he was provided was all that was required by the constitution before he was sentenced to disciplinary confinement. *Holmes,* 2006 WL 851753, at *19. Plaintiff was entitled to no further procedure at the time of transfer to Upstate, and therefore cannot show that he was deprived of a protected liberty interest without due process of

law. [8] *Id.* Accordingly, I recommend that plaintiff's complaint be dismissed for failure to state a cause of action.

[8]    Plaintiff alleges a litany of differences between the conditions experienced while in keeplock at Auburn and those in SHU at Upstate asserting, for example, that with regard to visits, he was required to travel to and from them in handcuffs, had to remain in handcuffs if he needed to use the restroom, and was not permitted to take photographs, and also that he did not have the same opportunities for social interaction with other prisoners and had to sleep with a light on. Plaintiff's Memorandum (Dkt.1–1) at pp. 11–12. As a matter of law, these alleged conditions can hardly be characterized as "exceed[ing] his sentence in an unexpected manner" or as imposing an "atypical and substantial hardship upon the [plaintiff] in relation to the ordinary incidents of prison life". *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. "[T] fact that 'life in one prison is much more disagreeable than another does not itself signify that a Fourteenth Amendment liberty interest is implicated....." *Halloway,* 2007 WL 2789499, at * 7 (quoting *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Moreover, even if a liberty interest were alleged, plaintiff was afforded all the process he was due, by way of a disciplinary proceeding, before the alleged deprivation. *Carlisle,* 2007 WL 2769566, at * 3.

## C. *Personal Involvement*

In their motion, defendants also challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Two of the three defendants, Brian Fischer and Robert Woods, appear to be named as defendants in their supervisory capacities, based solely upon their positions as the DOCS Commissioner and the Superintendent at Upstate, respectively. As supervisors, neither of those individuals can be liable for damages under section 1983 solely by virtue of their respective positions as supervisor; there is no *respondeat superior* liability under section 1983. *Richardson*

*v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds, sub nom., Ashcroft v. Iqbal,* —–U.S. —–, 129 S.Ct. 1937.; *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

### 1. *Commissioner Fischer*

*7 Aside from allegations centering upon his role as the DOCS Commissioner, which are clearly insufficient in and of themselves to establish his liability, plaintiff's claims against defendant Fischer appear to revolve around the letter written by him to the Commissioner on or about April 23, 2007, complaining of his SHU confinement at Upstate. That letter, it appears from the limited materials now before the court, was referred to defendant Knapp–David for response. It is well established that when the Commissioner receives a letter and forwards it on to another individual for investigation and a response, his or her involvement in the constitutional violation cannot be predicated solely upon those circumstances. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Rivera v. Fischer,* No. 08–CV–6505L, 2009 WL 2981876, at *2 (W.D.N.Y. Sept. 18, 2009). I therefore recommend dismissal of plaintiff's claims against Commissioner Fischer on the basis of lack of his personal involvement.

### 2. *Superintendent Woods*

Plaintiff's claims against Superintendent Woods stand on slightly different footing. It is alleged that Superintendent Woods processed and affirmed the determination of the Upstate IGRC denying plaintiff's grievance regarding the relevant occurrences. His review of plaintiff's grievance arguably placed Superintendent Woods on notice of a constitutional violation, which was ongoing, at a time when he was potentially positioned to end the violation. On that basis I conclude that plaintiff has sufficiently alleged Superintendent Woods' personal involvement in the violation alleged to withstand defendants' dismissal motion. *See Charles v. New York State Dept. of Corr. Services,* No. 9:07–CV–1274, 2009 WL 890548, at *5–9 (N.D.N.Y. Mar. 21, 2009) (Hurd, J. and DiBianco, M.J .).

### 3. *Director Knapp–David*

Plaintiff's complaint alleges that in her position as the DOCS Director of Classification and Movement, defendant Knapp–David would have reviewed and approved his transfer from Auburn into Upstate. That allegation is buttressed by both her position with the DOCS and the fact that plaintiff's letter regarding the matter was referred to defendant Knapp–David for response explaining why the transfer was proper under DOCS regulations. On this basis, I conclude that plaintiff has stated a plausible claim against defendant Knapp–David and her personal involvement in the constitutional deprivations alleged.

### D. *Qualified Immunity*

In their motion, defendants also assert entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) (citations omitted). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions] were lawful, in light of clearly established law and the information the officer[ ] possessed." *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably."

*Pearson v. Callahan,* 555 U.S. ——, 129 S.Ct. 808, 815 (2009).

**\*8** In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. ——, 129 S.Ct. at 816. The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right, [9] *Kelsey,* 567 F.3d at 61, "the second step being whether the right is clearly established," *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ). [10] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently concluded in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." [11] *Pearson,* 555 U.S. ——, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

[9]   If no constitutional right would have been violated were the allegations established, no further inquiry regarding qualified immunity is necessary. *Kelsey,* 567 F.3d at 61 (quoting *Saucier* ).

[10]   In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful." *Okin,* 577 F.3d at 433 n. 11 (citation omitted).

[11]   Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct.

2806 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson,* —— U.S. ——, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (per curiam)).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156 (citation omitted). When deciding whether a right was clearly established at the relevant time, a court should consider

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*9** *Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). The objective reasonableness test will be met, and qualified immunity enjoyed, where government officers of reasonable competence could disagree as to whether by his or her alleged conduct the defendant would be violating the plaintiff's rights. *Okin,* 577 F.3d at 433 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). "If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity." *Okin,* 577 F.3d at 433 (citing *Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995)).

Applying the *Saucier* two-step inquiry here, I have already determined that plaintiff has failed to state a plausible constitutional violation. Moreover, even if plaintiff were able to distinguish the existing precedent in this district and allege a protected liberty interest that required that plaintiff be provided with additional due process before his transfer to Upstate, I conclude that any such right was far from a clearly established and that a reasonable person in the circumstances of defendant Woods and defendant Knapp–David would not have appreciated that the transfer of plaintiff into SHU confinement at Upstate represented a potential deprivation of plaintiff's procedural due process rights beyond those addressed by the hearing officer. Accordingly, as an additional basis for dismissal, I recommend that both defendants Woods and Knapp–David be granted qualified immunity from suit.

IV. *SUMMARY AND RECOMMENDATION*

At the heart of plaintiff's complaint in this action is his contention that his due process rights and DOCS regulations were violated when he was transferred from keeplock confinement at Auburn into an SHU cell at Upstate. Since such a claim, it is well established in this district, is not constitutionally cognizable, White has therefore failed to state a claim upon which relief may be granted. While plaintiff has failed to establish personal involvement on the part of Commissioner Fischer in an alleged deprivation and the claims against him should be dismissed on this additional basis, plaintiff has sufficiently alleged personal involvement

on the part of defendant Knapp–David and R. Woods. Nonetheless, I find that those two defendants are entitled to qualified immunity from suit, providing an additional basis for dismissal of plaintiff's claims against them. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 10) be GRANTED, and that plaintiff's complaint in this action be DISMISSED, without leave to replead; and it is further

ORDERED that pending a final determination on defendants' dismissal motion, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

 **\*10**  It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 624081

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ramon FLORES, Plaintiff,
v.
Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).
|
Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell, Hauppauge, NY, for defendants Thomas J. Spota III, Linda Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavita & Contini LLP, Garden City, NY, for defendants Robert C. Mitchell, Edward Vitale, and Douglas O'Connor.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

 *1 Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings this action against Suffolk County Executive Steve Levy ("Levy"), Suffolk County District Attorney Thomas J. Spota III ("Spota"), Assistant District Attorneys Linda Kevins ("Kevins"), Dana Brown ("Brown"), and John Scarglato ("Scarglato") (collectively, "defendant prosecutors"), Suffolk County Court Judge Louis J. Ohlig ("Judge Ohlig") (collectively, "County Defendants"), Legal Aid Society Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed" Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor") (collectively, "Legal Aid defendants"), John A. Bray, and Wilma Peterson, alleging malicious prosecution, conspiracy under 42 U.S.C. § 1983, and deliberate indifference, all arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to Fed.R.Civ.P. 12(c). For the following reasons, defendants' motions are granted.

I. BACKGROUNDA. Facts
The following facts are taken from the complaint and are not findings of fact by the court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

On February 20, 2003, Flores was arrested in Suffolk County and charged with one count of criminal assault in the second degree and one count of criminal contempt in the first degree. (Compl.¶ 1.) On February 25, 2003, an unidentified man came to see Flores and told him it was not advisable that he testify before the grand jury. (Compl.¶ 3.) The unidentified man stated that he was not an attorney and that he could not answer any additional questions. (Compl.¶ 3.) Later that afternoon, plaintiff appeared before the court and was provided with what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County Court and arraigned on indictment 493-03, which charged plaintiff with: 3 counts of assault in the second degree, 2 counts of criminal contempt in the first degree, aggravated contempt, and menacing. (Compl.¶ 4.) Plaintiff informed the court that he still had no formal attorney of record. (Compl.¶ 4A.) The Court appointed a Legal Aid attorney to represent plaintiff. (Compl.¶ 4B.) After the arraignment, plaintiff complained to Legal Aid attorney Douglas O'Connor that plaintiff was not provided with an attorney at an earlier stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a motion to dismiss would be filed on the grounds that plaintiff was not afforded an opportunity to testify before the grand jury, and that plaintiff was not provided counsel at the time the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his appointed Legal Aid attorney Edward Vitale. (Compl.¶ 5.) Plaintiff reviewed the proposed motion to dismiss. (Compl.¶ 5.) Plaintiff was unhappy that the motion did not raise the issue of plaintiff's prior lack of representation. (Compl.¶ 5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶ 5.) Vitale became angry with plaintiff and told plaintiff he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitalerequested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request

and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

**\*2** On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a loss of actual teeth, when, in fact, it was "broken bridge work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶

9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired with bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which wasbroken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

**\*3** On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

**B. Procedural History**
On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed an answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

**C. Defendant's Motion to Strike**
On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to explain why she mistakenly described her broken bridge work as her bottom teeth:

 **\*4** The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.

The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.

For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.

When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.

I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

> In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and

the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5**  (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra,* based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and he was directed to file his opposition by September 15, 2008, which plaintiff did do.

D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis

in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing theform of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6**  Finally, in connection with a motion to dismiss under Rule 12(b) (6), as noted above, the Court may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis,* 421 F.3d at 100; *accord Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff appended certain documents to his complaint and the Court has confined its review to the face of the complaint and the documents attached thereto by plaintiff.

II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

A. The Legal Aid Attorneys and Ms. Peterson
Plaintiff asserts Section 1983 claims against (1) Ms. Peterson based upon her allegedly false testimony in connection with his criminal case; and (2) his Legal Aid Attorneys for their alleged failure to adequately represent him in connection with his initial indictment. As discussed below, the Section 1983 claims against these defendants fail as a matter of law because (1) none of these defendants are state actors; and (2) plaintiff's conclusory allegations of conspiracy between these defendants and state actors cannot withstand a motion to dismiss. [1]

[1]    As a threshold matter, there is a substantial question as to whether plaintiff can proceed at all on a malicious prosecution claim for his acquitted counts because they were so closely intertwined with his counts of conviction and are both felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989) (holding that claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on assault in the second degree does not necessarily bar a malicious prosecution claim on assault in the first degree or attempted assault in the first degree; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses, "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." *Pichardo v. N.Y. Police Dep't.,* No. 98-CV-429 (DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998) (citing *Janetka,* 892 F.2d at 190); *see also Ostroski v. Town of Southold,* 443 F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing factors). Analyzing the various factors in the instant case- including that both crimes are felonies (and thus are both

serious crimes), and arose out of the same incident-the Court concludes that the existence of probable cause as to the counts of conviction should preclude a malicious prosecution claim on the acquitted counts. In fact, as the judge who presided over the bench trial noted, the basis for the acquittal on the assault in the first degree (despite the conviction for assault in the second degree) was the prosecution's failure to demonstrate serious injury. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." *Pichardo,* 1998 WL 812049, at *4 (finding conviction on misdemeanor charge precluded malicious prosecution on felony assault count arising out of same incident). In any event, the Court finds that there are numerous other grounds for dismissal of the case, discussed in detail *infra*.

(1) State Action Requirement
An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

**\*7** In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial

of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS)(MLO), 2001 U.S. Dist. LEXIS 7786, at * 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aidattorneys). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g., Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe,* 460 U.S. at 329-30); *see also Mitchell v. Mid-Erie Counseling Service,* No. 05-CV6169 CJS(P), 2005 WL 1579810, at *3 (W.D.N.Y. June 29, 2005) (" 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell,* 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello,* 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

### (2) Conspiracy Pursuant to § 1983

**\*8** The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section 1983 conspiracy claim. *See Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York,* No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello,* 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello); Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek,* No. 3:05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981).

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.    6

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant[']s meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman,* 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, *Fisk v. Letterman,* 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See Ciambriello,* 292 F.3d at 324 (dismissing Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g .,* *Rzayeva v. United States,* 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiffs' vague and conclusory allegations against private 'conspirators' are entirely unclear, unsupported by facts, and insufficient to substantiate their claims."); *Fiske,* 401 F.Supp.2d at 377 ("Communications between a private and

a state actor, without factsupporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also Marion v. Groh,* 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." *Ciambriello,* 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also Green v. Bartek,* No. 3:05CV1851 (SRU), 2007 WL 4322780, at \*3 (D.Conn. Dec. 7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); *Williams v. Jurow,* No. 05 Civ. 6949(DAB), 2007 WL 5463418, at \*12 (S.D.N.Y. June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society

where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").

**\*11** In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

[2]    Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous. *See, e.g., Liner v. Goord,* 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous, malicious, or fails to states [sic] a claim upon which relief may be granted' ") (quoting 28 U.S.C. § 1915(a) & (b)(1)).

(3) Other Defects in Claims against the Legal Aid Defendants
In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under Section 1983. *See Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are

barred by Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994).[3]

3        The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

**\*12** Finally, even assuming *arguendo* that some Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred. With respect to Section 1983 and 1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( Section 1983), *cert. denied,* 538 U.S. 922 (2003); *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) (Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such

testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immune from a civil suit for damages under Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at \* 12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting *Imbler,* 424 U.S. at 419 n. 13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007

U.S.App. LEXIS 28939, at *3–*4 (2d Cir. Dec. 12, 2007) (quoting *Imbler,* 424 U.S. at 430); *Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at * 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate

and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U .S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted). "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir.1997.) The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity.[4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at *2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the

claim of malicious prosecution against [the ADA] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their presentation of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

4      To the extent that plaintiff is attempting to argue that absolute immunity should not apply because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

 **\*15**  Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

5      Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

## C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra.* Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra.*

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

## D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated.

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile.[6] As discussed in detail *supra,* it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have Section 1983 liability given the allegations in plaintiff's complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's

submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

6    In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

### III. CONCLUSION

**\*16** For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 4394681

**End of Document**                        © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 53 of 152

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

2016 WL 4046780
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jorge TIRSE, Plaintiff,

v.

David GILBO in his official capacity as a Lieutenant
in the Johnstown Police Dep't; Johnstown Police
Dep't; Gloversville Police Dep't; Donald Vandeusen
in his official capacity as the Chief of Police of
the Gloversville Police Department; Louise Sira
in her official capacity as District Attorney of
the County of Fulton; John P. Sira, Jr., in his official
capacity as a Captain in the Gloversville Police
Dep't; Jesse Ashdown in his official capacity as a
Special Prosecutor and Assistant District Attorney
in the County of Saratoga District Attorney's Office;
Fulton County; Mark Gifford in his official capacity
as the Chief of Police of the Johnstown Police
Dep't; and Darryl Bazan in his official capacity
as a New York State Police Investigator in the
Bureau of Criminal Investigation, Defendants.

6:15-CV-0987 (GTS/ATB)
|
Signed 07/27/2016

**Attorneys and Law Firms**

JORGE TIRSE, 53 Park Street, Gloversville, New York
12078, Plaintiff Pro Se.

MURPHY, BURNS, BARBER & MURPHY, LLP, 226 Great
Oaks Blvd., OF COUNSEL: THOMAS K. MURPHY, ESQ.,
STEPHEN M. GROUDINE, ESQ., Albany, New York 12203,
Counsel for Defendants David Gilbo, Johnstown Police
Dept., and Mark Gifford.

LEMIRE JOHNSON, LLC, P.O. Box 2485, 2534 Route 9, OF
COUNSEL: APRIL J. LAWS, ESQ., GREGG T. JOHNSON,
ESQ., Malta, New York 12020, Counsel for Defendants
Louise Sira, Donald VanDeusen, Gloversville Police Dept.,
John P. Sira, Jr., Jesse Ashdown, and Fulton County.

ERIC T. SCHNEIDERMAN, 615 Erie Blvd. West, Suite
102, OF COUNSEL: KEVIN M. HAYDEN, ESQ., Assistant
Attorney General, Syracuse, New York 13204, GLENN T.
SUDDABY, Chief United States District Judge, Attorney

General for the State of New York, Counsel for Defendant
Darryl Bazan.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jorge Tirse ("Plaintiff") against the County
of Fulton, Louise Sira in her official capacity as the District
Attorney for the County of Fulton (collectively "County
Defendants"), the Gloversville Police Department, Donald
VanDeusen in his official capacity as the Chief of Police
of the Gloversville Police Department, John P. Sira, Jr.,
in his official capacity as a Gloversville Police Captain
(collectively "Gloversville Defendants"), Jessie Ashdown in
his official capacity as a special prosecutor and an Assistant
District Attorney for the County of Saratoga ("Defendant
Ashdown"), the Johnstown Police Department, Mark Gifford
in his official capacity as the Chief of Police of the Johnstown
Police Department, David Gilbo in his official capacity as a
Lieutenant in the Johnstown Police Department (collectively
"Johnstown Defendants"), and Darryl Bazan in his individual
and official capacity as a New York State Police Investigator
("Defendant Bazan"), are Defendants' respective motions to
dismiss Plaintiff's Complaint (Dkt. No. 1) for failure to state
a claim upon which relief can be granted, pursuant to Fed. R.
Civ. P. 12(b)(6) (Dkt. Nos. 11, 14, 26, 27, 30). For the reasons
set forth below, Defendants' motions are granted.

**I. RELEVANT BACKGROUND**

Generally, liberally construed, Plaintiff's Complaint alleges
as follows. On November 29, 2011, Plaintiff's business
was closed due to a civil dispute with his landlord, Joseph
Andrews. (Dkt. No. 1, ¶ 1 [Pl.'s Compl.].) On the same
day, Plaintiff was given a notice from the Johnstown Police
Department not to trespass on the property. (*Id.*, ¶ 3.) On
December 1, 2011, Plaintiff went to the Johnstown Police
Department to file a complaint against Mr. Andrews and Mr.
Andrews's friend, "Sgt. Stevens," for not allowing Plaintiff
to access the property and for threatening to arrest him
even though he had a lease with Mr. Andrews. (*Id.*, ¶ 2.)
While at the police department, Plaintiff was interviewed by
Defendant Gilbo, who secretly recorded the interview. (*Id.*, ¶
4.) In that interview, Plaintiff described everything that had
happened. (*Id.*) The interview lasted nine minutes and 32
seconds; however, Defendants Gilbo and Bazan conspired to
edit the video so it would show only three minutes of the
interview. (*Id.*, ¶¶ 4-5, 31, 34.) The unedited video would have

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 54 of 152

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

constituted proof that Plaintiff had not committed a crime; but, because it was edited, it depicted Plaintiff admitting to a crime that he never committed. (*Id.*, ¶ 7.) The video was later used in Plaintiff's criminal prosecution. (*Id.*, ¶ 6.)

On December 7, 2011, Plaintiff commenced a breach-of-contract action against Mr. Andrews in New York State Supreme Court, Fulton County. (*Id.*, ¶ 10.) The following day, Mr. Andrews filed a criminal complaint against Plaintiff, alleging that Plaintiff had forged his signature on the lease. (*Id.*, ¶ 11.) This was a false accusation, evidenced by the fact that Plaintiff had sent the lease to the New York State Liquor Authority on November 23, 2011, one week before Mr. Andrews prohibited Plaintiff from entering the premises. (*Id.*, ¶ 13.) On January 13, 2012, Plaintiff was falsely arrested by Defendant Bazan for felony forgery. (*Id.*, ¶¶ 14-15.) During Plaintiff's criminal and civil proceedings, he was advised by the court and Defendant Ashdown that, if Plaintiff dropped his civil suit against Mr. Andrews, the criminal charges against him would be withdrawn. (*Id.*, ¶¶ 16-17.) Defendant Ashdown was assigned as a special prosecutor to handle Plaintiff's criminal prosecution due to Defendant Louise Sira's relationship with Mr. Andrews. (*Id.*, ¶ 18.) Plaintiff alleges that the forgery charge was a "trump charge" to use as leverage against him and to coerce him into dismissing his civil action against Mr. Andrews. (*Id.*, ¶¶ 18-21.)

*2 Furthermore, "in-house police reports" generated by the Gloversville Police Department were used in bad faith and to maliciously prosecute Plaintiff. (*Id.*, ¶¶ 22, 26-27.) Plaintiff alleges that Defendant John Sira conspired in Plaintiff's malicious prosecution by forwarding these in-house police reports to Gerard McAuliffe, Mr. Andrews's attorney, who in turn sent them to Defendant Ashdown. (*Id.*, ¶¶ 22, 24, 26.) Defendant John Sira knew that using or sharing these in-house documents violated federal, state, and local laws. (*Id.*, ¶ 29.) Defendant John Sira is married to Defendant Louise Sira. (*Id.*, ¶ 28.)

On August 15, 2012, Plaintiff received a copy of the video that recorded his interview with Defendant Gilbo. (*Id.*, ¶ 30.) Defendant Ashdown also received a copy of this video but claims he never watched it. (*Id.*, ¶ 33.) Plaintiff had difficulty viewing the video because it was saved under the editing software used by the police department. (*Id.*, ¶ 35.) Plaintiff went to the Johnstown Police Department and received assistance from an officer in accessing the videotape. (*Id.*) When Plaintiff finally viewed the videotape, he noticed that it did not end correctly. (*Id.*, ¶ 36.) As a result, Plaintiff

made a Freedom of Information Law ("FOIL") request for the entire videotape, which was denied by Defendant Gilbo. (*Id.*) Plaintiff spoke with Defendant Gifford regarding the matter, including the fact that the videotape had been tampered with and had been done so out of malice. (*Id.*, ¶ 37.) Defendant Gifford told Plaintiff that he "shouldn't of [done] what [he] did" and hung up the telephone. (*Id.*) Plaintiff left several messages for Defendant Gifford but they were never returned. (*Id.*, ¶ 38.) Plaintiff also contacted public officials, such as the local Mayor, regarding the issue but to no avail. (*Id.*, ¶¶ 39-40, 43.) Plaintiff eventually sent the videotape to be analyzed and the results confirmed that it had been edited and tampered with. (*Id.*, ¶ 40.)

Based upon the foregoing allegations, the Complaint asserts the following eight causes of action: (1) a claim that Defendants maliciously abused their power by using legal process to accomplish some ulterior purpose outside the legitimate ends of process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (2) a claim that Defendants deliberately abused legal process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (3) a claim that Defendants intentionally inflicted emotional distress on Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (4) a claim that Defendants falsely arrested Plaintiff and deprived him of his constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; (5) a claim that Defendants maliciously prosecuted Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (6) a claim that Defendants conspired to violate Plaintiff's constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1985; (7) a claim that Defendants refused or neglected to prevent Plaintiff's constitutional rights from being violated in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; and (8) a claim that Defendants Gifford and VanDeusen failed to train, supervise, and discipline their subordinates in their respective police departments in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. (*Id.* at 9-16.)

## II. PARTIES' BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS

**1. Defendants' Memoranda of Law in Chief on Their Respective Motions to Dismiss**

Case 1:19-cv-00577-GTS-TWD   Document 13   Filed 01/21/20   Page 55 of 152

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)
2016 WL 4046780

**a. The County Defendants' Memorandum of Law in Chief**

**\*3** Generally, in their memorandum of law, the County Defendants assert thirteen arguments with regard to Plaintiff's claims against them. (Dkt. No. 11, Attach. 5 [Cty. Defs.' Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity because (a) she acted within the scope of her duties in initiating the criminal prosecution against Plaintiff, and (b) she recused herself from the criminal prosecution itself. (*Id.* at 5-7.)

Second, the County Defendants argue that Plaintiff's claims for abuse of process, false arrest, and conspiracy are time-barred by New York's three-year statute of limitations for personal injury. (*Id.* at 7.)

Third, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1981 because it does not allege that Plaintiff is a member of a racial minority or that Defendants discriminated against Plaintiff on the basis of his race. (*Id.* at 9.)

Fourth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1985 because it does not allege that they acted with racial animus toward Plaintiff. (*Id.* at 10-11.)

Fifth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1986 because (a) it does not allege facts indicating that they had any involvement in Plaintiff's criminal prosecution, and (b) a viable § 1985 claim is a prerequisite for an actionable § 1986 claim. (*Id.* at 11.)

Sixth, the County Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim must be dismissed because the Complaint fails to allege facts plausibly suggesting that they violated his constitutional rights. (*Id.* at 9-10.)

Seventh, the County Defendants argue that Plaintiff's malicious abuse of power and abuse of process claims must be dismissed because the Complaint fails to allege facts plausibly suggesting that they acted with malice and/or that they attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 12-14.)

Eighth, the County Defendants argue that Plaintiff's false arrest claim must be dismissed because (a) the New York

Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting any involvement by the County Defendants in Plaintiff's arrest in that Plaintiff alleges that he was arrested by the New York State Police following an investigation by the Johnstown Police Department and then prosecuted by a special prosecutor from Saratoga County (i.e., Defendant Ashdown). (*Id.* at 14-15.)

Ninth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a malicious prosecution claim against them because (a) the Complaint alleges that Plaintiff's criminal proceeding was initiated by the New York State Police as well as Defendant Ashdown and not the County Defendants, (b) Plaintiff did not receive a favorable termination of the criminal charges against him, and (c) the New York Court of Claims has already determined that there was probable cause to arrest him. (*Id.* at 15-16.)

Tenth, the County Defendants argue that Plaintiff's conspiracy claim must be dismissed because the Complaint fails to allege facts plausibly suggesting a "meeting of the minds" between the County Defendants and the other Defendants regarding an agreement to conspire against Plaintiff. (*Id.* at 16-17.)

**\*4** Eleventh, the County Defendants argue that Plaintiff's state law claim for intentional infliction of emotional distress must be dismissed because (a) Plaintiff never served them with a notice of claim, and (b) the Complaint fails to allege facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 18-19.)

Twelfth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a *Monell* claim because it does not cite to and/or describe any Fulton County policy or custom that allegedly caused him a constitutional deprivation. (*Id.* at 20.)

Thirteenth, and finally, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because (a) she recused herself from Plaintiff's criminal investigation and prosecution, and (b) the New York Court of Claims has already determined that there was probable cause to arrest Plaintiff and, therefore, Defendant Louise Sira did not violate any of his clearly established rights. (*Id.* at 21-22.)

**b. The Gloversville Defendants' Memorandum of Law in Chief**

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

Case 1:19-cv-00577-GTS-TWD   Document 13   Filed 01/21/20   Page 56 of 152

2016 WL 4046780

The Gloversville Defendants have substantially restated all of the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 14, Attach. 3, at 5-17, 22-23 [Gloversville Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Gloversville Defendants assert.

First, the Gloversville Defendants argue that governmental immunity, which shields public entities from liability for discretionary actions taken during the performance of governmental functions, bars any state law negligence claim asserted against them for the following reasons: (a) responding to a FOIL request is a discretionary act; (b) Plaintiff has failed to allege facts plausibly suggesting that he had a special relationship with any of the Gloversville Defendants, which acts as an exception to governmental immunity; and (c) Plaintiff has not alleged facts plausibly suggesting either (i) the existence of a City policy or identifiable custom under which his alleged injury occurred, or (ii) a causal connection between such policy and a constitutional deprivation. (Dkt. No. 14, Attach. 3, at 18-19 [Gloversville Defs.' Mem. of Law].)

Second, the Gloversville Defendants argue that any claims against them in their individual capacities must be dismissed because the Complaint fails to allege specific facts plausibly suggesting their personal involvement in the constitutional violations alleged. (*Id.* at 19-20.) More specifically, they argue that the only specific allegations regarding Defendant VanDeusen and Defendant John Sira are that Defendant Sira responded to a third-party FOIL request in his capacity as chief FOIL officer for the Gloversville Police Department. (*Id.* at 20.) The Gloversville Defendants argue that Plaintiff's conclusory allegation that Defendant VanDeusen failed to supervise Defendant Sira when he responded to the FOIL request is insufficient to plausibly suggest a constitutional violation or supervisory liability. (*Id.*)

Third, the Gloversville Defendants argue that, in any event, Defendant VanDeusen and Defendant John Sira are entitled to qualified immunity because (a) even though these Defendants did not participate in Plaintiff's criminal investigation, the New York Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting that they violated Plaintiff's clearly established rights, or that they had reason to

believe that Plaintiff's rights were being violated when they processed the non-party FOIL request. (*Id.* at 20-22.)

### c. Defendant Ashdown's Memorandum of Law in Chief

**\*5** Defendant Ashdown substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 26, Attach. 3, at 7-21 [Ashdown Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 5-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### d. Defendant Bazan's Memorandum of Law in Chief

Defendant Bazan substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 27, Attach. 3, at 10-20 [Bazan Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### e. The Johnstown Defendants' Memorandum of Law in Chief

The Johnstown Defendants substantially restate the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 30, Attach. 3, at 4-7 [Johnstown Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Johnstown Defendants assert.

First, the Johnstown Defendants argue that Plaintiff's claims against the Johnstown Police Department must be dismissed for the following reasons: (a) it is an administrative arm of the City of Johnstown and, therefore, does not have its own legal identity; (b) the County of Fulton is the proper party in interest; and (c) Plaintiff has failed to allege facts plausibly suggesting an official policy, practice or custom that caused his constitutional rights to be violated in order to state a *Monell* claim. (Dkt. No. 30, Attach. 3, at 9-10 [Johnstown Defs.' Mem. of Law].)

Second, the Johnstown Defendants argue that Plaintiff's state law tort claims for intentional infliction of emotional distress and negligence must be dismissed because (a) he failed to serve a notice of claim, and (b) the claims are time-barred by the one-year and ninety-day limitations period. (*Id.* at 10-12.)

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 57 of 152
Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)
2016 WL 4046780

Third, the Johnstown Defendants argue that Defendants Gifford and Gilbo are entitled to qualified immunity because the New York Court of Claims has already determined that probable cause existed to arrest Plaintiff. (*Id.* at 12-13.)

**2. Plaintiff's Opposition Memorandum of Law**

**a. Plaintiff's Memorandum of Law in Opposition to the County Defendants' Motion to Dismiss**
Generally, liberally construed, Plaintiff asserts three arguments in opposition to the County Defendants' motion to dismiss. (Dkt. No. 32 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant Louise Sira, Plaintiff argues that she is not entitled to prosecutorial immunity for the following three reasons: (a) she knew that she was not supposed to interfere with Plaintiff's prosecution but did so by reviewing statements made by Defendants, providing Defendant Bazan with a subpoena, and assisting him throughout his investigation; (b) she was aware of the conflict of interest regarding her involvement in the criminal investigation against Plaintiff but continued to assist in the investigation in order to find probable cause to arrest him; and (c) she recused herself only after the criminal investigation had been completed and she had collected sufficient evidence to secure Plaintiff's arrest. (*Id.* at 6-8.)

 **\*6** Second, Plaintiff argues that his *Monell* and § 1983 claims against the County of Fulton should not be dismissed for the following reasons: (a) the County violated N.Y. Gen. Mun. Law § 18 because of its numerous monetary contracts with the City of Gloversville and allowing Defendant John Sira to be employed as Captain of the Gloversville Police Department and Louise Sira to be employed as district attorney despite the fact that they are married, which created an inherent conflict of interest; (b) the County allowed Defendant Louise Sira to assist in the criminal investigation against Plaintiff despite the conflict of interest that existed due to her relationship with Mr. Andrews; (c) the County turned a blind eye to these numerous conflicts of interest; and (d) the County is vicariously liable for the actions of Defendant Ashdown because it appointed him as special prosecutor to handle Plaintiff's criminal prosecution. (*Id.* at 8-9.)

Third, Plaintiff argues that his claims for abuse of process, false arrest, and conspiracy are not barred by the three year limitations period for the following reasons: (a) he did not agree to a plea deal on July 5, 2012, but instead the criminal charges against him were dropped on that date and the case was ultimately dismissed on November 28, 2012; (b) he did not have knowledge of the substance forming the basis of his claims because all records were sealed by the N.Y. Supreme Court and he did not have access to them until they were released by the N.Y. Attorney General's Office in the subsequent N.Y. Court of Claims action on July 13, 2013; and (c) he received additional information regarding his claims during Defendant Bazan's deposition on May 30, 2013. (*Id.* at 14.)

**b. Plaintiff's Memorandum of Law in Opposition to the Gloversville Defendants' Motion to Dismiss**
Generally, liberally construed, Plaintiff asserts four arguments in opposition to the Gloversville Defendants' motion to dismiss. (Dkt. No. 35 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant John Sira, Plaintiff argues as follows: (a) he conspired with other Defendants and allowed "in-house" police reports to be used in Plaintiff's criminal prosecution, to maliciously prosecute him, and to coerce him into taking a plea deal; (b) he impermissibly sent these "in-house" police reports to Mr. Andrews's attorney, Gerard McAuliffe, at his request so that they could be used against him; and (c) he ordered his subordinates at the Gloversville Police Department to harass Plaintiff and his family. (*Id.* at 6-8.) Because of these actions, Plaintiff argues that Defendant John Sira was forced into an early retirement from the Gloversville Police Department. (*Id.* at 9.)

Second, with respect to Defendant VanDeusen and the Gloversville Police Department, Plaintiff argues that they (a) harassed and discriminated against his family, and (b) willfully ignored Defendant John Sira's unlawful conduct. (*Id.* at 8.)

Third, Plaintiff argues that the Gloversville Defendants are not entitled to qualified immunity because (a) they violated his constitutional rights, (b) Defendant John Sira violated FOIL laws and police department policies, and (c) Defendant John Sira was aware that his conduct was unlawful while Defendant VanDeusen was aware of this conduct as well but failed to intervene. (*Id.* at 12-13.)

Fourth, and finally, Plaintiff argues that his claims are not time-barred for the reasons discussed above in Part II.2.a. of this Decision and Order.

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

**c. Plaintiff's Memorandum of Law in Opposition to Defendant Ashdown's Motion to Dismiss**

Generally, liberally construed, Plaintiff asserts three arguments in opposition to Defendant Ashdown's motion to dismiss. (Dkt. No. 51 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Ashdown violated his right to due process when Defendant Ashdown impermissibly conditioned any plea agreement to drop the criminal charges against Plaintiff on Plaintiff agreeing to discontinue his civil lawsuit against Mr. Andrews, paying for the locks to be changed on the subject premises, and moving his property out of Mr. Andrew's building. (Id. at 10-11.)

*7 Second, Plaintiff argues that Defendant Ashdown conspired with Defendant Bazan by using his arrest as leverage to get the civil lawsuit against Mr. Andrews dismissed. (Id. at 11.) Furthermore, Plaintiff argues that Defendant Ashdown conspired with Mr. McAuliffe by impermissibly requesting, and receiving, the "in-house" police reports from Mr. McAuliffe, which were then used against Plaintiff in his criminal prosecution. (Id. at 11-12.)

Third, Plaintiff argues that Defendant Ashdown is not entitled to prosecutorial or qualified immunity for the following four reasons: (a) Defendant Ashdown violated Plaintiff's constitutional rights on numerous occasions as described above; (b) there was no probable cause to charge Plaintiff with felony forgery, a fact that Defendant Ashdown was aware of; (c) despite the lack of probable cause, Defendant Ashdown maliciously pursued the criminal charge anyway in an attempt to get Plaintiff's civil lawsuit dismissed against Mr. Andrews; and (d) Defendant Ashdown's actions were outside the scope of his duties as prosecutor. (Id. at 12-13.)

**d. Plaintiff's Memorandum of Law in Opposition to Defendant Bazan's Motion to Dismiss**

Generally, liberally construed, Plaintiff asserts two arguments in opposition to Defendant Bazan's motion to dismiss. (Dkt. No. 50 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Bazan is not entitled to qualified immunity because (a) he tampered with evidence, coerced witness statements, and intentionally ignored exculpatory evidence, and (b) he engaged in unlawful conduct by tampering with evidence. (Id. at 10.)

Second, Plaintiff argues that Defendant Bazan tampered with the videotape containing his interview at the police station. (Id. at 7, 11, 14.) In addition, Plaintiff argues that the tampering with the videotape, coupled with the tampering of witness statements, negates the probable cause for his arrest. (Id. at 11.)

**e. Plaintiff's Memorandum of Law in Opposition to the Johnstown Defendants' Motion to Dismiss**

Generally, liberally construed, Plaintiff asserts three arguments in opposition to the Johnstown Defendants' motion to dismiss. (Dkt. No. 48 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Gilbo is not entitled to qualified immunity because (a) he violated Plaintiff's constitutional rights by falsifying evidence and submitting it to the court in order to facilitate Plaintiff's malicious prosecution, (b) he did not comply with Plaintiff's FOIL request but instead provided Plaintiff with an edited copy of his video taped interview at the police station, and (c) he has threatened Plaintiff's life for pursuing this matter against him. (Id. at 12-13.)

Second, Plaintiff argues that he has alleged facts plausibly suggesting a *Monell* claim because he has alleged that the Johnstown Police Department violated FOIL request laws by tampering with the evidence that he requested. (Id. at 11.)

Third, Plaintiff argues that his claim is not time-barred by the three-year statute of limitations period because he first learned on August 14, 2012, that the video taped disk of his interview at the police station was tampered with. (Id. at 8.)

**3. Defendants Respective Reply Memoranda of Law**

**a. The County Defendants' Reply Memorandum of Law**

Generally, the County Defendants assert seven arguments in reply to Plaintiff's opposition. (Dkt. No. 37 [Cty. Defs.' Reply Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity for the following reasons: (a) Plaintiff's various admissions and evidence contained in his opposition papers make it clear that Defendant Louise Sira played no role in his prosecution or the decision to arrest him; (b) even if Defendant Louise Sira processed a subpoena before being recused, this conduct was clearly within the scope of her duties in initiating and

pursuing a criminal prosecution; and (c) Plaintiff's claim that Defendant Louise Sira conspired with Defendant John Sira is speculative at best. (*Id.* at 2-3.)

 **\*8** Second, the County Defendants argue that Plaintiff's § 1983 claims are time-barred because his excuse that he did not have access to his criminal legal file until it was released by the New York Attorney General's Office is not valid for purposes of tolling the limitations period. (*Id.* at 3-4.) More specifically, the County Defendants argue that Plaintiff, as a defendant in a criminal prosecution, had knowledge of the charges against him and was present and acting on his own behalf when the charges were eventually dismissed. (*Id.* at 4.)

Third, the County Defendants argue that Plaintiff's claims under §§ 1981, 1983, 1985, and 1986 should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4-5.)

Fourth, the County Defendants argue that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because (a) he admits that he never served a notice of claim, and (b) he has not alleged facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 5-6.)

Fifth, the County Defendants argue that Plaintiff's *Monell* claim must be dismissed because he has failed to allege facts plausibly suggesting and/or describing a policy or custom that caused his constitutional deprivations. (*Id.* at 6.)

Sixth, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because, even if she did not recuse herself, the Complaint still does not allege facts plausibly suggesting anything that would have informed her that (a) there was insufficient probable cause to arrest Plaintiff, and (b) she acted unlawfully or violated Plaintiff's constitutional rights. (*Id.* at 6-7.)

Seventh, the County Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following two reasons: (a) the documentary evidence submitted by Plaintiff in his opposition papers demonstrate that the County Defendants had nothing to do with his criminal investigation, arrest, and/or prosecution; and (b) his federal claims are time-barred by the applicable statute of limitations. (*Id.* at 7-8.)

**b. The Gloversville Defendants' Reply Memorandum of Law**

Generally, the Gloversville Defendants assert six arguments in reply to Plaintiff's opposition. (Dkt. No. 38 [Gloversville Defs.' Reply Mem. of Law.])

First, the Gloversville Defendants argue that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred because, contrary to Plaintiff's argument that he did not have the requisite knowledge regarding these claims until a later date, Plaintiff had knowledge of the charges levied against him (as the defendant in a criminal proceeding) and was present when the criminal charges were eventually dismissed. (*Id.* at 3-4.)

Second, the Gloversville Defendants argue that Plaintiff's §§ 1981, 1983, 1985, and 1986 claims should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4.) Similarly, the Gloversville Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a claim for malicious abuse of power, abuse of process, false arrest, malicious prosecution, and conspiracy for the reasons set forth in their memorandum of law. (*Id.* at 4-5.) In addition, the Gloversville Defendants argue that Plaintiff has failed to make any arguments in opposition to their motion to dismiss demonstrating that they had any involvement in the allegations serving as the basis for these claims. (*Id.* at 5.)

 **\*9** Third, the Gloversville Defendants argue that Plaintiff has not opposed their arguments for dismissal of his intentional infliction of emotional distress and negligence claims and has not offered an explanation regarding his failure to serve a notice of claim. (*Id.*)

Fourth, the Gloversville Defendants argue that Plaintiff has not opposed their arguments regarding his failure to allege facts plausibly suggesting the personal involvement of Defendants VanDeusen and John Sira in the alleged constitutional violations. (*Id.* at 6.)

Fifth, the Gloversville Defendants argue that Defendants VanDeusen and John Sira are entitled to qualified immunity and Plaintiff has failed to allege facts plausibly suggesting a *Monell* claim for the reasons stated in their memorandum of law. (*Id.* at 6-7.)

Sixth, the Gloversville Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following reasons: (1) the attachments to Plaintiff's opposition papers demonstrate that the Gloversville Defendants were not involved with

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Plaintiff's criminal investigation, arrest and/or prosecution; and (2) the statute of limitations regarding the majority of Plaintiff's claims has expired. (*Id.* at 7-8.)

### c. The Johnstown Defendants' Reply Memorandum of Law

Generally, the Johnstown Defendants assert eight arguments in reply to Plaintiff's opposition. (Dkt. No. 47 [Johnstown Defs.' Reply Mem. of Law].)

First, the Johnstown Defendants restate their argument from their memorandum of law that all of Plaintiff's § 1983 claims, with the exception of his malicious prosecution claim, are time-barred and Plaintiff has failed to oppose the dismissal of those claims on this basis. (*Id.* at 2.)

Second, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff's malicious prosecution claim should be dismissed because (a) Plaintiff has failed to allege facts plausibly suggesting that the Johnstown Defendants initiated a criminal proceeding against him, (b) a termination in the interest of justice is not a favorable termination, (c) the N.Y. Court of Claims has already determined that probable cause existed for Plaintiff's arrest, and (d) Plaintiff has failed to allege facts plausibly suggesting either malice or that the Johnstown Defendants attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 2-4.)

Third, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1985, and 1986. (*Id.* at 4-5.)

Fourth, the Johnstown Defendants restate their argument that Plaintiff has failed to allege facts plausibly suggesting the personal involvement of Defendant Gifford in a violation of Plaintiff's constitutional rights and Plaintiff's allegation that Defendant Gifford advised him over the telephone that he " shouldn't of did what [he] did" and hung up is insufficient to state a claim. (*Id.* at 5.)

Fifth, the Johnstown Defendants restate their arguments from their memorandum of law that the claims against the Johnstown Police Department must be dismissed because it is a nonlegal entity and he has failed to allege facts plausibly suggesting a *Monell* claim. (*Id.* at 5-6.)

*10 Sixth, the Johnstown Defendants argue that Plaintiff's state law claims must be dismissed because (a) he failed to serve a notice of claim, and (b) they are time-barred by the one-year-and-ninety-day statute of limitations period. (*Id.* at 6-7.)

Seventh, the Johnstown Defendants restate their arguments from their memorandum of law that Defendants Gifford and Gilbo are entitled to qualified immunity. (*Id.* at 7-8.)

Eighth, the Johnstown Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 8-10.)

### d. Defendant Ashdown's Reply Memorandum of Law

Generally, Defendant Ashdown asserts seven arguments in reply to Plaintiff's opposition. (Dkt. No. 52 [Def. Ashdown's Reply Mem. of Law].)

First, Defendant Ashdown argues that the Court should disregard Plaintiff's opposition papers because they were filed three days after the deadline set by the Court and Plaintiff has not offered any explanation for his delayed filing. (*Id.* at 2.)

Second, Defendant Ashdown argues that, even if the Court considers Plaintiff's opposition papers, he is still entitled to prosecutorial immunity because (a) Plaintiff's admissions and "evidence" contained in his opposition papers demonstrate that Defendant Ashdown acted exclusively within his role as special prosecutor, (b) all activities Plaintiff argues that Defendant Ashdown engaged in were also within the scope of his duties in initiating and pursuing a criminal prosecution, and (c) Plaintiff's continued speculation that Defendant Ashdown acted in concert with law enforcement agents or the other Defendants is speculative at best and does not plausibly suggest a claim. (*Id.* at 2-3.)

Third, Defendant Ashdown restates the argument from his memorandum of law that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred by the statute of limitations. (*Id.* at 3.)

Fourth, Defendant Ashdown restates his arguments from his memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1983, 1985, and 1986. (*Id.* at 4.)

Case 1:19-cv-00577-GTS-TWD   Document 13   Filed 01/21/20   Page 61 of 152

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)
2016 WL 4046780

Fifth, Defendant Ashdown argues that Plaintiff has failed to allege facts plausibly suggesting a claim for intentional infliction of emotional distress because (a) any alleged tortious acts by Defendant Ashdown were taken within the scope of his role as special prosecutor, (b) Plaintiff has offered nothing more than conclusory assertions that Defendant Ashdown acted in concert with other Defendants for personal and/or nefarious reasons, and (c) no rational fact-finder could find that Defendant Ashdown engaged in extreme and outrageous conduct. (*Id.* at 5.)

Sixth, Defendant Ashdown argues that he is entitled to qualified immunity for the reasons stated in his memorandum of law. (*Id.* at 5-6.)

Seventh, and finally, Defendant Ashdown argues that, for the foregoing reasons, Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 6-7.)

**e. Defendant Bazan's Reply Memorandum of Law**

Generally, Defendant Bazan asserts four arguments in reply to Plaintiff's opposition. (Dkt. No. 55 [Def. Bazan's Reply Mem. of Law].)

First, Defendant Bazan argues that Plaintiff's opposition papers should not be considered because they were filed after the deadline set by this Court. (*Id.* at 1.)

 **\*11** Second, Defendant Bazan argues that Plaintiff has failed to refute the fact that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. (*Id.*)

Third, Defendant Bazan argues that Plaintiff has failed to respond to the arguments that his claims are time-barred and that Defendant Bazan is entitled to qualified immunity. (*Id.* at 2.)

Fourth, and finally, Defendant Bazan argues that Plaintiff should not be given an opportunity to amend his Complaint because (1) any amendments would be futile, (2) Plaintiff has not filed a proposed amended complaint, and (3) there are no meritorious claims that can be asserted against Defendant Bazan. (*Id.*)

**III. RELEVANT LEGAL STANDARD**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to

Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

 **\*12** Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:19-cv-00577-GTS-TWD Document 13 Filed 01/21/20 Page 62 of 152

15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. [1] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [2] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted]. [3]

[1] *See Vega v. Artus*, 610 F. Supp. 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[2] *See Rosendale v. Brusie*, 374 Fed.Appx. 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally, ... the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega*, 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[3] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak*, 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

**\*13** Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [4] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint–to the extent those papers are consistent with the allegations in the complaint. [5]

[4]    See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); L-7 Designs, Inc. v. Old Navy, LLC, No. 10-573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written

instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[5]    See Drake v. Delta Air Lines, Inc., 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); Donhauser v.Goord, 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

## IV. ANALYSIS

**\*14** As an initial matter, the Court must determine what extraneous documents it may consider in deciding Defendants' respective motions. More specifically, Defendants have submitted a decision and order from the New York Court of Claims in a related state court action where Plaintiff sued the State of New York for false arrest and defamation. (Dkt. No. 11, Attach. 4 [N.Y. Court of Claims Op.].) Defendants argue that the Court can take judicial notice of this document. (Dkt. No. 11, Attach. 5, at 3 [Cty. Defs.' Mem. of Law].) In opposing Defendants' respective motions, Plaintiff appears to have submitted all of the exhibits that were filed in that action, including various deposition transcripts. (Dkt. No. 51, Attach. 1.)

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

As discussed above in Part III of this Decision and Order, there are four circumstances under which the Court may consider materials outside of the pleadings, including documents that the Court may take judicial notice of. State court decisions are clearly public documents that fall under this category. *See Johnson v. Pugh*, 11-CV-0385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (stating that, "[a] court may take judicial notice of matters of public record, including ... decisions in prior state court adjudications"); *accord, Nemeth v. Vill. of Hancock*, 10-CV-1161, 2011 WL 56063, at *1 n.3 (N.D.N.Y. Jan. 7, 2011) (McAvoy, J.) (collecting cases); *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 723 (W.D.N.Y. 2015). Therefore, the Court agrees with Defendants that it may take judicial notice of the decision and order from the New York Court of Claims. However, in so doing, the Court may take judicial notice "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotations and citation omitted).

The Court reaches a different conclusion with respect to the documents submitted by Plaintiff for the following three reasons. First, Plaintiff does not explain how the documents may be properly considered by the Court. Although it is conceivable that they could be considered public documents, Plaintiff admits that not all of the exhibits (without identifying which ones) were properly filed with the New York Court of Claims. (Dkt. No. 51, at 16 [Pl.'s Opp'n Mem. of Law] [stating that "my evidence was not submitted in the right form and was not considered"].) Similarly, the decision and order indicates that the New York Court of Claims did not consider the exhibits submitted by Plaintiff. (Dkt. No. 11, Attach. 4, at 7.)

Second, with respect to the deposition transcripts, the Court finds that they cannot be properly considered as either incorporated by reference or integral to the Complaint. The Complaint neither expressly references the depositions, nor does it bear any indication that they were substantially relied upon in its drafting. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (finding error in district court's decision to consider deposition testimony from an underlying state court action and stating that "[a] complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation"); *see also Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011) (declining to consider deposition transcript

because the complaint did not make any reference to it and the plaintiffs did not "purport to have relied on [the] deposition in crafting the allegations").

Third, in any event, the Court has reviewed the exhibits submitted by Plaintiff and it is apparent that, even if the Court were to consider them, they are immaterial to the Court's adjudication of Defendants' respective motions.

**\*15** Having resolved this issue, the Court now turns to its analysis of the issues raised in Defendants' respective motions.

### A. Whether Plaintiff's Malicious Prosecution Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See, supra*, Part II of this Decision and Order. To those reasons, the Court adds the following analysis.

"To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (internal quotation marks omitted). "In addition, the Court of Appeals requires that in order 'to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Brandon*, 705 F. Supp. 2d at 272 (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 [2d Cir. 2004]).

As discussed above, Defendants argue that this claim should be dismissed because (1) the dismissal of Plaintiff's criminal proceeding in the interest of justice is not a termination in his favor, and (2) the New York Court of Claims has determined that there was probable cause for Plaintiff's arrest. With respect to the first argument, it is true that the Second Circuit has held that "[a] dismissal 'in the interest of justice' under [N.Y. Crim. Proc. Law § 170.40] cannot provide the favorable termination required as the basis for a claim of malicious prosecution." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed.Appx. 672, 674 (2d Cir. 2009) (internal quotations omitted); *accord, Murphy v. Gibbons*, 13-CV-1433, 2014 WL 4828126, at *6 (N.D.N.Y. Sept. 29,

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

2014) (Sharpe, C.J.). However, other courts in this Circuit have recognized that, in *Cantalino v. Danner*, 96 N.Y.2d 391 (N.Y. 2001), the New York Court of Appeals rejected this proposition as a *per se* rule. *See Guzman v. U.S.*, 11-CV-5834, 2013 WL 543343, at *8 (S.D.N.Y. Feb. 14, 2013) (stating that, "[b]ecause *Lynch* relies on *Hygh*, it appears that the Second Circuit overlooked the Court of Appeals' clarification of the law in *Cantalino*. Indeed, even after the Second Circuit decided *Lynch*, other judges [in this Circuit] have seen fit to apply the rule of *Cantalino*."); *see also Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 160 (E.D.N.Y. 2014) (collecting cases). Indeed, in *Cantalino*, the New York Court of Appeals explained that, while "there are circumstances where a dismissal in the interest of justice is inconsistent with innocence because it represents mercy requested or accepted by the accused," the Court's past decisions did "not establish a *per se* rule that a dismissal in the interest of justice can never constitute a favorable termination. Rather ... the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Cantalino*, 96 N.Y. 2d at 396-97.

**\*16** The Court need not linger on this issue, however, because it agrees with Defendants' second argument: that dismissal of Plaintiff's malicious prosecution claim is warranted on the grounds that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. *See Martin v. Cty. of Nassau*, 692 F. Supp. 2d 282, 293 (E.D.N.Y. 2010) ("[T]he Court takes judicial notice of the fact that another court has already found probable cause for the plaintiff's arrest."). Although Plaintiff appears to contest this determination in his opposition papers, he is collaterally estopped from doing so. Specifically, "[t]he doctrine of collateral estoppel, or issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Sahni v. Legal Servs. of the Hudson Valley*, 14-CV-1616, 2015 WL 4879160, at *3 (S.D.N.Y. Aug. 13, 2015). "[I]nferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Austin v. Downs, Rachlin & Martin*, 270 Fed.Appx. 52, 53-54

(2d Cir. 2008). Similarly, under New York law, federal courts must give preclusive effect to state court judgments "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in an earlier action." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002).

Here, the N.Y. Court of Claims dismissed Plaintiff's false arrest claim as a matter of law, finding that "Claimant fails to raise any genuine issues of material fact which illustrate that Investigator Bazan lacked probable cause to believe that a crime had been committed." (Dkt. No. 11, Attach. 4, at 6.) The Court of Claims then held that, because "Claimant's arrest is privileged ... Defendant is entitled to summary judgment dismissing the cause of action alleging false arrest." (*Id.* at 7.) A lack of probable cause is a necessary element of claims for false arrest and malicious prosecution. Furthermore, Plaintiff had a full and fair opportunity to litigate the issue of probable cause through the summary judgment motion filed in the N.Y. Court of Claims. *See Tobias v. First City Nat'l Bank & Trust Co.*, 709 F. Supp. 1266, 1270 (S.D.N.Y. 1989) (stating that "[a] fully litigated and opposed summary judgment determination can constitute the requisite full and fair opportunity to litigate"). Accordingly, because Plaintiff cannot establish that probable cause was lacking, his malicious prosecution claim is dismissed. *See Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (state court decision collaterally estopped plaintiff from relitigating the lawfulness of his arrest via § 1983 claim); *Boomer v. Bruno*, 134 F. Supp. 2d 262, 268-69 (N.D.N.Y. 2001) (Kahn, J.) (dismissing § 1983 malicious prosecution claim where state court previously determined the issue); *Graebe v. Falcetta*, 726 F. Supp. 36, 38 (E.D.N.Y. 1989) (giving preclusive effect to probable cause determination in underlying state court action when dismissing subsequent § 1983 malicious prosecution claim).

## B. Whether Plaintiff's § 1983 Claims for "Malicious Abuse of Power,"[6] Malicious Abuse of Process, and False Arrest Are Time-Barred

[6]    Although Plaintiff titles this claim as "Malicious Abuse of Power," it is clear from a reading of the substantive allegations that this is a claim for malicious abuse of process. (Dkt. No. 1, at 9 [Pl.'s Compl.].)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See*, *supra*, Part II

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 66 of 152

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

of this Decision and Order. To those reasons, the Court adds the following analysis.

"Under New York law, the statute of limitations for § 1983 claims, including false arrest and malicious abuse of process, is three years." *Anderson v. Cty. of Putnam*, 14-CV-7162, 2016 WL 297737, at *2 (S.D.N.Y. Jan. 22, 2016). A § 1983 claim accrues "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (stating that a claim accrues under § 1983 "when the plaintiff knows or has reason to know of the injury which is the basis of his action...."). "Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion–typically at arrest–against the plaintiff." *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.); *accord, Anderson*, 2016 WL 297737, at *3. Similarly, "[a] claim for false arrest generally accrues on the date of the arrest." *Harrison v. New York*, 95 F. Supp. 3d 293, 327 (E.D.N.Y. 2015).

*17 In the present case, the Complaint alleges that Plaintiff was arrested on January 13, 2012. (Dkt. No. 1, ¶ 14 [Pl.'s Compl.].) Plaintiff commenced this action on August 13, 2015, which is three years and eight months after his arrest. Accordingly, Plaintiff's § 1983 claims for false arrest, malicious abuse of power, and abuse of process are time-barred by the applicable statute of limitations.

In any event, the Court would dismiss Plaintiff's false arrest claim because probable cause for his arrest has already been determined by the N.Y. Court of Claims as discussed above in Part IV.A. of this Decision and Order. *See McBride v. Bratton*, 95-CV-9626, 1996 WL 636075, at *3 (S.D.N.Y. Nov. 4, 1996) (Chin, J.), *aff'd*, 122 F.3d 1056 (2d Cir. 1997) (dismissing § 1983 false arrest claim where state court previously determined officers had probable cause to arrest); *accord, Brown v. De Fillips*, 717 F. Supp. 172, 179 (S.D.N.Y. 1989); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (stating that "[p]robable cause is a complete defense to false arrest claims"). With respect to Plaintiff's malicious abuse of process claim, "[c]ourts in this Circuit appear to be divided on whether the existence of probable cause defeats a claim for malicious abuse of process." *Posner v. City of New York*, 11-CV-4859, 2014 WL 185880, at *7 (S.D.N.Y. Jan. 16, 2014); *see also Deanda v. Hicks*, 137 F. Supp. 3d 543, 576 (S.D.N.Y. 2015) (collecting

cases); *cf. Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015) (recognizing the confusion surrounding this issue but declining to resolve it).[7] Nevertheless, the Court would dismiss Plaintiff's malicious abuse of process claim for the alternative reason that he has not alleged facts plausibly suggesting that Defendants employed regularly issued legal process to compel performance of some act, with intent to do harm without excuse or justification, in order to obtain a collateral objective that is outside the legitimate ends of the process, for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 11, Attach. 5, at 12-14 [Cty. Defs.' Mem. of Law; Dkt. No. 14, Attach. 3, at 10-12[Gloversville Defs.' Mem. of Law]; Dkt. No. 26, Attach. 3, at 12-14 [Def. Ashdown's Mem. of Law]; Dkt. No. 27, Attach. 3, at 14-15 [Def. Bazan's Mem. of Law].) For example, while the Complaint generally alleges that Defendants were maliciously motivated to use the "trump" criminal charge to coerce Plaintiff into discontinuing his civil lawsuit against Mr. Andrews (Dkt. No. 1, ¶¶ 16-18 [Pl.'s Compl.] ), it does not plausibly suggest a collateral objective because the allegations plausibly suggest merely a malicious motive. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (explaining that a "malicious motive alone" is not a "collateral objective"); *Perry v. Manocherian*, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) (stating that a "malicious motive alone ... does not give rise to a cause of action for abuse of process" and holding that issuance of a summons and complaint, even if made with the intent to coerce settlement, does not constitute abuse of process).

7    The Court notes that, in *Jones v. J.C. Penny's Dep't Stores Inc.*, 317 Fed.Appx. 71 (2d Cir. 2009), the Second Circuit, in a non-precedential summary order, indicated its support for the interpretation that probable cause is a complete defense to an abuse of process claim. *Jones*, 317 Fed.Appx. at 74 (holding that "[t]he conclusion that [the plaintiff] could not prevail on her claims that the officers lacked probable cause for her arrest ... required dismissal of her ... claims of abuse of process"). Under *Jones*, Plaintiff's malicious abuse of process claim would clearly fail because, as discussed above in Part IV.A. of this Decision and Order, probable cause for Plaintiff's arrest has already been established. At the very least, Defendants would be entitled to qualified immunity based on this ground.

## C. Whether Plaintiff's Conspiracy Claim Under §§ 1983 and 1985 Should Be Dismissed

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 67 of 152

**\*18**  After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below

### 1. Conspiracy Claim Under § 1983

"To establish a § 1983 conspiracy, plaintiff must prove '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.' " *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 [2d Cir. 1999]). "In addition, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (internal quotations omitted); *accord*, *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). Finally, "a § 1983 conspiracy fails as a matter of law where there is no underlying constitutional violation." *Mitchell*, 786 F. Supp. 2d at 564; *accord*, *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) (Suddaby, J.).

Here, Plaintiff's § 1983 conspiracy claim is dismissed because his underlying constitutional claims for false arrest, malicious prosecution, abuse of process, and malicious abuse of power have been dismissed. In any event, the Court agrees with Defendants that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy.

### 2. Conspiracy Claim Under § 1985

"To avoid dismissal of a § 1985 claim, a plaintiff must demonstrate: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) a person is either injured in his person or property or deprived of any right of a citizen of the United States; and (5) the conspiracy is motivated by some racial or perhaps otherwise invidious discriminatory animus." *K.W. ex rel. Brown v. City of New York*, 275 F.R.D. 393, 399 (E.D.N.Y. 2011).

Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying

constitutional violation, Plaintiff's § 1985 claim is likewise dismissed. *See Alston v. Sebelius*, 13-CV-4537, 2014 WL 4374464, at \*18 (S.D.N.Y. Sept. 2, 2014) (stating that, "given that plaintiff has failed to allege an underlying claim for a constitutional violation, his conspiracy claim under Section 1985 cannot stand."). In addition, the Court agrees with Defendants that the Complaint is devoid of any facts plausibly suggesting that their alleged actions were motivated by racial or discriminatory animus or that Plaintiff is a member of a protected class.

### D. Whether Plaintiff's Claim for "Refusing or Neglecting to Prevent" Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the following two reasons.

**\*19**  First, the Court construes this claim as an attempt to bring a claim under 42 U.S.C. § 1986. *See Bromfield v. Lend-Mor Mortg. Bankers Corp.*, 15-CV-1103, 2016 WL 632443, at \*6 (D. Conn. Feb. 17, 2016) (reading *pro se* plaintiff's claim that defendants "violated [her] constitutionally protected Rights by refusing or neglecting to prevent deprivation of [her] rights under Color of Law" as a claim under § 1986).

Second, because Plaintiff's § 1985 claim is dismissed, his § 1986 claim must also be dismissed. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (stating that "[a] claim under Section 1986 ... lies only if there is a viable conspiracy claim under 1985"); *accord*, *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 361 (N.D.N.Y. 2015) (Suddaby, J.).

### E. Whether Plaintiff's *Monell* Claim Against the Johnstown Police Department and Gloversville Police Department Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for each of the two reasons set forth below.

First, because the Court has dismissed Plaintiff's underlying constitutional claims, his *Monell* claim must also be dismissed. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct"); *accord*, *Grega v. Pettengill*, 123 F. Supp. 3d 517, 556 (D. Vt. 2015).

Case 1:19-cv-00577-GTS-TWD   Document 13   Filed 01/21/20   Page 68 of 152

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)
2016 WL 4046780

Second, in any event, police departments are not municipalities or "persons" within the meaning of § 1983. *See* *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (holding that, "[b]ecause a municipal police department is not an independent legal entity, it is not subject to suit under [§] 1983") (collecting cases). Accordingly, Plaintiff's *Monell* claim is dismissed on this additional basis.

### F. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Supervisory Liability Claim Against Defendants Gifford and VanDeusen

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 30, Attach. 3, at 7-8 [Johnstown Defs.' Mem. of Law]; Dkt. No. 14, Attach. 3, at 19-20 [Gloversville Defs.' Mem. of Law].). In addition to those reasons, the Court adds the following two points.

First, this claim is dismissed on the basis that Plaintiff cannot demonstrate an underlying constitutional violation because his claims have been dismissed. *See Lacey v. Yates Cty.*, 30 F. Supp. 3d 213, 227 (W.D.N.Y. 2014) (stating that, "[a]s a threshold matter, where a plaintiff has not established any underlying constitutional violation, [he] cannot state a claim for § 1983 supervisory liability") (internal quotations omitted); *accord, Lawrence v. Evans*, 136 F. Supp. 3d 486, 491 (W.D.N.Y. 2015).

Second, even if the merits of Plaintiff's claim were considered, the Court notes that the only allegation regarding Defendant VanDeusen's personal involvement in this matter is his failure "to train, supervise and discipline Captain Sira for his conflicted and malice acts[,]" (Dkt. No. 1, ¶ 46 [Pl.'s Compl.] ), which is wholly conclusory and insufficient to plausibly suggest his personal involvement in a constitutional violation. *See Davis v. Cty of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (stating that "[a] complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."); *Tricoles v. Bumpus*, 05-CV-3728, 2006 WL 767897, at *4 (E.D.N.Y. Mar. 23, 2006) ("Courts have dismissed § 1983 ... claims where a complaint merely asserts bare conclusory statements that a defendant supervisor failed to supervise or train ...."); *Pravda v. City of Albany*, 956 F. Supp. 174, 182 (N.D.N.Y. 1997) (Scullin, J.) (granting defendants' motion for judgment on the pleadings, where *pro se* plaintiff's "conclusory allegations" that county jail

superintendent and county sheriff were responsible for setting county policy and supervising corrections officers involved in abuse were "insufficient to establish the personal involvement of these individual Defendants in Plaintiff's alleged constitutional deprivations").

### G. Whether Plaintiff's State Law Claim for Intentional Infliction of Emotional Distress Should Be Dismissed

**\*20** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law regarding Plaintiff's failure to serve Defendants' with a notice of claim as required by N.Y. Gen. Mun. Law § 50-e. *See Rivas v. Suffolk Cty.*, 326 F. Supp. 2d 355, 360-61 (E.D.N.Y. 2004) ("The defendants contend that the plaintiff has failed to serve the required notice of claim, and the plaintiff has not denied such contentions in his reply papers. In the absence of such a filing, the plaintiff's tort claim for intentional infliction of emotional distress ... must be dismissed"). In addition, the Court notes that it does not have the authority to consider a motion for leave to file a late notice of claim. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) (collecting cases). Therefore, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

### H. Whether Plaintiff Should Be Afforded Leave to Amend His Complaint

After carefully considering the matter, the Court answers this question in negative for the reasons set forth below.

Generally, *pro se* civil rights litigants, such as Plaintiff, are to be afforded special solicitude in this Circuit. *See, e.g., Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted *pro se* or the plaintiff alleges civil rights violations"). As a result, where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

2016 WL 4046780

Here, the Court finds that the defects with Plaintiff's claims are substantive, rather than formal, such that any amendments would be futile. More specifically, the Court has found that Plaintiff's claims for false arrest, malicious abuse of power, and malicious abuse of process are time-barred and, therefore, cannot be cured by better pleading. *See Mackensworth v. S.S. Am. Merch., 28 F.3d 246, 251 (2d Cir. 1994)* (finding denial of leave to amend complaint proper on futility grounds because proposed claim would have been barred by the statute of limitations); *Diallo v. Williams*, 04-CV-4556, 2006 WL 156158, at *2 (S.D.N.Y. Jan. 20, 2006) (denying plaintiff's motion to amend to include § 1983 claims as futile where the claims would be barred by the statute of limitations). With respect to Plaintiff's malicious prosecution claim, the Court has found that Plaintiff is collaterally estopped from re-litigating the issue of probable cause for his arrest and, therefore, cannot establish the necessary elements for his claim.

Finally, because Plaintiff cannot establish an underlying constitutional violation, any amendments to his § 1983 and conspiracy claims would be futile. Similarly, any amendments to Plaintiff's claim for intentional infliction of emotional distress would also be futile because he has failed to serve a notice of claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants Fulton County and Louise Sira's Motion to Dismiss (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendants' Gloversville Police Department, John P. Sira, Jr. and Donald Vandeusen's Motion to Dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant Jesse Ashdown's Motion to Dismiss (Dkt. No. 26) is **GRANTED**; and it is further

**\*21 ORDERED** that Defendant Darryl Bazan's Motion to Dismiss (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that Defendants Mark Gifford, David Gilbo and Johnstown Police Department's Motion to Dismiss (Dkt. No. 30) is **GRANTED**; and is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4046780

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 3315181
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kennard D. WELLINGTON, Plaintiff,

v.

Patrolman FOLAND; Aaron Smith; Brian
Bailey; Michael Helper; Brian J. Shaver;
Nicholas Crandell; Brent Dodge; Patrolman
Peets; Patrolman Gavin; PTL Joshua Bilek;
David Williams; Gregory P. Thomas; Eddy
Douglas; and Dominic H. Peers, Defendants.

3:19-CV-0615 (GTS/ML)
|
Signed 07/24/2019

Attorneys and Law Firms

KENNARD D. WELLINGTON, Pro Se, 3104 Buckingham
Road, Endwell, New York 13760.

OF COUNSEL: LILY A. OCKERT, ESQ., MORRIS DUFFY
ALONSO & FALEY, 2 Rector Street, 22nd Floor, New York,
New York 10006, Counsel for the Defendants.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint together with
an application to proceed *in forma pauperis* filed by Kennard
D. Wellington ("Plaintiff") to the Court for review. (Dkt. Nos.
1 and 2.) For the reasons discussed below, I grant Plaintiff's
*in forma pauperis* application (Dkt. No. 2), recommend that
certain of his claims be accepted for filing, that certain of
his claims be dismissed with leave to amend, that certain of
his claims be dismissed without leave to amend, and that
the action be consolidated with another suit that is currently
pending before this Court.

## I. BACKGROUND

On or about March 26, 2019, Plaintiff commenced an action
before the Supreme Court of New York, County of Broome,
in which he alleged that his civil rights were violated in
connection with two traffic stops and subsequent arrests that
occurred on October 25, 2018, and November 11, 2018. *See
generally Wellington v. Foland et al.*, 19-CV-0457 (GTS/ML)

(N.D.N.Y. removed 04/18/2019) ("*Wellington I*"). *Wellington
I* was removed by the defendants in that case to this Court
on April 18, 2019. (*See id.*) A motion for judgment on
pleadings with regard to Defendant Gregory Thomas is
currently pending in that action. (*See id.*, Dkt. Nos. 7, 9, 11.)

On or about May 23, 2019, Plaintiff commenced the present
action ("*Wellington II*") by the filing of a Complaint, which
was accompanied by a motion to proceed without prepayment
of fees. (Dkt. Nos. 1, 2.)

## II. ALLEGATIONS OF THE COMPLAINT

Although most of his Complaint is rambling, far from clear,
and contains virtually no factual detail, construed liberally,
the gravamen of Plaintiff's Complaint is that he is a "freeborn
sovereign individual" and his constitutional rights were
violated by Johnson City police officers Patrolman Foland,
Aaron Smith, Brian Bailey, Michael Helper, Brian Shaver,
Nicholas Crandell, Brent Dodge, Patrolman Peets, Patrolman
Gavin, Joshua Bilek, David Williams, Eddy Douglas, and
Dominic H. Peers; and Johnson City Village Judge Gregory
Thomas (collectively "Defendants"). (*See generally* Dkt.
No. 1.) However, Plaintiff's Complaint fails to disclose
the role played by each of the named defendants and the
circumstances giving rise to his claims. Plaintiff's Complaint
is six pages long and includes an additional 106 pages of
exhibits, none of which have been identified or referenced in
his Complaint. (*Id.*)

Although it is far from evident, based on a review of
Plaintiff's Complaint and attached documents, it appears that
his claims center around two traffic stops that resulted in his
arrests on October 25, 2018, and November 11, 2018. (*Id.*)
Plaintiff alleges that he was arrested on October 25, 2018,
and as a result of this arrest his vehicle was towed, he posted
bail in the amount of $41.00, and was "forced to pay U-Save
[towing] $399.60 ... to get my property" back. (*Id.* at 3.) In
addition, Plaintiff alleges that he was arrested on November
11, 2018, when he was "traveling in [his] personal vehicle on
state of New York public highway." (*Id.*) Plaintiff alleges that
during the course of this arrest officers deployed a taser four
times and pepper sprayed him. (*Id.*) Plaintiff alleges that as a
result of this arrest he was released on his own recognizance.
(*Id.*)

**\*2** Plaintiff appears to assert the following six claims: (1)
that he was deprived of his "right-to-travel" in violation of the
Fifth Amendment and 42 U.S.C. § 1983 ("First Claim"); (2)
that Defendants used excessive force in affecting his arrests

2019 WL 3315181

in violation of the Fourth Amendment and 42 U.S.C. § 1983 ("Second Claim"); (3) that Defendants failed to intervene during the use of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983 ("Third Claim"); (4) that Defendants discriminated against him ("Fourth Claim"); (5) that Defendants conducted an illegal search and seizure in violation of the Fourth Amendment and 42 U.S.C. § 1983 ("Fifth Claim"); and (6) that Defendants set excessive bail in violation of the Eighth Amendment and 42 U.S.C. § 1983 ("Sixth Claim"). (*Id.* at 2.) As relief, Defendant seeks twenty million dollars ($20,000,000.00). (*Id.* at 4-5.)

In an "exhibit" to his Complaint, Plaintiff attached another complaint with a caption in the Supreme Court of the State of New York, County of Queens ("Exhibit Complaint") with allegations relating to the same events giving rise to this action. (Dkt. No. 1, Attach. 1, at 3-25.)[1] The Exhibit Complaint is also rambling and far from clear, but construed liberally, it alleges that on November 14, 2018, while released on bail at a court appearance, Plaintiff was "remanded" in lieu of $5,000.00 cash or $10,000.00 bond because he "straddled the bar and the judge and the court took [his] stance as aggressive" and he was "ordered to take a 730 [competency] exam." (*Id.* at 9-10.) In addition, the Exhibit Complaint alleges that "[o]n the 14[th] of November Plaintiff asked for counsel of his own choice, as is his right as set forth in the 6[th] Amendment of our U.S. Constitution[;] not only did Gregory P. Thomas order me incompetent counsel[,] he hadn't yet received his bar card." (*Id.* at 13.) The Exhibit Complaint appears to assert the following six additional causes of action: (1) Plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment and 42 U.S.C. § 1983 ("Seventh Claim") by requiring him to take a competency exam; (2) he was deprived of his right to counsel of his choosing in violation of the Sixth Amendment and 42 U.S.C. § 1983 ("Eighth Claim"); (3) his due process rights were violated because he was not read *Miranda* warnings after any of his arrests in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 ("Ninth Claim"); (4) his right to freedom of association was violated because he was appointed counsel not of his choosing in violation of the First Amendment and 42 U.S.C. § 1983 ("Tenth Claim"); (5) his right to counsel of his choice was "encroach[ed] in violation of the Ninth and Tenth Amendments and 42 U.S.C. § 1983 ("Eleventh Claim"); and (6) conspiracy to violate his rights pursuant to 42 U.S.C. § 1985 ("Twelfth Claim"). (*Id.* at 3-25.)[2] The Exhibit Complaint also contains a "Fee Schedule Contract" that purports to be a "legally binding contract" and

alleges that "failure to sign this contract does not void this contract." (*Id.* at 22-24.)

[1]     The Court notes that the Exhibit Complaint is the same or substantially the same as an exhibit complaint that was attached to the complaint in *Wellington I.* (*Compare* Dkt. No. 1, Attach. 1, at 3-25, *with Wellington I,* Dkt. No. 1, Attach. 1, at 5-27.)

The Court also notes that the Exhibit Complaint lists Judge Thomas Dellapenna and Johnson City police officer Christopher Ketchum as defendants. (Dkt. No. 1, Attach. 1, at 3, 6.) However, neither Thomas Dellapenna nor Christopher Ketchum are listed as Defendants in the caption or mentioned in Plaintiff's Complaint. (*Compare* Dkt. No. 1, *with* Dkt. No. 1, Attach. 1, at 3, 6.)

[2]     The Court notes that the Exhibit Complaint only seeks $50,000.00 for "general damages" and $100,000.00 for punitive damages (as opposed to the $20,000,000.00 sought in the Complaint). (*Compare* Dkt. No. 1, at 4-5, *with* Dkt. No. 1, Attach. 1, at 20.)

**\*3**  For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## III. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[3] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[4]

[3]     The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]     Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still

Wellington v. Foland, Slip Copy (2019)

2019 WL 3315181

be required to pay fees that he may incur in this action, including copying and/or witness fees.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

 *4 Courts are "obligated to construe a pro se complaint liberally." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009); see also Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.,* Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 [2d Cir. 1998]); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## V. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed against Defendants Brian Bailey, Brent Dodge, Dominic Peers, and Gregory Thomas. [5] In addition, I recommend that Plaintiff's First, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims be dismissed against all Defendants. Moreover, I conclude that the allegations in the Second, Third, and Fifth Claims originate from the same events described in *Wellington I*, and thus recommend that they be consolidated with *Wellington I*.

[5]     To the extent Plaintiff's Complaint is read as asserting allegations against Thomas Dellapenna and Christopher Ketchum, I recommend that those causes of action should also be dismissed. *See, supra*, note 1.

### A. Claims Against Defendant Gregory P. Thomas

In this case, Plaintiff's Complaint asserts causes of action against Gregory P. Thomas for actions he allegedly took in his position as judge of the Johnson City Village Municipal Court.

It is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' "); *Mahapatra v. Comstock*, 97-CV-7129, 1998 WL 88054, at *1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."). This immunity applies to state court judges who are sued in federal court pursuant to 42 U.S.C. § 1983. *Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983).

**\*5** "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

Plaintiff's allegations regarding Defendant Gregory Thomas relate to actions Defendant Thomas took as Judge of the Johnson City Village Court presiding over Plaintiff's criminal proceedings that occurred in Johnson City. (*See generally* Dkt. No. 1.) As a result, I recommend that the claims against Defendant Gregory Thomas be dismissed in their entirety. [6]

[6]   For the same reasons, to the extent Plaintiff's Complaint is read as asserting any causes of action against Thomas Dellapenna for actions he took in his capacity as a judge, I recommend that those causes of action be dismissed. *See, supra*, notes 1 and 5.

**B. Claims Against Defendants Brian Bailey, Brent Dodge, and Dominic Peers**

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

[2d Cir. 1991]; *McKinnon v. Patterson*, 568 F.2d 930, 934 [2d Cir. 1977]). As the Supreme Court has noted, a defendant may only be held accountable for his actions pursuant to 42 U.S.C. § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 622, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

The Complaint and Exhibit Complaint do not refer to any actions taken by Defendants Bailey, Dodge, or Peers. (*See generally* Dkt. No. 1; Dkt. No. 1, Attach. 1.) The only reference to Defendant Bailey that I could locate in the Complaint and its attachments was that he reviewed the report prepared by Sergeant David Crandell regarding the incident on November 11, 2018. (Dkt. No. 1, Attach. 1, at 59-61.) In addition, the only reference to Defendant Brent Dodge that I could locate in the Complaint and its attachments was that he is the chief of police for the Johnson City Police Department. (Dkt. No. 1, Attach. 1, at 6.) [7] I could not locate any reference to Defendant Dominic Peers–other than the caption–in the Complaint and its attachments. (*See generally* Dkt. No. 1.) [8]

[7]   "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior....* [A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[8]   The only reference to Christopher Ketchum (to the extent Plaintiff's Complaint is read as including him as a defendant) that I could locate in the Complaint and its attachments was that he reviewed the report prepared by Brian Shaver regarding the incident on October 25, 2018. (Dkt. No. 1, Attach. 1, at 44, 56-58, 65.) *See, supra*, note 1.

**\*6** As a result, I recommend that the claims against Defendants Bailey, Dodge, and Peers be dismissed in their entirety. [9]

9      For the same reasons, to the extent Plaintiff's Complaint is read as asserting any causes of action against Christopher Ketchum, I recommend that those causes of action be dismissed. *See, supra,* notes 1 and 8.

## C. Plaintiff's First Claim (Right to Travel)

"The Constitution protects a fundamental right to travel within the United States, which we have also called 'the right to free movement.' " *Selevan v. New York Thruway Auth.,* 584 F.3d 82, 99 (2d Cir. 2009) (citing *Williams v. Town of Greenburgh,* 535 F.3d 71, 75 [2d Cir. 2008]; *cf. Saenz v. Roe,* 526 U.S. 489, 500 [1999]* [noting that "[t]he 'right to travel' ... embraces ... three different components," including "the right of a citizen of one State to enter and leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for travelers who elect to become permanent residents, the right to be treated like other citizens of that State."] ).

The allegations in the Complaint and its attachments do not allege any component of interstate travel. Instead, Plaintiff's allegations regarding his right to travel relate to the traffic stops and subsequent arrests, which is akin to his illegal search and seizure claim. As a result, I recommend that Plaintiff's First Claim be dismissed for failure to state a claim. *See also Buchholz-Kaestner v. Fitzgerald,* 16-CV-0604, 2017 WL 2345589, at *6-7 (N.D.N.Y. May 30, 2017) (Suddaby, C.J.) (dismissing in its entirety the plaintiff's complaint including his "right to travel" claim where the complaint alleged that the police department "harasses me when I drive in my private vessel non-commercial. Private use only. Rightful use of American easement.").

## D. Plaintiff's Fourth Claim (Discrimination)

Plaintiff alleges that he was discriminated against but the Complaint lacks any allegations of class-based discrimination underlying Defendants' actions. (*See generally* Dkt. No. 1.) However, " 'individuals who allege no specific class membership but are nonetheless subject to invidious discrimination at the hands of government officials' may bring a 'class of one' equal protection claim." *Gauthier v. Kirkpatrick,* 13-CV-0187, 2013 WL 6407716, at *9 (D. Vt. Dec. 9, 2013) (citing *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 [2d Cir. 2001]).

Here, Plaintiff alleges that Defendants failed to apply the law correctly and violated his fundamental rights, but that is different from a claim that they failed to apply the law equally on the basis of some classification. *Gauthier,* 2013 WL 6407716, at *9.[10] Even construed liberally, the Complaint does not allege or suggest that any "discriminatory intent" was a motivating factor in Defendants' actions. *Id.* (citing *Okin v. Vill. of Cornwall-on-Hudson Police Dep't,* 577 F.3d 415, 438 [2d Cir. 2009]).

10      Plaintiff alleges that "Defendants named above relying on their own discretion and erroneous interpretation of the Supreme Law of the Land, which is the constitution and not any statute in conflict there with [sic] issued or composed to be issued order (sic) for Plaintiff conspire (sic) with Defendants to subvert the constitution by excepting title of nobility and to make something other than gold and silver coin tender for payment of debt." (Dkt. No. 1, Attach. 1, at 17.)

*7 As a result, I recommend that Plaintiff's Fourth Claim be dismissed for failure to state a claim.

## E. Plaintiff's Sixth Claim (Excessive Bail)

"It is ... well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999) (extending absolute immunity to parole board officials performing a quasi-judicial function in making parole decisions); *see also Butz v. Economou,* 438 U.S. 478, 511 (1978) (granting absolute immunity to administrative hearing examiners performing adjudicatory functions within federal agencies). As the Supreme Court has explained, it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis." *Forrester v. White,* 484 U.S. 219, 229 (1988) (holding that judges do not enjoy absolute immunity when performing administrative, legislative, or executive functions). Following this "functional approach to immunity questions," the Second Circuit observed that "[o]rdinarily, it is judges who set bail, and judges enjoy absolute immunity when they do so." *Root v. Liston,* 444 F.3d 127, 132 (2d Cir. 2006) (internal citations omitted). "In short, because the setting of bail is a judicial function, *see Cleavinger v. Saxner,* 474 U.S. 193, 205, 106 (1985), absolute immunity extends to police officers when they perform that function pursuant to statute." *Walczyk v. Rio,* 496 F.3d 139, 165 (2d Cir. 2007).

As a result, regardless of which Defendant or Defendants Plaintiff alleges set excessive bail, I recommend that this claim be dismissed because the setting of bail is a judicial

function that is entitled to absolute immunity. (*See generally* Dkt. No. 1.)

### F. Plaintiff's Seventh Claim (Cruel and Unusual Punishment)

"Under New York law, when a court believes that a [criminal] defendant may be incapacitated, it 'must issue an order of examination' to determine whether the [criminal] defendant is competent to stand trial." *Murray v. Guzman*, 19-CV-1959, 2019 WL 1745744, at \*4, n.4 (S.D.N.Y. Apr. 17, 2019) (citing N.Y. Crim. Proc. L. § 730.30[1]).

The ordering of a competency examination pursuant to N.Y. Crim. Proc. L. § 730.30 is a judicial function. *Murray*, 2019 WL 1745744, at \*4. (holding that "quasi-judicial immunity" applies to any individual who conducts activities that are inexorably connected with the execution of court procedures that are analogous to judicial action). As a result, I recommend that this claim be dismissed because any Defendant involved in the ordering of Plaintiff's competency exam is entitled to absolute immunity.

### G. Plaintiff's Eighth, Tenth, and Eleventh Claims (Right to Counsel of His Choosing)

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const. amend. VI. The Supreme Court has observed that, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159 (1988). "While a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute right." *United States v. Paone,* 782 F.2d 386, 392 (2d Cir. 1986). In particular, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 151 (2006). "[I]ndigent defendants do not have a veto over who is appointed to defend them, provided that appointed counsel's representation is adequate." *Felder v. Goord,* 564 F.Supp.2d 201, 220 (S.D.N.Y. 2008) (citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 [1989]; *see also United States v. Schmidt,* 105 F.3d 82, 89 [2d Cir. 1997] ["Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of

defendant's choosing; although it may not compel defendant to proceed with incompetent counsel."] ). [11]

[11]  While the right to counsel "includes the right of an indigent defendant to have counsel appointed for his benefit free of charge to him, it never has been held that this right to counsel also comprehends a right of an indigent defendant to have counsel of his choice appointed for him. Rather, it is the duty of the court to appoint counsel for the indigent defendant, and unless there is good cause shown why the appointment of a particular attorney should not have been made, the defendant must accept the attorney selected by the court unless he waives the right to be represented by counsel." *Davis v. Stevens,* 326 F. Supp. 1182, 1183 (S.D.N.Y. 1971) (internal citations omitted) (collecting cases); *see also Luis v. United States,* 136 S. Ct. 1083, 1089 (2016) (plurality) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 2646, 2652 [1989]) ("[A]n indigent defendant, while entitled to adequate representation, has no right to have the Government pay for his preferred representational choice.").

\*8  Plaintiff's Eighth, Tenth, and Eleventh Claims all appear to be iterations of the same grievance, that he was appointed counsel and that counsel was not of his choosing. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's Eighth, Tenth, and Eleventh Claims be dismissed for failure to state a claim. [12]

[12]  Plaintiff also alleges that "not only did Gregory P. Thomas order me incompetent counsel he hadn't yet received his bar card." (Dkt. No. 1, Attach. 1, at 13.) It is unclear whether Plaintiff is alleging that Defendant Thomas was not admitted to the bar or whether his appointed counsel was not admitted to the bar at the time of appointment. In any event, I recommend that Plaintiff's claims against Defendant Thomas be dismissed for the reasons set forth in Part V.A. of this Decision. Plaintiff has not alleged any ineffective assistance of counsel claim nor has he alleged facts plausibly suggesting that his counsel was ineffective other than this single, conclusory statement. (*See generally* Dkt. No. 1.)

### H. Plaintiff's Ninth Claim (Due Process)

Plaintiff alleges that his due process rights were violated because he was "never Mirandized on any of the arrest[s]." (Dkt. No. 1, Attach. 1, at 12.)

"A *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion." *Deshawn E. v. Safir*, 156 F.3d 340, 348 (2d Cir. 1998) (internal citations omitted).

Plaintiff's Complaint does not allege any facts that would suggest police coercion led to inculpatory statements. (*See generally* Dkt. No. 1.) *See Gardner v. McArdle*, 461 F. App'x 64, 66 (2d Cir. 2012) (permitting the plaintiff leave to amend his complaint where the complaint alleged "that while he was in custody for approximately fourteen hours, he was (1) placed in a line-up; (2) forced to make written and videotaped statements; and (3) told that he could not place a phone call until he made a written statement–all without receiving *Miranda* warnings."). As a result, I recommend that Plaintiff's Ninth Claim be dismissed.

## I. Plaintiff's Twelfth Claim (Conspiracy)

Plaintiff alleges, in a conclusory fashion, that Defendants conspired "to so deprive and/or failure, neglect malfeasance, misfeasance, nonfeasance [or] refusal to protect [him] from said conspiracy although it was [with]in their power to do so." (Dkt. No. 1, at 2; Dkt. No. 1, Attach. 1, at 3-4.)

The elements of a conspiracy claim under § 1983 are: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

"[T]o make out a violation of § 1985(3), ... the plaintiff must allege ... four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). In addition, "[t]he conspiracy must be motivated by racial animus." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

**\*9** "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal quotations and citation omitted); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at \*9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554). Moreover, conspiracy claims under §§ 1983 and 1985 "fail[ ] as a matter of law where there is no underlying constitutional violation." *Tirse v. Gilbo*, 15-CV-0987, 2016 WL 4046780, at \*18 (N.D.N.Y. July 27, 2016) (Suddaby, C.J.).

Here, inasmuch as the Court is recommending dismissal of the predicate claims, the Court also recommends dismissing Plaintiff's conspiracy claims under §§ 1983 and 1985. *See, e.g., McGee v. Doe*, 568 F. App'x 32, 36, 39 (2d Cir. 2014) (affirming dismissal of malicious prosecution claim and conspiracy claim predicated upon malicious prosecution where the plaintiff did not receive a favorable termination); *LaRocco v. Jackson*, 10-CV-01651, 2012 WL 947554, at \*3 (E.D.N.Y. Mar. 19, 2012) ("Because [the plaintiff's] claim for false arrest and malicious prosecution are dismissed, his claim for conspiracy to commit those violations must be dismissed as well.") (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 [2d Cir. 2001]; *Pugh v. New York City*, 01-CV-0129, 2002 WL 398804, at \*2 n.4 [E.D.N.Y. Jan. 15, 2002]).

Additionally, the Court finds that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy.

Further, Plaintiff has not alleged any race or class-based animus as required to support a § 1985 conspiracy claim. "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't.*

*of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (Smith, M.J.) (citing *Segreto v. Kirschner*, 977 F. Supp. 553, 565 [D. Conn. 1997]; *Gay Veterans Ass'n, Inc. v. American Legion,* 621 F. Supp. 1510, 1515 [S.D.N.Y. 1985]; *Orshan v. Anker*, 489 F. Supp. 820, 823 [E.D.N.Y. 1980]).

Moreover, in the alternative, even if Plaintiff's conspiracy claims were found to be more than conclusory as pleaded, Plaintiff's claims would likely be barred by the "intra-agency conspiracy" doctrine. *See Griffin-Nolan v. Providence Washington Ins. Co.*, 04-CV-1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.) (dismissing the plaintiff's conspiracy claims where the defendants were officers of the City of Syracuse and the plaintiff did not allege that the individual defendants had a personal interest in their alleged conspiracy); *see also Little v. City of New York,* 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (dismissing the plaintiff's conspiracy claims where the officers were part of a single corporate entity, the City of New York, and plaintiff did "not provide any evidence to suggest that either of the officers were motivated by an independent personal stake in his arrest and prosecution."). Generally, that doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002).

**\*10** As set forth above in Part V.A. of this Order and Report-Recommendation, I recommend that all claims against Defendant Gregory Thomas be dismissed based on judicial immunity. As a result, the only remaining Defendants would be officers of the Johnson City Police Department, who, pursuant to the intra-agency doctrine, are incapable of conspiring with themselves. Moreover, I find that the Complaint does not allege that any of Defendants had a personal interest in the alleged conspiracy. (*See generally* Dkt. No. 1.)

For all of these alternative reasons, I recommend that Plaintiff's Twelfth Claim be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

**J. Claims Based Upon "Sovereign Citizenship"**

The Second Circuit has described "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." [13] *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013). The

"sovereign citizen" belief system has been described by other courts as "completely without merit," "patently frivolous," *United States v. Jagim,* 978 F.2d 1032, 1036 (8th Cir. 1992), and having "no conceivable validity in American law," *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990); *see also Buchholz*, 2017 WL 2345589, at *6 (collecting cases) (holding that "Plaintiff's Complaint–predicated as it is on a 'sovereign citizen theory' that is routinely held to have no basis in law–does not allege facts plausibly suggesting any entitlement to relief."); *Robinson v. Fischer*, 13-CV-1545, 2014 WL 1289611, at *5 (N.D.N.Y. Mar. 31, 2014) (Suddaby, C.J.) (dismissing the sovereign citizen claims as frivolous and for failure to state a claim when reviewing a *pro se* complaint pursuant to 28 U.S.C. § 1915[e][2][B] and 28 U.S.C. § 1915A[b] ).

[13]     Although Plaintiff refers to himself as a "sovereign individual," the beliefs he subscribes mirrors those of sovereign citizens. "Sovereign citizens apparently also believe that, by entering into contracts with the federal government or by receiving benefits from it, they lose their birthright of sovereign citizenship." *Gauthier v. Kirkpatrick*, 13-CV-0187, 2013 WL 6407716, at *17, n.18 (D. Vt. Dec. 8, 2013).

As a result, to the extent Plaintiff asserts any claims premised on his rights as a "sovereign citizen," I recommend that those claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, and because such claims are frivolous.

**K. Whether to Permit Amendment**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of

2019 WL 3315181

discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*11** In this instance, I conclude that the defects in Plaintiff's Sixth, Seventh, Eighth, Tenth, and Eleventh Claims and his claims against Defendant Thomas are substantive, rather than formal, such that any amendments would be futile. More specifically, as discussed above (and, again, as his Complaint reveals), Plaintiff's claims are founded on a legal theory that has been uniformly rejected as not just lacking in merit, but a frivolous waste of court resources. *See Gonzalez v. Sharpe*, 06-CV-1023, 2006 WL 2591065, at *3 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend, the plaintiff's claims against U.S. District Court Judge Gary L. Sharpe based on the doctrine of judicial immunity); *Brooks v. Ukieley*, 14-CV-6662, 2015 WL 235406, at *4 (E.D.N.Y. Jan. 16, 2015) (dismissing the plaintiff's claims in their entirety with prejudice against Judges Ukieley and Toomey based on the doctrine of judicial immunity); *Spence v. Thompson*, 2013 WL 1180765, at *20-21 (W.D. Pa. Jan. 4. 2013) (recommending dismissal with prejudice as to the plaintiff's claim that his Sixth Amendment right to appointment of counsel of his choosing was violated in his criminal proceeding). As a result, I conclude that granting leave to amend would not be likely to be productive and recommend that Plaintiff's Sixth, Seventh, Eighth, Tenth, and Eleventh Claims be dismissed without leave to amend.

However, Plaintiff could potentially amend his Complaint to assert cognizable causes of action that his right to travel was violated, that he was discriminated against, that his due process rights were violated, and that Defendants conspired to violate his civil rights. Accordingly, I recommend that Plaintiff be granted leave to amend his Complaint regarding the First, Fourth, Ninth, and Twelfth Claims. In addition, I find that Plaintiff could potentially amend his Complaint to assert cognizable causes of action against Defendants Bailey, Dodge, and Peers to the extent they were personally involved in the alleged constitutional deprivations. As a result, I recommend that Plaintiff be granted leave to amend his Complaint regarding Defendants Bailey, Dodge, and Peers.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 [2d Cir. 1987]); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316931, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**L. Consolidation**

As a matter of judicial discretion, a court may dismiss an action which is duplicative of another, previously filed suit. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). The basis for taking such a measure stems from the desire to avoid duplicative litigation, and therefore to promote judicial economy and protect parties from " 'the vexation of concurrent litigation over the same subject matter[.]' " *Curtis*, 226 F.3d at 138 (quoting *Adam v. Jacobs*, 950 F.2d 89, 93 [2d Cir. 1999]). Simply stated, a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 139. Because of the difficulties involved in anticipating the preclusive effects of a case that is still pending, courts faced with a duplicative lawsuit commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. *Id.* at 138 (collecting cases). The action to be taken when such circumstances are presented, if any, "is one of the district court's discretion in the comprehensive management of litigation in its court." *Id.* at 139.

**\*12** Having reviewed Plaintiff's Complaint, I conclude that his allegations originate from the same events described in *Wellington I*: the traffic stops and arrests of October 25, 2018, and November 11, 2018, and arrest on November 14,

2018. The interest of judicial economy militates in favor of consolidation of *Wellington I* and *Wellington II*. Accordingly, and without expressing an opinion as to whether Plaintiff's Second (excessive force), Third (failure to intervene), and Fifth (illegal search and seizure) Claims can withstand a properly filed motion to dismiss or summary judgment, I recommend that his Second, Third, and Fifth Claims should be accepted for filing as to Defendants Foland, Smith, Helper, Shaver, Crandell, Peets, Gavin, Bilek, Williams, and Douglas and this matter consolidated with *Wellington I*.

## VI. SUMMARY, RECOMMENDATION, AND ORDER

Having reviewed Plaintiff's IFP application, I find that he meets the requirements for IFP status, and therefore grant his motion for leave to proceed without prepayment of fees. Turning to the merits of Plaintiff's Complaint, I recommend that Plaintiff's claims against Brian Bailey, Brent Dodge, and Dominic H. Peers and Plaintiff's First, Fourth, Ninth, and Twelfth Claims be dismissed with leave to file a proposed amended complaint. Moreover, I recommend that Plaintiff's claims against Gregory P. Thomas and Plaintiff's Sixth, Seventh, Eighth, Tenth, and Eleventh Claims be dismissed without leave to amend. Further, I recommend that this action be consolidated with *Wellington I* because Plaintiff's factual allegations are based upon the same events and involve predominantly the same defendants.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be accepted for filing with respect to Plaintiff's Second, Third, and Fifth Claims against Defendants Foland, Smith, Helper, Shaver, Crandell, Peets, Gavin, Bilek, Williams, and Douglas; and it is further

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** within thirty days of the issuance of an order adopting this recommendation Plaintiff's First, Fourth, Ninth, and Twelfth Claims, and his claims against Defendants Bailey, Dodge, and Peers, as stated herein pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Sixth, Seventh, Eighth,

Tenth, and Eleventh Claims and his claims against Defendant Thomas, as stated herein pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that, in the event Plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to Plaintiff's Second, Third, and Fifth claims against Defendants Foland, Smith, Helper, Shaver, Crandell, Peets, Gavin, Bilek, Williams, and Douglas; and it is further

**RECOMMENDED** that this action be consolidated with *Wellington v. Foland et al.*, 19-CV-0457 (GTS/ML) (N.D.N.Y. removed 04/18/2019), with that case being designated as the lead case, and all future filings to be made in the lead case only.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]).

[14]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*13** It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and *Wellington v. Foland et al.*, 19-CV-0457 (GTS/ML) (N.D.N.Y. removed 04/18/2019), and serve a copy upon the parties in accordance with the local rules. [15]

[15]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with

*Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**All Citations**

Slip Copy, 2019 WL 3315181

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 6485157
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kennard D. WELLINGTON, Plaintiff,

v.

Patrolman FOLAND, et al.,[1] Defendants.

[1] Fourteen individuals are currently named as Defendants in the caption of this action's docket sheet: (1) Patrolman Foland; (2) Aaron Smith; (3) Bailey R. Brian; (4) Michael Helper; (5) Brian J. Shaver; (6) Nicholas Crandell; (7) Brent Dodge; (8) Patrolman Peets; (9) Patrolman Gavin; (10) Patrolman Joshua Bilek; (11) David Williams; (12) Gregory P. Thomas; (13) Eddy Douglas; and (14) Dominic H. Peers. (*See generally* Docket Sheet.) However, when liberally construed, Plaintiff's Complaint names as Defendants another two individuals: (15) Christopher D. Ketchum; and (16) Thomas Dellapenna. (*Compare* Docket Sheet *with* Dkt. No. 1, Attach. 1, at 3, 6, 43, 65, 88, 91, 92, 94-97, 99.) Moreover, the names of three of these 16 individuals need to be corrected: "Michael Helper" to "Michael Hepler"; "Nicholas Crandell" to "Nicholas Crandall"; and "Bailey R. Brian" to "Brian R. Bailey." (*Compare* Docket Sheet *with* Dkt. No. 1, at 1-4 *and* Dkt. No. 1, Attach. 1, at 5, 40-42, 44, 50, 52, 58, 61, 62.) Finally, it appears that "Brent Dodge" may actually be named "Grant Dodge," and that "Dominic H. Peers" and "Patrolman Peets" may be the same person. (*Compare* Dkt. No. 1, at 1, 4, *with* Dkt. No. 1, Attach. 1, at 43 *and* Dkt. No. 12, at 1, 4.) However, because these last two facts are unclear from the record, these changes will not be ordered at this time.

3:19-CV-0615 (GTS/ML)
|
Signed 12/03/2019

**Attorneys and Law Firms**

KENNARD D. WELLINGTON, Plaintiff, Pro Se, 3104 Buckingham Road, Endwell, New York 13760.

OF COUNSEL: LILY A. OCKERT, ESQ., MORRIS DUFFY ALONSO & FALEY, Counsel for Defendants, 2 Rector Street, 22 nd Floor, New York, New York 10006.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Kennard D. Wellington ("Plaintiff") against 16 individuals ("Defendants"), are the following: (1) United States Magistrate Judge Miroslav Lovric's Report-Recommendation recommending that certain of the claims in Plaintiff's Complaint be dismissed with leave to replead within thirty days, certain of the Complaint's claims be dismissed without leave to replead, and the Complaint's remaining claims be consolidated with another action that Plaintiff currently has pending before this Court; (2) Plaintiff's "demand for abatement." (Dkt. Nos. 10, 11.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety, and Plaintiff's "demand for abatement" is denied.

**I. RELEVANT BACKGROUND**

**A. Magistrate Judge Lovric's Report-Recommendation**

Generally, in his Report-Recommendation, Magistrate Judge Lovric rendered the following three findings of fact and/or conclusions of law: (1) that Plaintiff's First, Fourth, Ninth and Twelfth Claims, and his claims against Defendants Bailey, Dodge and Peers, should be *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with leave to replead within 30 days of the date of the Decision and Order adopting the Report-Recommendation; (2) that Plaintiff's Sixth, Seventh, Eighth, Tenth and Eleventh Claims, and his claims against Defendant Thomas, should be *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) without leave to replead; and (3) that Plaintiff's remaining claims (i.e., his Second, Third and Fifth Claims against Defendants Foland, Smith, Hepler, Shaver, Crandall, Peets, Gavin, Bilek, Williams and Douglas) should be consolidated with his other action pending in this Court (i.e., *Wellington v. Foland, et al.*, 19-CV-0457). (Dkt. No. 11, at Parts V and VI.)

Neither party has submitted an Objections to the Report-Recommendation and the time in which to do so has expired. (*See generally* Docket Sheet.)

**B. Plaintiff's Demand for Abatement**

On the date on which Magistrate Judge Lovric issued his Report-Recommendation, Plaintiff filed a "demand for abatement," seeking to end several ongoing criminal proceedings pending against him in Johnson City Village Court arising from his arrest for driving with a suspended license and other violations of the New York Vehicle and Traffic Law. (Dkt. No. 10.)

Generally, in memorandum of law in opposition to Plaintiff's "demand for abatement," Defendants argue that the Court should deny Plaintiff's request for the following two reasons: (1) Plaintiff's request is barred by the Anti-Injunction Act, and Plaintiff has failed to identify any exceptions to the Anti-Injunction Act that apply; and (2) Plaintiff's request is barred by the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), and Plaintiff has presented no "extraordinary circumstances" that warrant immediate federal relief. (*Compare* Dkt. No. 12 *with* Dkt. No. 1 *and* Dkt. No. 1, Attach. 1.)

## II. STANDARD OF REVIEW

**\*2** When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(c)). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [2] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [3] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[2]   *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[3]   *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a

*clear error* review. [4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [5]

[4]　　*See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[5]　　*See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**\*3** After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Lovric's thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation: Magistrate Judge Lovric employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein.

Finally, Plaintiff's "demand for abatement" is denied for each of the two reasons provided by Defendants (*see, supra*, Part I.B. of this Decision and Order), as well as the additional reasons that the request is unsupported by a memorandum of law, a citation to the rule or statute on which the request is based, and an affidavit, as required by Local Rules of Practice for this Court. N.D.N.Y. L.R. 7.1(a)(1),(2).

**ACCORDINGLY**, it is

**ORDERED** that, in accordance with note 1 of this Decision and Order, the Clerk of the Court is directed to **CORRECT** the caption of the docket sheet in this action so as to (1) add Christopher D. Ketchum and Thomas Dellapenna as Defendants, (2) change the name of Defendant "Michael Helper" to Defendant "Michael Hepler," (3) change the name of Defendant "Nicholas Crandell" to Defendant "Nicholas Crandall," and (4) change the name of Defendant "Bailey R. Brian" to Defendant "Brian R. Bailey"; and it is further

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 11) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's First, Fourth, Ninth, and Twelfth Claims, and his claims asserted against Defendants Bailey, Dodge, Peers and Ketchum, are *sua sponte* **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) **with leave to replead within THIRTY (30) DAYS** of the date of this Decision and Order; and it is further

**ORDERED** that, should Plaintiff choose to file an Amended Complaint within 30 days of the date of this Decision and Order, the Amended Complaint must be a complete pleading that does not incorporate by reference any portion of the original Complaint; and it is further

**ORDERED** that Plaintiff's Sixth, Seventh, Eighth, Tenth and Eleventh Claims, and his claims against Defendants Thomas and Dellapenna are *sua sponte* **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) **without leave to replead**; and it is further

**ORDERED** that Plaintiff's Second, Third and Fifth Claims against Defendants Foland, Smith, Hepler, Shaver, Crandall, Peets, Gavin, Bilek, Williams and Douglas, shall be **CONSOLIDATED** with *Wellington v. Foland, et al.*, 19-CV-0457 (N.D.N.Y.), with this action being designated as the Member Case, the latter action being designated as the Lead Case, and all future filings being made in the Lead Case only; and it is further

**ORDERED** that Plaintiff's "demand for abatement" (Dkt. No. 10) is **DENIED**.

**All Citations**

Slip Copy, 2019 WL 6485157

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 85 of 152

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

KeyCite Yellow Flag - Negative Treatment

Distinguished by Harrison v. New York, E.D.N.Y., March 20, 2015

2005 WL 1460424
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edward P. GRIFFIN-NOLAN, Plaintiff,

v.

PROVIDENCE WASHINGTON INSURANCE
COMPANY and Howard Blute, in his
Individual Capacity as Manager for the
Business Development Executives at
Washington Insurance Company, Defendants.

No. 504CV1453FJSGJD.
|
June 20, 2005.

**Attorneys and Law Firms**

Chamberlain, D'Amanda, Oppenheimer & Greenfield LLP,
The Galleries of Syracuse, Syracuse, New York, for Plaintiff,
Mairead E. Connor, of counsel.

City of Syracuse Corporation Counsel, Syracuse, New York,
for Defendants, David H. Walsh, IV, of counsel.

MEMORANDUM-DECISION AND ORDER

SCULLIN, Chief J.

I. INTRODUCTION

**\*1** Plaintiff's complaint asserts (1) a 42 U.S.C. § 1983 cause
of action for false arrest and denial of First Amendment
rights against Defendants City of Syracuse ("City"), Mullen,
and Hennessey, alleging that Defendants arrested him for
speaking to Defendant officers about their conduct in
arresting a third-party; (2) a § 1983 cause of action for
false arrest and denial of First Amendment rights against
all Defendants, alleging that they arrested him because they
believed he might file a complaint of police misconduct;
(3) a § 1983 cause of action for failure to train against
Defendant City, alleging that Defendant City acted with
deliberate indifference in failing to train its officers with
respect to what constitutes the crime of obstruction of justice
and how to handle the public; (4) a § 1985(3) cause of action
against all Defendants for conspiracy to deprive him of the
equal protection of the law and of his equal privileges and
immunities, alleging that Defendants conspired to so deprive
him out of animus for his attempt to prevent them from
injuring a third-person on the basis of that third-person's
race or color; (5) a common law false arrest claim against
all Defendants; (6) a common law false imprisonment claim
against Defendants Mullen, Cecile, and City; (7) a common
law malicious prosecution claim against all Defendants; (8)
a common law libel claim against Defendant Hennessey,
alleging that he made false statements in his Complaint
Information; and (9) a claim for attorney's fees pursuant to 42
U.S.C. § 1988.

Based upon these claims, Plaintiff seeks (1) declaratory relief
with respect to all causes of action, (2) injunctive relief
with respect to all causes of action other than those made
pursuant to § 1983, (3) compensatory damages, (4) exemplary
or punitive damages, and (5) costs, disbursements, and legal
fees.

Currently before the Court is Defendants' motion to dismiss
Plaintiff's complaint pursuant to Rules 12(b)(5) and 12(b)(6)
of the Federal Rules of Civil Procedure. [1]

[1]    Defendants' motion to dismiss does not address Plaintiff's
       claim for attorney's fees pursuant to 42 U.S.C. § 1988.

II. BACKGROUND [2]

[2]    Given the procedural posture of this case, the Court
       assumes the truth of the allegations in Plaintiff's
       complaint.

On the evening of December 16, 2003, Plaintiff was working
as a licensed massage therapist at his booth in the Carousel
Center mall. See Dkt. No. 1 at ¶ 10. Around 8:00 p.m. of
that evening, he saw a "Hispanic man of color" ("Paredes")
walking toward him and noticed a mall security officer
pointing Paredes out to Defendants Hennessey and Mullen.
See id. at ¶ 11. When Defendant Hennessey tried to stop
Paredes by placing his hand on Paredes' chest, Paredes spat
on the floor and continued shouting that he was going to
kill someone. See id. at ¶ 12. Defendant Hennessey then
took Paredes behind Plaintiff's booth, told him to show some
respect, and smashed his back and head against a concrete
pillar. See id. at ¶¶ 13-14. Paredes then either pushed or kicked
at Defendant Hennessey, at which point they both tumbled
and knocked over Plaintiff's booth. See id. at ¶¶ 15-16. With
Paredes face-down on the floor, Defendant Hennessey placed
his knee in Paredes' back and began punching him in the back.

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 86 of 152
Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)
2005 WL 1460424

*See id.* at ¶¶ 18-19. Defendant Mullen then also placed his knee in Paredes' back and began punching him in the back and sides. *See id.* at ¶ 21. Defendant officers each hit Paredes six or more times after they had subdued him. *See id.* at ¶ 22.

**\*2** Plaintiff crouched by Defendant officers and told them that they had gone over the top and were out of control. *See id.* at ¶ 24. Defendant Mullen told Plaintiff to get back, and Plaintiff complied. *See id.* at ¶¶ 26-27. After Defendant officers continued to punch Paredes in the back, Plaintiff again told them that they were over the top. *See id.* at ¶¶ 28-29. Defendant Mullen told Plaintiff that, if he did not stop, he would be arrested for Obstructing Governmental Administration. *See id.* at ¶ 30. Plaintiff stopped speaking to Defendant officers, and they pulled Paredes up and led him away. *See id.* at ¶¶ 31-32.

At approximately 9:00 p.m., Defendant Mullen returned to Plaintiff's booth with Defendant Cecile and a mall security guard. *See id.* at ¶ 33. Defendant Cecile told Plaintiff that he understood that Plaintiff had been involved in an incident earlier in the evening and asked Plaintiff to explain what happened. *See id.* at ¶ 34. As soon as Plaintiff began to explain, Defendant Cecile stopped him and asked him whether he understood that he could be arrested. *See id.* at ¶ 35. Defendant Cecile told Plaintiff that, at the time of the incident, it was Defendants Hennessey's and Mullen's call whether to arrest Plaintiff but that, if Plaintiff made a complaint, it would be his call whether to arrest Plaintiff. *See id.* at ¶ 37. After Plaintiff said that he was not sure how the complaint procedure worked, Defendant Cecile showed Plaintiff the patch on his shoulder and said, " 'It's right here with me, right now." ' *See id.* at ¶¶ 38-39. Plaintiff told Defendant Cecile that he did not think that this was the only way to file a complaint. *See id.* at ¶ 40. Defendant Cecile then told Plaintiff that, if he filed a complaint, Defendant Cecile would take him down. *See id.* at ¶ 41. Next, Defendant Cecile told Defendant Mullen, " 'He's not happy. We're going to get a complaint. Take him in,' or words to that effect." *See id.* at ¶ 42. When Plaintiff said that he had things at his booth that he could not leave unsecured, Defendant Cecile told him that he should have thought of that before. *See id.* at ¶ 44. Upon Defendant Cecile's direction, Defendant Mullen arrested Plaintiff for Obstructing Governmental Administration by giving him an appearance ticket. *See id.* at ¶¶ 45-46.

That same night, Defendant Hennessey submitted a complaint information affidavit in support of Plaintiff's arrest. *See id.* at ¶ 47. The affidavit contained a number of statements that were false and that Defendant Hennessey knew to be false when he made them. *See id.* at ¶¶ 48-49. Plaintiff's counsel filed a motion to dismiss the information for insufficiency. *See id.* at ¶ 51. On January 10, 2004, the Syracuse City Court dismissed the information in its entirety. *See id.* at ¶ 52.[3] In or about November 2004, Carousel Center management informed Plaintiff that he could not set up his booth during the holiday season because it was concerned about potential negative publicity arising from these incidents. *See id.* at ¶ 53.

[3]     It appears to the Court that this dismissal actually occurred on January 14, 2004, and was made pursuant to New York Criminal Practice Law § 170.40. *See* Dkt. No. 9 at Pt. 5.

**\*3** Plaintiff filed the instant action on December 15, 2004. *See* Dkt. No. 1.

## III. DISCUSSION

**A. Defendants' motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure**

Defendants argue that the Court lacks personal jurisdiction over them because Plaintiff failed to serve them with summonses. The docket sheet contains four affidavits of service that indicate that each Defendant was served with the summons and the complaint sometime between January 12, 2005, and January 26, 2005. *See* Dkt. Nos. 5-8. Perhaps these affidavits are mistaken; Plaintiff's counsel has filed an affidavit stating that Plaintiff personally served summonses and complaints for all Defendants upon Defendants' counsel on February 8, 2005, one day after Defendants filed their motion to dismiss. *See* Dkt. Nos. 9, 14 at ¶ 4. Since Defendants do not address insufficiency of service of process in their reply memorandum of law, the Court presumes that they were served summonses and are abandoning their motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Regardless, both Local Rule 7.1(a)(2) and common sense dictate that a motion to dismiss for a failure to serve summonses requires a supporting affidavit, which Defendants have not provided. *See* L.R. 7.1(a)(2). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

**B. Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

**1. Standard of review**

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 87 of 152

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

In considering a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Hence, dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quotation omitted).

*2. Defendant City's liability for Plaintiff's § 1983 claims*

A municipality may only be held liable under § 1983 when its policies or customs result in a plaintiff's constitutional injury. *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978). The existence of a policy or custom may be inferred when a plaintiff presents evidence that a " 'municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction....' " *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quotation and footnote omitted). Contrary to some earlier Second Circuit cases, there is no heightened pleading requirement for claims of municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167-68 (1993) (rejecting contention that "plaintiff must do more than plead a single instance of misconduct" to state a claim for municipal liability); *contra Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993) (citation omitted). As the Supreme Court noted, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman,* 507 U.S. at 168-69.

*4  Plaintiff's complaint alleges that Defendant City has a policy or custom of threatening those who verbally challenge, or indicate the desire to file a complaint about, police misconduct with Obstructing Governmental Administration and that Defendant City has shown deliberate indifference in failing to train its police officers in how to handle the public while making arrests and failing to train its officers about what constitutes the crime of Obstructing Governmental Administration. *See* Dkt. No. 1 at ¶¶ 55, 64, 71-73. Plaintiff's allegations of municipal liability are directly related to his allegation of personal injury and, if shown to be true according to the evidence, might support a determination of municipal liability. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City for failure to adequately plead municipal liability.

*3. Plaintiff's § 1983 and common law false arrest and false imprisonment claimsa. elements of false arrest and false imprisonment*

"The elements of false arrest ... under § 1983 are 'substantially the same' as the elements under New York law." *Boyd v. City of N.Y.,* 336 F.3d 72, 75 (2d Cir.2003) (quotation omitted). The elements of false arrest and false imprisonment claims are identical: " '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *See Curry v. City of Syracuse,* 316 F.3d 324, 335 (2d Cir.2003) (quotation omitted).

The central dispute between the parties is whether the issuance of an appearance ticket constitutes the requisite confinement.

*b. common law false arrest and false imprisonment*

Every New York case of which the Court is aware that has considered whether the issuance of an appearance ticket constitutes confinement has held that the issuance of an appearance ticket, in and of itself, does not constitute confinement for purposes of a common law false arrest or false imprisonment claim. *See Du Chateau v. Metro-North Commuter R.R. Co.,* 253 A.D.2d 128, 129, 132 (1st Dep't 1999) (citations omitted) (police officer escorted plaintiff from train, talked to him, and issued an appearance ticket); *Kramer v. Herrera,* 176 A.D.2d 1241, 1241 (4th Dep't 1991) (citations omitted); *Pozzanghera v. Anderson,* 136 A.D.2d 912, 913 (4th Dep't 1988) ("Plaintiff's sole contention is that he was detained by the service of an appearance ticket. This did not restrict plaintiff's freedom and, therefore, does not form a basis for his wrongful arrest claim." (citation omitted)); *Pritchett v. State,* 61 A.D.2d 1110, 1110 (3d Dep't 1978); *cf. Reinhart v. Jakubowski,* 239 A.D.2d 765, 766 (3d Dep't 1997) (issuance of criminal summons requiring court appearance insufficient to support false arrest claim); *Vill. of Ellenville v. Searles,* 235 A.D.2d 692, 693 (3d Dep't 1997) (brief traffic stop in order to serve process did not constitute requisite confinement) (citations omitted).

*5  Plaintiff contends, however, that his complaint alleges more than the mere issuance of an appearance ticket. Conduct that accompanies the issuance of an appearance ticket certainly can constitute confinement for purposes of a false arrest or false imprisonment claim. *See Wiggins v. Metro-North Commuter R.R. Co.,* 228 A.D.2d 198, 198 (1st

Case 1:19-cv-00577-GTS-TWD   Document 13   Filed 01/21/20   Page 88 of 152
Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)
2005 WL 1460424

Dep't 1996) (police escorted plaintiff off train, questioned him in a railroad police facility, and issued an appearance ticket). Unfortunately, Plaintiff does not specify which of his allegations he believes show that Defendants confined him. The relevant allegations are:

33. Approximately one hour later, at about 9:00 p.m., Officer Mullen returned to Plaintiff's booth with [Sergeant Cecile] and a mall security guard.

34. Sergeant Cecile told Plaintiff that he understood he had been involved in an incident earlier and asked the Plaintiff what happened.

35. As the Plaintiff began to tell him, Sergeant Cecile interrupted Plaintiff and asked if Plaintiff understood that he could be arrested.

36. Plaintiff was quite surprised at this statement as he had complied with Officer Mullen's directive and had not interfered with Paredes' arrest or done anything unlawful.

37. Sergeant Cecile said that right then it was the officer's call, but if they were going to receive a complaint from the Plaintiff, it would be his call whether to arrest Plaintiff.

38. Plaintiff said that he was not sure how the complaint procedure worked.

39. Sergeant Cecile showed Plaintiff the patch on his shoulder and said, "It's right here with me, right now."

40. Plaintiff said that he did not think that was the only way to file a complaint.

41. Sergeant Cecile then told Plaintiff, "I'll tell you right now if you're filing a complaint, I'm taking you down," or words to that effect.

42. Sergeant Cecile told Officer Mullen, "He's not happy. We're going to get a complaint. Take him in," or words to that effect.

43. Plaintiff explained that he had expensive things in his booth that he could not leave unsecured.

44. Sergeant Cecile told Plaintiff that he should have thought of that before.

45. Sergeant Cecile told Officer Mullen to give Plaintiff an appearance ticket, which Officer Mullen did.

*See* Dkt. No. 1 at ¶¶ 33-45. Although Plaintiff alleges that Defendant Cecile threatened to arrest him, the mere threat to arrest does not constitute confinement. *See Blumenfield v. Harris,* 3 A.D.2d 219, 220 (1st Dep't 1957) (citations omitted), *aff'd* 3 N.Y.2d 905 (1957). [4]

[4]    In articulating his first cause of action, Plaintiff alleges that "[i]n the course of arresting Plaintiff, plaintiff was not free to leave and was confined against his will at the Carousel Center." *See* Dkt. No. 1 at ¶ 58. However, in light of the more specific allegations that Plaintiff made in his statement of facts, this allegation is too vague and conclusory to support a reasonable inference that Defendants confined him.

Accepting all of Plaintiff's allegations as true and drawing every reasonable inference from them, the Court does not find that he has alleged that Defendants took any actions that would constitute confinement for purposes of a common law false arrest or false imprisonment claim. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim.

*c. § 1983 false arrest*

**\*6** The question of whether the issuance of an appearance ticket constitutes confinement for purposes of § 1983 is not so clear. Defendants rely upon *Angel v. Kasson,* 581 F.Supp. 170, 177-78 (N.D.N.Y.1983) ("[I]t [is] well settled that the issuance of such tickets under the provisions of N.Y.Crim. Proc. Law § 150.10 does not constitute an arrest." (citation and footnote omitted)). Plaintiff, on the other hand, relies upon *Dorman v. Castro,* 214 F.Supp.2d 299 (E.D.N.Y.2002), which states that,

[a]lthough this is a close case, the Court finds that Plaintiffs were subject to a "seizure" under the Fourth Amendment. Plaintiffs claim that their liberty was restrained because "at the point when the Plaintiffs were informed that they were being issued a Summons" they "were not free to leave until the Plaintiffs had the Summons in hand."

*Id.* at 308 (quotation omitted). *Dorman* goes on to note that "district courts in this circuit that have analyzed *Murphy [v. Lynn,* 118 F.3d 938 (2d Cir.1997) ], however, have held that the mere issuance of an appearance ticket, without any restraint on travel, is a sufficient restraint of liberty to constitute a 'seizure' under the Fourth Amendment." *Id.* (citing *Kirk v. Metropolitan Trans. Auth.,* No. 99 CV 3787,

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 89 of 152

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

2001 WL 258605, *15 (S.D.N.Y. Mar. 14, 2001); *Kirton v. Hassel,* No. 96 CV 1371, 1998 WL 146701, *6 (E.D.N.Y. Mar. 25, 1998); *Sassower v. City of White Plains,* 992 F.Supp. 652, 656 (S.D.N.Y.1998)) (other citation omitted). [5]

[5]     Contrary to *Dorman'* s statement, two of the supporting cases it cites do not involve appearance tickets and the third, *Kirk,* involves a desk appearance ticket that the defendant issued after the plaintiff had been arrested and detained. *Kirk,* 2001 WL 258605, *2-*4.

*Dorman* and all the supporting cases that it cites rely upon *Murphy. Murphy,* applying *Albright v. Oliver,* 510 U.S. 266 (1994), held that, in order for a plaintiff to establish a § 1983 malicious prosecution claim, he "must show ... that the initiation or pendency of judicial proceedings" resulted in a Fourth Amendment "seizure." *Murphy,* 118 F.3d at 944. The court went on to hold that "[t]he liberty deprivations regulated by the Fourth Amendment are not limited to physical detention." *Id.* at 945. Finally, the court, relying upon Justice Ginsburg's solitary concurrence in *Albright,* held that

> while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and *may order him to make periodic appearances,* such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.

*Id.* at 946 (emphasis added).

Like *Murphy,* all three of the supporting cases that *Dorman* cites concern malicious prosecution claims. There is certainly considerable similarity between the analysis of a § 1983 malicious prosecution claim and a § 1983 false arrest claim; both arise out of the Fourth Amendment's protection against unreasonable seizures. However, *Murphy* does not expressly address false arrest claims. Furthermore, there is reason to constrain the application of *Murphy* to the precise issues it addresses. Judge Jacobs, dissenting in *Murphy,* after noting the majority's reliance upon Justice Ginsburg's solitary concurrence, pointed out that "[a] probable cause

determination is required only for 'those suspects who suffer restraints on liberty *other* than the condition that they appear for trial.' " *Id.* at 953, 955 (quoting *Gerstein [v. Pugh],* 420 U.S. [103,] 125 n. 26, 95 S.Ct. [854,] 869 n. 26 [ ( 1975) ] (Judge Jacobs' emphasis)) (footnote omitted). In *Sassower,* Judge Lowe noted the novelty of the *Murphy* holding and quoted Judge Jacobs' statement that " 'strange is the majority's holding that [plaintiff] was seized within the meaning of the Fourth Amendment because he was required to appear in court." ' *Sassower,* 992 F.Supp. at 655, 656 (quotation omitted).

**\*7** Although in the context of a malicious prosecution claim *Murphy* would be controlling, given the tenuousness of its reasoning, the Court holds that the issuance of an appearance ticket does not, in and of itself, constitute confinement for purposes of a § 1983 false arrest or false imprisonment claim. Furthermore, since the circumstances surrounding the issuance of the appearance ticket in this case do not present any alternative forms of the restraint of Plaintiff's liberty, the Court grants Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim.

*4. Plaintiff's § 1983 First Amendment claims*

Second Circuit First Amendment retaliation case law is, to put it mildly, confusing. There are at least three formulations of the elements of a First Amendment retaliation claim. See *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) ((1) protected speech or conduct, (2) the defendant's adverse action against the plaintiff, and (3) " 'a causal connection between the protected speech and the adverse action" ' (quotation omitted)); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) ((1) conduct that the First Amendment protects that (2) prompts or substantially causes the defendant's action (citations omitted)); *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) ((1) protected speech or conduct that (2) motivates or substantially causes the defendant's action, which action (3) effectively chills the plaintiff's exercise of his First Amendment right (citation omitted)).

In an attempt to make sense of this case law, one approach is to distinguish cases according to broad types. The great majority of First Amendment retaliation cases arise in the prisoner and public employee contexts. Less typical are those cases, like the one currently before the Court, in which a private citizen alleges that state actors took some action against him in retaliation for his exercise of his First Amendment rights. Unfortunately, even in this subset of cases, there is

2005 WL 1460424

disagreement about the elements of the claim. The most recent case in this subset to set forth the elements of a First Amendment retaliation claim is *Dougherty.* In that case, the plaintiff alleged that the defendants had revoked a previously issued building permit in retaliation for his exercise of his First Amendment rights. Although the court indicated that there may have been additional protected speech, it specifically noted the plaintiff's allegation that the permit revocation occurred soon after the defendants' receipt of his opposition papers to their motion to dismiss an action that he had filed in relation to an earlier denial of a permit. *See Dougherty,* 282 F.3d at 91-92. The court held that the circumstances that the plaintiff alleged gave rise to a sufficient inference of a causal relationship between his protected conduct and the defendants' action to withstand a motion to dismiss. *See id.* at 92.

**\*8** The next most recent case in the subset of private citizen plaintiffs is *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98 (2d Cir.2001). *Garcia* involved a student who claimed that the defendants dismissed him from medical school in retaliation for his exercise of his First Amendment rights. The court followed the same formulation of the elements of a First Amendment retaliation claim as did *Gill* but concluded that the plaintiff's assertions did not satisfy the third element of that formulation. *See id.* at 106-07 (quotation and other citation omitted).

After *Garcia,* the next most recent case in this subset is *Curley.* The facts of that case are more analogous to those of the instant action than are those of either *Dougherty* or *Garcia.* The plaintiff in *Curley* alleged that the defendants arrested him in retaliation for comments that he had made while campaigning for municipal office about a police cover-up and failure to discipline. *See Curley,* 268 F.3d at 72-73. The court found that the defendants were entitled to summary judgment on the plaintiff's First Amendment retaliation claim because the existence of probable cause to arrest him negated the second element of such a claim and because the fact that the plaintiff continued his campaign and later campaigned for another municipal office negated the third, "chilling," element of the claim. *See id.* at 73.

*Curley* is distinguishable from *Dougherty* and *Garcia.* All the Second Circuit cases that the Court has found involving a private citizen plaintiff who alleges that the defendant arrested him in retaliation for his exercise of his First Amendment rights have articulated the same formulation of the elements of a First Amendment retaliation claim as did *Curley. See*

*Kerman v. City of N .Y.,* 261 F.3d 229, 241-42 (2d Cir.2001) (citation omitted); *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (citations omitted). Although it might be difficult to explain the distinction between private citizen arrestee plaintiff cases and the other private citizen plaintiff cases, the distinction is present in the case law. Therefore, the Court will follow the *Curley* formulation of the elements of a First Amendment retaliation claim. [6]

[6]     The only Second Circuit case that Plaintiff cites in support of his First Amendment retaliation claims is *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). *Gagliardi* applies the same formulation of the elements of the claim as does *Dougherty. See id.* at 194 (quotation and other citations omitted). However, *Gagliardi,* like *Dougherty,* is a private citizen zoning dispute case rather than a private citizen arrestee case.

The only challenge [7] that Defendants currently make to Plaintiff's First Amendment retaliation claims is that he fails to allege that they prevented him from filing a compliant, i.e., he fails to allege that Defendants' actions effectively chilled him from exercising his First Amendment rights. However, this challenge reads Plaintiff's claims too narrowly. Two distinct forms of speech are at issue in Plaintiff's first two causes of action. Plaintiff's first cause of action alleges that he verbally complained about Defendants' actions during the course of their arrest of Paredes. From Plaintiff's second cause of action, it may be reasonably inferred that he also desired to file a formal complaint about Defendants' actions after the arrest incident. With respect to the second cause of action, Plaintiff has not alleged that Defendants' actions effectively chilled him from filing a complaint. Therefore, Plaintiff's second cause of action fails to state a First Amendment claim. Accordingly, the Court grants Defendants' motion to dismiss the First Amendment claims in Plaintiff's second cause of action for failure to state a claim.

[7]     It is possible that Plaintiff's conduct in criticizing Defendants' actions during the course of their arrest of Paredes may not be protected activity. If the allegations in Defendant Hennessey's affidavit in support of the complaint information are true, Defendants likely had probable cause to arrest Plaintiff for Obstructing Governmental Administration and, thus, their threat to arrest him on that charge was privileged. *See* Dkt. No. 1 at ¶ 48. However, since Defendants have not raised the issue of whether Plaintiff's conduct was privileged, and the Court must accept the allegations in Plaintiff's

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 91 of 152

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

complaint as true, the Court cannot address this issue at this time.

**\*9** However, with respect to Plaintiff's first cause of action, the Court finds that it may reasonably infer from the complaint that Defendants' conduct effectively chilled Plaintiff's speech. The relevant allegations are:

24. Plaintiff then crouched down and told the officers that they were "over the top" and that they were "out of control" or words to that effect.

25. Plaintiff did this because the police officers were brutalizing Paredes.

26. Officer Mullen told Claimant to get back.

27. Claimant complied by stepping back.

28. Officers Mullen and Hennessey then continued to punch Paredes on the back after Paredes was subdued.

29. Plaintiff told the officers again that they were "over the top" or words to that effect.

30. Officer Mullen then told the Plaintiff that if he didn't stop, he would be arrested for Obstructing Governmental Administration.

31. Plaintiff stopped speaking to the officers.

*See* Dkt. No. 1 at ¶¶ 24-31. Accordingly, since Plaintiff has sufficiently alleged that Defendants' (or at least Defendant Mullen's) actions effectively chilled his exercise of his First Amendment rights, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim.

### 5. Plaintiff's § 1985(3) claims

Defendants have asserted three bases for the dismissal of Plaintiff's § 1985(3) claims. First, they argue that Plaintiff, as a white person, lacks standing to assert a § 1985(3) claim. Second, they contend that Defendants, as agents or employees of a corporate entity, by definition, may not conspire with one another. Finally, they assert that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

### i. standing

Despite the age and extensive use of § 1985(3), case law contains little discussion of the question of who has standing to assert a claim under that statute. [8] However, the Court finds

that the case law provides sufficient guidance to answer the question currently before it: whether a non-minority person who alleges that he was injured by a conspiracy that aimed to deprive minority persons of the equal protection of the law has standing to assert a § 1985(3) claim.

[8]     The parties have cited conflicting precedents, none of which are binding on this Court. Defendants cite two cases for the proposition that a plaintiff asserting a § 1985(3) claim must himself be a member of a class that the statute protects: *Puglisi v. Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 692 (S.D.N.Y.1996) (citations omitted); *McLoughlin v. Altman,* No. 92 Civ. 8106, 1993 WL 362407, \*6 (S.D.N.Y. Sept. 13, 1993) (citation omitted). Although *McLoughlin* cites *Griffin v. Breckinridge,* [403 U.S. 88, 102,] 91 S.Ct. 1790, 1798 (1971), for the proposition that "a claimant must show, among other things, that she belonged to the type of class that is protected by that statute," *McLoughlin,* 1993 WL 362407, at \*6, it does not appear that *Griffin* stands for such a proposition. Likewise, although *Puglisi* discusses several other cases, when it holds "that plaintiff cannot bring this § 1985(3) claim because ... plaintiff is not a member of the class protected by the statute nor a member of the race triggering the alleged racial discrimination[,]" *McLoughlin* is the only case that the court cited that supports this holding. *Puglisi,* 947 F.Supp. at 692.

The cases upon which Plaintiff relies are also suspect. He contends that a white person who has sought to vindicate the rights of members of a racial minority and against whom the defendants conspire has standing to assert a § 1985(3) claim. He cites three primary cases to support this proposition: *Maynard v. City of San Jose,* 37 F.3d 1396, 1403-04 (9th Cir.1994) (citations and footnote omitted); *Pisello v. Town of Brookhaven,* 933 F.Supp. 202, 216 (E.D.N.Y.1996) (citing *Maynard* ); *Bryant v. Polston,* No. IP 00-1064-C-T/G, 2000 WL 1670938, \*7 (S.D.Ind. Nov. 2, 2000) (citing *Maynard* ). In *Maynard,* the Ninth Circuit sought to apply the law of that circuit which provided that "[p]laintiffs have standing under Section 1985 only if they can show they are members of a class that the government has determined 'require[s] and warrant[s] special federal assistance in protecting their civil rights." ' *Maynard,* 37 F.3d at 1403 (quotations and other citation omitted). The court reasoned that, because Title VII "grants special protection to whites who are denied association with members of other groups because of an employer's discriminatory practices" and "to all employees-regardless of race-who are subjected to retaliation

Case 1:19-cv-00577-GTS-TWD Document 13 Filed 01/21/20 Page 92 of 152

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

for assisting in the investigation of discriminatory employment practices," such persons may have standing to assert a § 1985(3) claim. *Id.* (citation omitted). The plaintiff in *Maynard* had alleged that his employer and other defendants had retaliated against him for complaining about discriminatory hiring practices. *See id.* at 1399-1400. Since it does not appear that the Second Circuit has articulated a general statement of the requirement for standing under § 1985(3), the Court does not find *Maynard* persuasive.

The Supreme Court has discussed the statute's purpose: "[t]he predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U .S. 825, 836 (1983). This statutory purpose implies that, if a white person who sought to vindicate the rights of members of a racial minority were injured by a conspiracy that aimed to deny members of that racial minority of the equal protection of the laws, he would have standing to assert a § 1985(3) claim.

**\*10** At least two Courts of Appeals have expressly held that a plaintiff asserting a § 1985(3) claim need not himself be a member of a class that the statute protects. *See Cutting v. Muzzey,* 724 F.2d 259, 260 (1st Cir.1984) (holding that a non-Italian had standing to assert a § 1985(3) claim against members of a town planning board who allegedly conspired to deprive Italians of access to housing); *Novotny v. Great Am. Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1244 (3d Cir.1978) (*en banc* ) ("[M]embers of a conspiracy to deprive women of equal rights are liable under § 1985(3) to persons who are injured in furtherance of the object of the conspiracy, whether male or female."), *vacated on other grounds,* 442 U.S. 366 (1979). [9] Although the Second Circuit has not addressed whether a white person may have standing to assert a § 1985(3) claim, the Court finds that, in light of the discussion in *Scott,* the holdings of *Cutting* and *Novotny* are persuasive. Therefore, the Court concludes that the fact that Plaintiff is white does not, in and of itself, bar him from asserting a § 1985(3) claim. Consequently, since Plaintiff has alleged that a conspiracy whose object was to deprive the constitutional rights of a member of a racial minority injured Plaintiff while he was seeking to vindicate those rights, the Court finds that he has adequately alleged standing for his 42 U.S.C. § 1985(3) claim.

[9] The Supreme Court vacated *Novotny* because the plaintiff in that case alleged that the conspiracy that injured him had the goal of depriving women of their Title VII rights. The Court held that, because allowing a plaintiff to base a § 1985(3) cause of action upon rights that Title VII created would circumvent the procedural requirement that Congress had built into Title VII, "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Novotny,* 442 U.S. at 378. Since the Fourth Amendment creates the rights of Paredes of which Plaintiff alleges Defendants conspired to deprive him, the Court's holding does not bar Plaintiff's action.

### ii. intra-corporate conspiracy doctrine

" 'Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together[ ]' " while acting within the scope of their employment. *Nassau County Employee "L" v. County of Nassau,* 345 F.Supp.2d 293, 304 (E.D.N.Y.2004) (quotations and other citations omitted); *see Crudele v. City of N.Y. Police Dep't,* No. 97 Civ. 6687, 2004 WL 1161174, \*5 (S.D.N.Y. May 24, 2004) (citations omitted). Although courts first applied this doctrine to cases involving public corporations, they have subsequently held that the doctrine is applicable to municipal entities and their officers, agents, and employees. *See County of Nassau,* 345 F.Supp.2d at 304 (citation omitted); *Cameron v. Church,* 253 F.Supp.2d 611, 623 (S.D.N.Y.2003) (quotation omitted). "However, '[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." ' *County of Nassau,* 345 F.Supp.2d at 304-05 (quotation omitted); *see Stoner v. N.Y. City Ballet Co.,* No. 99 Civ. 0196, 2002 WL 523270, \*9 (S.D.N.Y. Apr. 8, 2002) (quotation and other citation omitted).

Individual Defendants are officers of Defendant City. *See* Dkt. No. 1 at ¶¶ 7-9. Plaintiff's allegation that at the time that individual Defendants "conspired to violate Plaintiff's civil rights and committed acts in furtherance of such conspiracy, they were acting as police officers for the City of Syracuse[ ]" is presumably an admission that individual Defendants were acting within the scope of their employment. *See* Dkt. No. 1 at ¶ 79.

**\*11** Nonetheless, Plaintiff contends that the personal interest exception applies. "[T]hat exception applies where 'a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose." ' *Everson v.*

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 93 of 152

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

*N.Y. City Transit Auth.,* 216 F.Supp.2d 71, 76 (E.D.N.Y.2002) (quotation and other citation omitted); *see Salgado v. City of N.Y.,* No. 00 Civ. 3667, 2001 WL 290051, \*9 (S.D.N.Y. Mar. 26, 2001). Plaintiff has not alleged that individual Defendants had a personal interest in their alleged conspiracy. *See* Dkt. No. 1 at ¶¶ 77-83. In his motion papers, Plaintiff concedes that he "does not allege Defendants' personal stake in their bias against Plaintiff or Paredes...." *See* Dkt. No. 15 at 14. However, he contends that he has "allege[d] sufficient facts to infer that the Defendants were motivated by personal gain in silencing Plaintiff about what he witnessed concerning their brutality and/or misconduct in subduing and arresting Paredes and preventing Plaintiff from filing a complaint about such misconduct." *See id.* at 14-15 (citations omitted). He further argues that "the complaint alleges sufficient facts to infer that Defendants' employment opportunities and interest in not answering a complaint about their misconduct was Defendants' personal stake or interest in participating in the conspiracy." *See id.* at 15. However, since Defendant City arguably has the same general interest, Plaintiff's allegations do not give rise to a reasonable inference that individual Defendants' interests in the alleged conspiracy were distinct from those of Defendant City.

Accordingly, since the intra-corporate conspiracy doctrine applies, the Court grants Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim.[10]

[10]   Since the Court concludes that the intra-corporate conspiracy doctrine applies, it will not address Defendants' alternative argument that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

### 6. *Plaintiff's common law malicious prosecution claims*

In order to recover for malicious prosecution, a plaintiff must establish four elements: that a criminal proceeding was commenced; that it was terminated in favor of the accused; that it lacked probable cause; and that the proceeding was brought out of actual malice. *Cantalino v. Danner,* 96 N.Y.2d 391, 394-95 (2001) (citations omitted). Defendants argue that a dismissal in the interest of justice of an accusatory instrument pursuant to New York Criminal Practice Law § 170.40 cannot constitute a favorable termination. However, Defendants only cite pre-*Cantalino* case law to support their argument. *Cantalino* directly addressed "whether the dismissal of criminal charges against plaintiff in the interest of justice constituted a termination in her favor." *Id.* at 395. It

expressly rejected "a per se rule that a dismissal in the interest of justice can never constitute a favorable termination," and held that

> the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused. A case-specific rule is particularly appropriate for dismissals in the interest of justice, since the trial court is required to state on the record its reasons for dismissing the criminal charges....

**\*12** *Id.* at 396 (internal citation omitted). Unfortunately, in this case, the state court did not state on the record its reasons for dismissing the charges. *See* Dkt. No. 9 at 2. Furthermore, even if the state court had stated its reasons on the record, that record is not part of Plaintiff's pleadings. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's common law malicious prosecution claims for failure to state a claim.

### 7. *Plaintiff's common law libel claim*

Defendants argue (1) that Plaintiff has failed to comply with New York Civil Practice Law and Rules § 3016(a)'s requirement that a complaint asserting a claim for libel or slander set forth the particular words complained of and (2) that, if the Court dismisses all of Plaintiff's federal claims, it should decline to exercise jurisdiction over his state claims.

Since federal law governs the procedural issues in this case, " 'the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P." ' *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (quotation omitted). Therefore, the heightened pleading requirement of New York Civil Practice Law and Rules § 3016(a) does not apply to this action. *See Silverman v. City of N.Y.,* No. 98-CV-6277, 2001 WL 218943, \*8 (E.D.N.Y. Feb. 2, 2001) (quotation and other citation omitted). The allegations of libel in Plaintiff's complaint satisfy Rule 8's requirements of "a short and plain statement of the claim" and "simple, concise, and direct" allegations. Fed.R.Civ.P. 8(a), (e)(1); *see* Dkt. No. 1 at ¶¶ 47-49, 94-96. Furthermore, the Court has not dismissed all of Plaintiff's federal claims. Accordingly, the Court denies Defendants'

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

motion to dismiss Plaintiff's libel claim for failure to state a claim.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that Defendants' motion to dismiss Plaintiff's complaint for insufficient service of process is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City of Syracuse for failure to sufficiently allege municipal liability is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his second cause of action is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim is GRANTED; and the Court further

**\*13** ORDERS that Defendants' motion to dismiss Plaintiff's common law malicious prosecution claims for failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's common libel claim for failure to state a claim is DENIED.

IT IS SO ORDERED. [11]

[11]   The following claims of Plaintiff remain in this action: (1) § 1983 claims for denial of First Amendment rights against Defendants City, Mullen, and Hennessey, alleging that these Defendants arrested him for speaking to Defendant officers about their conduct in arresting a third-party; (2) § 1983 claims for failure to train against Defendant City; (3) common law malicious prosecution claims against all Defendants; (4) a common law libel claim against Defendant Hennessey; and (5) a claim for attorney's fees pursuant to 42 U.S.C. § 1988.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1460424

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 721658
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Randall WILTZ, Plaintiff,
v.
NEW YORK UNIVERSITY et al., Defendants.

1:18-cv-00123 (GHW) (SDA)
|
Signed 02/01/2019

**Attorneys and Law Firms**

Randall Wiltz, Bronx, NY, pro se.

Ira Martin Feinberg, Benjamin Andrew Fleming, Andrew Harris, Hogan Lovells US LLP, Nathaniel Scott Boyer, The Hearst Corporation, New York, NY, for Defendants New York University, Franklin Diaz, Erin Lynch, Cushman & Wakefield, Inc., Michael Broderick.

Daniel David Schudroff, Catherine Tucciarello, Jackson Lewis P.C., New York, NY, for Defendants Angel Perlaza, Collins Building Services, Inc.

Jeffrey Scott Dantowitz, Office of Corporation Counsel, New York, NY, for Defendant City of New York.

Alissa Schecter Wright, New York State Office of the Attorney General, New York, NY, for Defendant State of New York.

**REPORT AND RECOMMENDATION**

STEWART D. AARON, United States Magistrate Judge

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

**INTRODUCTION**

**\*1** *Pro se* Plaintiff Randall Wiltz ("Plaintiff" or "Wiltz") brings this action pursuant to 42 U.S.C. § 1983, the Civil Rights Act of 1964, the Fair Housing Act, the Americans with Disabilities Act of 1990 ("ADA") and the Racketeer Influenced and Corrupt Organizations Act arising from his eviction from a rent-stabilized apartment owned by Defendant New York University ("NYU"), and the events leading up to his eviction. (Am. Compl., dated May 7, 2018, ECF No. 80.) In addition to NYU, Wiltz names as Defendants

Franklin Diaz, Erin Lynch, Collins Building Services, Inc., Angel Perlaza, Cushman Wakefield, Inc., Michael Broderick, the State of New York and the City of New York. (Am. Compl. at 4-5.) Currently before the Court are the State's and City's motions to dismiss the Amended Complaint. [1] (ECF Nos. 89 & 105.) For the reasons set forth below, I recommend that both motions be GRANTED.

[1]    Motions also have been filed by the other defendants to dismiss claims against them in this case and a related case, which motions are not fully briefed.

**FACTUAL BACKGROUND** [2]

[2]    Some of the relevant facts below are excerpted from the factual recitation provided by Judge Woods during the March 6, 2018 hearing on Wiltz's motion for emergency relief. (*See* 3/6/2018 Tr., ECF No. 57, at 18-21.) For purposes of this motion, the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in his favor. *See City of Providence v. BATS Glob. Mkts., Inc.,* 878 F.3d 36, 48 (2d Cir. 2017).

In or around 1993, Wiltz moved to New York to attend NYU for an LLM in taxation and a master's degree in real estate development. (Am. Compl. ¶ 8.) That year, Wiltz met Martha Dewell. (*Id.* ¶ 9.) Ms. Dewell lived in a rent-stabilized apartment in an NYU-owned building in Greenwich Village. (*Id.* ¶ 10.) Ms. Dewell and Wiltz developed a relationship and eventually she "became his surrogate mother." (*Id.* ¶ 9.) In 1995, Wiltz moved in with Ms. Dewell and lived with her until she passed away in April 2015. (*Id.* ¶¶ 9, 28.) During that time, Wiltz shared rent and expenses with Ms. Dewell and her daughter, Laila Nabulsi, by contributing through regular deposits to a joint account of Ms. Dewell and Ms. Nabulsi. (*Id.* ¶ 29.) In June 2015, Wiltz was diagnosed with "major depressive, anxiety, and associated stress related conditions and disorders, which presented challenges for managing stressful conditions and processes[.]" (*Id.* ¶ 31.)

In August 2015, Defendant Erin Lynch, NYU's director of facilities for the residential complex encompassing the apartment at issue, ordered an investigation into the circumstances of Ms. Dewell's tenancy. (Am. Compl. ¶ 32.) On December 15, 2015, Wiltz sent a letter to the president of NYU informing him of Wiltz's disability and requesting a referral to the housing committee to apply for succession rights to Ms. Dewell's apartment. (*Id.* ¶ 33.) The next day, Wiltz sent a letter to Defendant Michael Broderick of Defendant Cushman & Wakefield, Inc., the leasing agent for the residential complex, requesting renewal of the lease and

succession rights.[3] (*Id.* ¶ 33.) In January 2016, Wiltz received an eviction notice from NYU.[4] (*Id.* ¶ 43.)

[3]   According to an affidavit filed by NYU in housing court, Ms. Nabulsi also claimed succession rights to the apartment. (Aff. of Eric Lynch, dated April 13, 2016 ("Lynch Aff."), Am. Compl. Ex. O, ECF No. 80-2, at 100-01.) However, Ms. Nabulsi never appeared in the housing court action. (*Id.* at 101.)

[4]   NYU served Wiltz and Nabulsi with a Ten-Day Notice to Quit, which expired on February 13, 2016. (Lynch Aff. at 101.) Since Wiltz and Nabulsi failed to surrender the apartment by the expiration of the Notice, NYU commenced a holdover proceeding against them. (*Id.*)

**\*2** Housing court proceedings began on March 9, 2016, at which time the court elected to stay the eviction until the conclusion of the case. (Am. Compl. ¶ 55.) Wiltz alleges that he asked the housing court for assistance with representation based on his medical conditions, but was told that the court did not help with representation. (*Id.*) On May 17, 2016, the housing court granted NYU's motion for discovery as to Wiltz's succession rights. (Decision and Order, dated May 17, 2016, Am. Compl. Ex. D, ECF No. 80, at 99.) The housing court judge also held that NYU was entitled to depose Wiltz, but in light of Wiltz's "general reference to a mental disability" the court would "consider a protective order with respect to the parameters of the deposition, such as Wiltz's request that the length of the deposition be limited to 45 minutes, upon [ ] a more detailed showing from Wiltz as to why such a protective order is required." (*Id.* at 100.)

During a hearing on June 23, 2016, Wiltz informed the housing court that he was continuing to seek legal representation. (Am. Compl. ¶ 63.) Wiltz alleges that he gave the court "a consideration letter from Housing Conservation Coordinators, Inc.[5] regarding legal representation, which was later denied." (*Id.*) On July 20, 2016, Wiltz again informed the housing court of his unsuccessful attempts to receive legal assistance and again requested assistance with representation. (*Id.* ¶ 64.) Specifically, Wiltz requested that the housing court refer him to the New York City "Housing Resources Administration ('HRA')."[6] (*Id.*)

[5]   According to its website, Housing Conservation Coordinators is "a legal not-for-profit organization that seeks to preserve safe, decent and affordable housing on the west side of Manhattan." *See* http://www.hcc-nyc.org/index.htm (last visited January 31, 2019). It is

unclear what Wiltz is referring to when he alleges that this letter was "later denied." (Am. Compl. ¶ 63.)

[6]   The Court presumes that Wiltz is referring to the Human Resources Administration. *See* https://www1.nyc.gov/site/hra/help/legal-services-for-tenants.page (last visited January 31, 2019).

On October 4, 2016, Wiltz sought a protective order limiting his deposition to forty-five minutes, "as the provided evidence showed that Defendants were harassing [him]." (Am. Compl. ¶ 66.) On October 31, 2016, the court issued an order directing Wiltz to comply with the applicable discovery deadlines, including that his deposition occur on or before November 30, 2016. (*Id.* ¶ 67.) The same day, the court issued an order denying Wiltz's request for a protective order. (*Id.*)

In November 2016, Wiltz alleges that he fell ill with an unidentified viral infection that presented as a life-threatening illness. (Am. Compl. ¶ 68.) On or before November 15, 2016, Wiltz retained counsel, Glenn Meyers, to represent him. (*See* Am. Compl. Ex. E, ECF No. 80, at 103.) On November 15, 2016, Mr. Meyers sent a letter to NYU's counsel asking for all correspondence to be forwarded to his attention and stating that Wiltz was ill, but that Meyers hoped to meet with him "forthwith" to "get all of the discovery to [NYU] and move the case." (*Id.*; *see also* Am. Compl. ¶ 69.) Wiltz alleges that, instead of communicating with his counsel, NYU's counsel "held *ex parte* communications and a conference with the housing court's attorney on December 5, 2016, regarding a motion to strike his answer and deny him a trial." (Am. Compl. ¶ 19.) Wiltz further alleges that the housing court did not inform him about the discussions. (*Id.*)

On December 8, 2016, NYU filed a motion to strike Wiltz's answer. (Am. Compl. ¶ 19.) In March 2017, the housing court granted NYU's motion and "rendered a decision in NYU's favor even after [Wiltz] offered and showed information regarding medical information and evidence of Defendant Lynch's bad faith."[7] (*Id.* ¶ 70.)

[7]   Wiltz alleges that the motion to strike was part of "Defendant Lynch's unlawful eviction scheme" and in retaliation for a complaint Wiltz filed with the Division of Housing and Community Renewal ("DHCR"). (Am. Compl. ¶ 70.)

**\*3** The housing court scheduled an inquest for April 25, 2017. (Am. Compl. ¶ 71.) Wiltz alleges that, "after [NYU's counsel] conducted *ex parte* communications with housing personnel," the court entered an eviction order and set a date

2019 WL 721658

eviction for June 9, 2017. (*Id.*) The same day, Wiltz filed "an Order to Show Cause to Renew and Reargue the incorrect ruling that struck his answer as he had presented a reasonable medical excuse and a meritorious defense." (*Id.* ¶ 72.) Wiltz's Order to Show Cause was granted, and he was given a return date of May 9, 2017. (*Id.* ¶¶ 72-73.)

Following the April 25, 2017 hearing, Wiltz alleges that he was frustrated with the housing court's "consistent denial of ADA rights and the April 25 hearing" and sought help from the Office of Court Administration of New York State ("OCA"). (Am. Compl. ¶ 74.) Wiltz then was referred to OCA's ADA representatives in housing court, which he alleges was the first time he was informed of their presence as he had "never seen any information at the housing court or been given any instructions by the housing court to seek help." (*Id.*) On May 3, 2017, Wiltz contacted William Smith, the ADA representative and asked what procedures were in place for disabled individuals to submit confidential mental health records. (*Id.*) Mr. Smith informed Wiltz that ADA representatives could not help with case proceedings. (*Id.*) Thereafter, Wiltz spoke to the housing court clerk and was given the email address for "the administrative judge for administering ADA procedures." (*Id.* ¶ 76.)

On May 9, 2017, Wiltz appeared for the hearing on his Order to Show Cause, but was informed that there was a delay in reviewing the files. (Am. Compl. ¶ 77.) On May 12, 2017, Wiltz emailed the administrative judge requesting "assistance with my ADA rights." (*Id.* ¶ 78.) On May 30, 2017, Wiltz was contacted by Eddy Valdez, an ADA representative within the courthouse, in response to Wiltz's email to Judge Fisher. (*Id.* ¶ 79.) However, Wiltz alleges that "the email did not end up in the correct inbox[.]" (*Id.*)

On July 24, 2017, Wiltz sent a letter to the housing court requesting a hearing on his Order to Show Cause and providing medical information "demonstrating justification for reasonable accommodations, showing that [NYU's counsel] had acted in bad faith, and requesting that his constitutional rights be observed." (Am. Compl. ¶ 88.) On August 17, 2017, Wiltz received a decision affirming the court's March 2017 decision striking Wiltz's answer. (*Id.* ¶ 118.) In early September 2017, the housing court issued a warrant for eviction and scheduled the eviction for September 8, 2017. (*Id.* ¶ 119.) Working with NYC's Adult Protective Services Program ("APS"), Wiltz delayed the date of eviction until October 4, 2017. (*Id.* ¶ 120.) Between September 22,

2017 and October 7, 2017, Wiltz was hospitalized at Bellevue Hospital. (*Id.* ¶ 121.)

On October 2, 2017, Wiltz submitted an Order to Show Cause to the housing court detailing his disability. (Am. Compl. ¶ 122.) On October 12, 2017, the housing court held a hearing during which the court reinstated the eviction order, but required that APS be notified of developments prior to any eviction. (*Id.* ¶¶ 122-23.) The next eviction date was scheduled for November 14, 2017. (*Id.* ¶ 123.)

On November 13, 2017, Wiltz filed an appeal and was granted a temporary stay of the eviction pending a hearing. (Hr'g Tr., ECF No. 57, at 20 (citing Compl., ECF No. 2, ¶ 82).) At a hearing on December 6, 2017, Wiltz's request for a stay of eviction pending appeal was denied. (*Id.* (citing Compl. ¶ 83).) Wiltz was evicted from the apartment in early 2018.[8] On December 31, 2018, the New York Supreme Court, Appellate Term, affirmed various orders of the housing court with respect to Wiltz's eviction. *See New York Univ. v. Nabulsi*, 62 Misc. 3d 137(A), at *1 (N.Y. App. Term. 2018). Moreover, the Appellate Term found that Wiltz failed to demonstrate the existence of a meritorious succession defense. *Id.*

[8]     Wiltz does not allege the specific date his eviction occurred. The State alleges that it occurred on January 31, 2018. (State Mem., ECF No. 90, at 6.) Regardless of the precise date, Wiltz had not been evicted at the time he filed his original Complaint, but was evicted prior to this Court's decision on his motion for a preliminary injunction. (*See* Hr'g Tr., ECF No. 57, at 20.)

## PROCEDURAL HISTORY

**\*4** Wiltz filed the original Complaint in this action on January 8, 2018 (Compl., ECF No. 2), along with a motion for emergency relief. (ECF No. 3.) On January 17, 2018, the Court, *sua sponte*, dismissed Wiltz's § 1983 claims against the City without prejudice, for failure to state a claim, and against the State with prejudice, as barred by the Eleventh Amendment.[9] (*See* Order of Service, ECF No. 7.) On March 6, 2018, the Court held a hearing on Wiltz's motion for a preliminary injunction. (Hr'g Tr., ECF No. 57.) The Court denied the motion for the reasons stated on the record. (*Id.* at 17-27.) On March 8, 2018, the Court issued an Order reinstating the City and the State as defendants as to Wiltz's ADA claims. (Order, ECF No. 52, at 1.) The Court stated that the § 1983 claims asserted against the State remained

dismissed with prejudice, and the § 1983 claims asserted against the City remained dismissed without prejudice. (*Id.*)

9    The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Wiltz filed an Amended Complaint on May 7, 2018. (ECF No. 80.) Defendants filed motions to dismiss on August 3, 2018. (*See* ECF Nos. 89, 93, 97, 99, 105.) On August 14, 2018, Wiltz filed an action in state court alleging identical claims against all the Defendants to this action, except the City and the State. (*See* 18-CV-11168, ECF No. 1-1.) Defendants removed the state action to this Court on November 30, 2018, and Judge Woods accepted it as related to the instant action on December 4, 2018. Subsequently, Defendants sought a consolidated briefing schedule for the motions to dismiss filed in this action and similar motions they intended to file in the related action. (Letter, ECF No. 112.) The Court granted that request with respect to the defendants named in both actions. (*See* ECF No. 117.) The Court deemed the previously-filed motions to dismiss withdrawn and set a consolidated briefing schedule. (*Id.*) However, the City's motion to dismiss (ECF No. 105) and the State's motion to dismiss (ECF No. 89) remain pending before the Court. Those motions became fully briefed on January 29, 2019, and are addressed herein.

Liberally construing the Amended Complaint,[10] Wiltz alleges that the City and the State violated the ADA by denying him access to certain public benefits and services and failing to make reasonable accommodations for his alleged disability. Wiltz also alleges violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

10    The Court notes that the degree of solicitude afforded to a *pro se* plaintiff "may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). "The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all." *Id.* While it appears that Wiltz is a lawyer who attended NYU for an LLM degree, he alleges that he has never been admitted to practice in federal court. Even applying a liberal pleading standard, I recommend dismissing Wiltz's claims for the reasons set forth herein.

The crux of Wiltz's claims is that he was denied reasonable accommodations for his disability, as well as certain procedural and substantive due process rights, during what he considers to be an unlawful scheme to evict him from his home. (*See, e.g.*, Am. Compl. ¶¶ 1-4.) As far as the City and State are concerned, the majority of Wiltz's allegations refer to conduct by the "housing court." In particular, Wiltz asserts the following claims: (1) the housing court judge did not give serious consideration to his requests for representation or legal assistance (*id.* ¶¶ 55, 107); (2) the housing court denied his request for a protective order after determining that he could apply for one as a result of a mental condition (*id.* ¶ 107); (3) the housing court denied him a trial as a result of delays caused by his requests for accommodation (*id.*); (4) the housing court held an *ex parte* conference with NYU lawyers to "arrange the filing of a motion to strike" and did not invite or inform Plaintiff (*id.*); (5) the housing court "applied the rules and laws unequally to render decisions that provided a favorable outcome to [NYU]" in violation of the equal protection clause to the 14th Amendment (*id.* ¶¶ 25, 107); (6) the City and State have a custom and practice of allowing the housing court to arbitrarily determine whether ADA requests are given serious consideration and the housing court does not interfere with Judges' discretion as to whether to address ADA requests (*id.* ¶¶ 107, 111); (7) the City and State did "not ensure that proper policies, customs, and practices [were] implemented or followed by [the] housing court in giving 'serious consideration' to requests for reasonable accommodations" (*id.* ¶¶ 26, 107); and (8) the City and State did "not provide onsite housing court ADA representatives with sufficient capabilities, instructions, and resources to ensure that proper policies, customs and practices [were] implement[ed] or followed by [the] housing court in giving 'serious consideration' to requests for reasonable accommodations." (Id. ¶ 27.)

**\*5**  The City moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, arguing that the City is not liable for the alleged violations in housing court and, in any event, Wiltz fails to state claim under the ADA or for municipal liability under § 1983. (City Mem. L. In Support Mot. To Dismiss ("City Mem."), ECF No. 106, at 10-13.) The State moves to dismiss, pursuant to Rule 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Wiltz's claims are barred by the *Rooker-Feldman* doctrine and that he fails to state a claim under the ADA. (State Mem. L. In Support Mot. To Dismiss ("State Mem."), ECF No. 90, at 9-19.)

### RULE 12(b) LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Equan Yunus, Sr. v. J. Lewis Robinson et al.*, No. 17-CV-05839 (AJN), 2019 WL 168544, at *3 (S.D.N.Y. Jan. 11, 2019) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "But '[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.' " *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ). "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citing *Makarova*, 201 F.3d at 113).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). The Court "must accept as true all of the factual allegations contained in the complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## DISCUSSION

At bottom, this case represents a collateral challenge in federal court to the outcome of eviction proceedings in a New York state housing court. Because I find, for the reasons set forth below, that Wiltz has pleaded no cognizable claim against the State or City, I recommend that the claims against them be dismissed.

## I. Plaintiff's Claim Against The State of New York Should Be Dismissed

As discussed above, the Court already has found that Wiltz's § 1983 claims against the State are barred by the Eleventh Amendment. (Order of Service, ECF No. 7.) To the extent that Wiltz purports to assert a claim against the State under § 1981 (racial discrimination), § 1985 (conspiracy) or § 1986 (failure to prevent conspiracy) those claims are similarly barred. *See*

*Bamba v. Fenton*, No. 17-2870, 2018 WL 6331611, at *3 (2d Cir. Dec. 4, 2018) (§ 1981 claim barred by Eleventh Amendment); *Keitt v. New York City*, 882 F. Supp. 2d 412, 447 (S.D.N.Y. 2011) ("Congress has also not abrogated the 11th Amendment immunity of states under Sections 1985 and 1986.") (internal citation omitted). Thus, the Court only will consider Wiltz's ADA claims against the State. The State argues that Wiltz's claims should be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, and for failure to state a claim.

## A. The *Rooker-Feldman* Doctrine Bars Plaintiff's ADA Claims

**\*6** "The *Rooker-Feldman* doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983); and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16 (1923) ). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Thus, four requirements that must be met for *Rooker-Feldman* to apply: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; (4) the state-court judgment must have been rendered before the district court proceedings commenced. *See Morrison*, 591 F.3d at 112 (citing *Exxon Mobil*, 544 U.S. at 284).

As for the first two factors, Wiltz is considered a "state-court loser" because he was denied succession rights and an eviction order was entered against him, and the injury he complains of, that he was denied succession rights to his apartment, was caused by the state court judgment. As for the fourth factor, while it appears that Wiltz was not evicted until after this lawsuit was filed, the final order of the state court regarding his eviction was entered on December 7, 2017. (*See* Order, Wright Decl. Ex. 16, ECF No. 90-16.) [11] Thus, the Court finds that the relevant judgment was entered before this proceeding commenced. [12] Therefore, the applicability of the doctrine depends on the third factor, namely the extent to which each of Wiltz's claims invites review and rejection of the state court's judgment.

[11]    "[W]ith respect to the applicability of the *Rooker-Feldman* doctrine, the Court may look to the exhibits attached to the defendants' motion papers[.]" *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 272 (E.D.N.Y. 2009) (citations omitted).

[12]    Courts have split as to whether the *Rooker-Feldman* doctrine applies to bar actions where the federal court plaintiff has an appeal pending in state court. *See Davis v. Baldwin*, No. 12-CV-06422 (ER), 2013 WL 6877560, at *4-5 (S.D.N.Y. Dec. 31, 2013) (discussing split and citing cases); *see also Gabriele v. Am. Home Mort. Servicing*, 503 F. App'x 89, 92 (2d Cir. 2012) (assuming, without deciding, that *Rooker-Feldman* applied even though state appeal pending). However, the Court finds that the weight of authority supports the position that the *Rooker-Feldman* doctrine applies as long as the federal action seeks review of a previous state court judgment, regardless of whether that judgment is being appealed in the state courts when the federal case begins. *Id.* (finding *Rooker-Feldman* applies regardless of pending state court appeal and citing cases). Moreover, the Court agrees that to find otherwise would undermine the purpose of the doctrine. *See id.*

The Court finds that Wiltz's ADA claims invite review of the decisions and orders of the housing court, and the Court lacks jurisdiction over those claims.[13] *See Thompson v. Donovan*, No. 13-CV-02988 (CS), 2014 WL 5149037, at *12 (S.D.N.Y. Oct. 14, 2014) ("federal claims arising from eviction proceedings are ordinarily barred by the *Rooker-Feldman* doctrine") (citing cases); *see also Skipp v. Connecticut Judicial Branch*, No. 14-CV-00141 (JAM), 2015 WL 1401989, at *6 (D. Conn. Mar. 26, 2015) (claims alleging state court's failure to grant plaintiff a reasonable accommodation for her disability in connection with her participation in state court proceedings barred by the *Rooker-Feldman* doctrine); *Richter v. Connecticut Judicial Branch*, 2014 WL 1281444, at *8 (D. Conn. 2014) (*Rooker-Feldman* bars adjudication of plaintiff's claims that "perceived disabilities resulted in discrimination in state court judicial proceedings with results adverse to her"); *Trang v. Concris Realty Co.*, No. 05-CV-05441 (RJD) (LB), 2005 WL 1398004, at *2 (E.D.N.Y. June 14, 2005) (dismissing ADA claims under *Rooker-Feldman* because "[b]efore [the] Court could find that plaintiff has been the victim of a discrimination, the Court would have to find that the housing court erred in issuing a warrant for plaintiff's eviction[.]"). Thus, I recommend that Wiltz's ADA claims be dismissed for lack of jurisdiction.[14]

[13]    To the extent that Wiltz alleges that a custom or policy of the City violated the ADA, the Court considers those claims in Section II(C)(1)(b), below.

[14]    If the Court dismisses Plaintiff's claims solely for lack of subject matter jurisdiction, they must be dismissed without prejudice. *See Fraccola v. Grow*, 670 F. App'x 34, 35 (2d Cir. 2016).

**\*7** Even if the Court does not dismiss Wiltz's ADA claims on jurisdictional grounds, for the reasons set forth below, I recommend that his ADA claims be dismissed for failure to state claim.

## B. Plaintiff Fails To State An ADA Claim Against The State

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[15] "The statute 'require[s] that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities.' " *Valanzuolo v. City of New Haven*, 972 F. Supp. 2d 263, 273 (D. Conn. 2013) (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003), *superseded by regulation on other grounds, Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 619 (2d Cir. 2016) ). The purpose of the Act is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

[15]    The City and State are public entities within the meaning of Title II. *See* 42 U.S.C. § 12131(1)(A) ("The term 'public entity' means ... any State or local government" or "any department, agency, special purpose district, or other instrumentality" of a State or States or local government[.]"). To the extent Wiltz purports to also bring a claim pursuant to Title III of the ADA, such claim should be dismissed as "Title III is not applicable

to public entities." *Morales v. New York*, 22 F. Supp. 3d 256, 266-67 (S.D.N.Y. 2014) (dismissing Title III claim and collecting cases).

"To plead a violation of Title II of the ADA, a plaintiff must allege that '(1) [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability.' " *Felix v. City of New York*, 344 F. Supp. 3d 644, 663 (S.D.N.Y. 2018) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) ). [16] A discrimination claim under the ADA can be based on a claim of intentional discrimination (or disparate treatment); disparate impact; or failure to make a reasonable accommodation. [17] *See id.*

[16] To the extent Wiltz also raises a claim against the City or State under the Rehabilitation Act, 29 U.S.C. § 701 et seq., the same showing is required. *See Fulton*, 591 F.3d at 42 n.1 ("the same factual allegations generally will support both ADA and Rehabilitation Act Claims") (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ).

[17] The State does not argue that Wiltz's ADA claims are barred by the Eleventh Amendment and the Court is not required to consider the issue *sua sponte*. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006) ("although courts may raise the issue of Eleventh Amendment immunity *sua sponte*, they are not required to do so[.]"); *see also Silva v. Farrish*, No. 18-CV-3648 (SJF) (SIL), 2019 WL 117602, at *6 (E.D.N.Y. Jan. 7, 2019) ("whether the claim of sovereign immunity [under the Eleventh Amendment] constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense has not been definitively answered by the Supreme Court or the Second Circuit") (citing cases). Moreover, the Court notes that the extent to which Title II of the ADA validly abrogates state sovereign immunity is not entirely settled. *See, e.g.*, *U.S. v. Georgia*, 546 U.S. 151, 159 (2006) (leaving open the possibility that a private suit for money damages under Title II of the ADA may be maintained against a state even if the alleged "misconduct violated Title II but did not violate the Fourteenth Amendment"); *Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir. 2010) (discussing extent of Congress's abrogation of immunity under Title II of ADA). I do not reach this issue since I find that Wiltz fails to state an ADA claim. *See Richter v. Connecticut Judicial Branch*, No. 12-CV-01638 (JBA), 2014 WL 1281444, at * *4-6 (D. Conn. Mar. 27, 2014)

(discussing application of Eleventh Amendment to Title II claims), *aff'd*, 600 F. App'x 804 (2d Cir. 2015), *Goonewardena v. New York*, 475 F. Supp. 2d 310, 323 (S.D.N.Y. 2007) ("If there is no violation of Title II, then the *Georgia* analysis ends and the claim is dismissed on the ground that plaintiff has failed to state a claim rather than that the court lacks jurisdiction due to sovereign immunity."); *Andino v. Fischer*, 698 F. Supp. 2d 362, 377 (S.D.N.Y. 2010) (same).

**\*8** A qualified individual is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Further, an individual has a disability for purposes of any part of the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities," or a "record of such impairment." 42 U.S.C. § 12102(1)(A) & (B). "A complaint alleging a violation of the ADA must identify the life activity substantially impaired." *Kaplan v. Garfield First Assocs., LLC*, No. 11-CV-04631 (RRM) (LB), 2011 WL 4530025, at *3 (E.D.N.Y. Sept. 27, 2011) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 147 (2d Cir. 2002) ).

Wiltz alleges that he is a qualified individual with a disability because, around June 2015, he was diagnosed with "Major Depressive, Anxiety and associated stress related conditions and disorders[,]" which substantially affect his ability to operate "under stressful and demanding circumstances." (Am. Compl. ¶¶ 31, 94.) Defendants contend that Wiltz fails to state an ADA claim because he has not identified how his alleged conditions substantially limit any major life activity. [18] (*See* City Mem. at 12-13; State Mem. at 13.) Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "In deciding whether a particular activity is a 'major life activity,' the Court asks whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *Laface*, 2018 WL 6002395, at *7 (internal citation omitted).

18    Defendants do not dispute that Wiltz adequately has alleged a mental impairment. "Stress and depression are conditions that may or may not be considered impairments, depending on whether these conditions result from a documented physiological or mental disorder." *Laface v. E. Suffolk Boces*, No. 18-CV-01314 (ADS) (AKT), 2018 WL 6002395, at *6 (E.D.N.Y. Nov. 15, 2018) (citing *Santos v. City of New York*, 01-CV-00120, 2001 WL 1568813, *4 (S.D.N.Y. Dec. 7, 2001) ). Here, the Court finds that Wiltz has adequately pleaded a mental impairment. (*See* Am. Compl. ¶¶ 30, 94.)

Wiltz alleges that depression, anxiety and stress conditions limit him from dealing with stressful situations, including "housing court litigation." (Am. Compl. ¶ 30.) However, difficulty in dealing with stress is more properly characterized as an impairment than a major life activity. *Cf. Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 392 (E.D.N.Y. 2016) (finding plaintiff's purported "emotional disturbance" and "feeling of Inferiority" more properly characterized as impairments than major life activities). Thus, the only activity Wiltz identifies is participating in housing court litigation, which the Court does not find to be a major life activity. [19] While litigation undoubtedly involves a number of major life activities, such as reading, concentrating, thinking and communicating, even if the Court were to construe Wiltz's allegations as including such activities, Wiltz has not alleged sufficient facts to show how his depression, anxiety or stress have limited any of those activities. *See Kelly*, 200 F. Supp. at 392-93 (granting motion to dismiss when, *inter alia*, plaintiff did not plausibly allege that her ability to sleep or attend church were substantially limited by her anxiety, depression and hypertension). [20]

19    While the Second Circuit has held that "[t]he ability to obtain shelter is among the most basic of human needs and thus is a 'major life activity' for purposes of the [Fair Housing Act,]" the Court explained that "a person is not substantially limited in the major life activity of obtaining housing simply because she is unable to, or regarded as unable to, live in a particular dwelling." *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 49-50 (2d Cir. 2015). "Rather, a person is substantially limited if, due to her impairment, she cannot live or is regarded as unable to live in a broad class of housing that would otherwise be accessible to her." *Id.* at 50. Thus, Plaintiff's allegations regarding housing court litigation cannot be construed as substantially limiting his ability to obtain shelter.

20    The Court is mindful that the term 'substantially limits' shall be construed broadly in favor of expansive coverage ... and is not meant to be a demanding standard." *Kopchik v. Town of E. Fishkill, New York*, No. 18-1182-CV, 2018 WL 6767369, at *4 (2d Cir. Dec. 26, 2018) (citing 29 C.F.R. § 1630.2(j)(1)(i) ) (internal quotation marks omitted). Nevertheless, Plaintiff still must plead sufficient facts to "raise a right to relief above the speculative level." *Kelly*, 200 F. Supp. 3d at 393 (citing *Twombly*, 550 U.S. at 555).

 **9** In any event, even assuming Wiltz could establish that he is a qualified individual with a disability, he has not plausibly alleged that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity. The majority of Wiltz's allegations pertain to the housing court's orders and decisions (*see, e.g.*, Am. Compl. ¶ 73 (alleging housing court's decision to strike his answer was "incorrect" when "he had presented a reasonable medical excuse and a meritorious defense") ), and are, therefore, insufficient to establish that Wiltz was excluded from accessing the court or participating in the litigation. *See McNamara v. Kaye*, No. 06-CV-05169 (DLI) (CLP), 2008 WL 3836024, at * *8-9 (E.D.N.Y. Aug. 13, 2008) (dismissing ADA claims when plaintiff failed to provide enough facts to raise a plausible claim that her multiple sclerosis placed her at a disadvantage throughout the disciplinary proceedings), *aff'd*, 360 F. App'x 177 (2d Cir. 2009). To the contrary, the Amended Complaint alleges that Wiltz was an active participant in the litigation, both on his own and through counsel.

Moreover, Wiltz's dissatisfaction with the housing court's rulings or the outcome of the proceedings are not sufficient to show that he was excluded from participating. *See, e.g., Netti v. Ayers*, No. 17-CV-00976 (GTS) (ATB), 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (plaintiff's complaints about Department of Motor Vehicles hearing insufficient to show she was excluded from participating), *report and recommendation adopted*, 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018); *Moran v. Deamelia*, No. 17-CV-00422 (TJM) (CFH), 2017 WL 2805160, at *3 (N.D.N.Y. Apr. 20, 2017) (allegations regarding agency's complaint procedure insufficient to show plaintiff was denied participation), *report and recommendation adopted*, 2017 WL 2804921 (N.D.N.Y. June 28, 2017).

Wiltz alleges that the housing court discriminated against him by failing, in various ways, to give serious consideration to requests for reasonable accommodations. [21] (*See* Am.

Compl. ¶¶ 26, 27, 111.) However, the only identifiable requests that Wiltz alleges he made were requests for representation/legal assistance and a request for a protective order. (*See* Am. Compl. ¶¶ 55, 107.) These are not reasonable accommodation claims. As the Second Circuit has explained, Title II requires the accommodation of a disabled person only when that person is otherwise entitled, independent of his or her disability, to the public service or benefit at issue. *See Harris v. Mills*, 572 F.3d 66, 74 (2d Cir. 2009) ("Title II of the ADA requires the accommodation of disabled persons who are entitled to a public benefit whether or not they are given an accommodation.") (internal citations omitted); *see also Richter*, 2014 WL 1281444, at *4 ("Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities ... [i]t requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service.").

21   "Technically, Title II of the ADA requires 'reasonable modifications' to enable access to the public benefit or service, as opposed to 'reasonable accommodation' under Title I, which applies in the employment context." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 338 (D. Conn. 2015) (citing *McElwee v. County of Orange*, 700 F.3d 635, 640 n.2 (2d Cir. 2012) ). Yet, "[i]n evaluating a 'reasonable modification' claim, the Court may look to Title I, 'reasonable accommodation' case law for guidance." *Id.*

Here, Wiltz has not shown that, with or without a disability, he was entitled to legal assistance or a protective order imposing time limits on his deposition. 22 *See Harris*, 572 F.3d at 74 (no reasonable accommodation claim when plaintiff would be entitled to a reinstatement of his medical license only if state relaxed its license qualifications because "Title II of the ADA requires no such diminishment of otherwise applicable standards."); *see also Felix*, 324 F.3d at 107 ("The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally."); *Tate v. City of New York*, No. 16-CV-01894 (KAM)(SMG), 2017 WL 10186809, at *5 (E.D.N.Y. Sept. 29, 2017) ("[a]lthough a public entity must make reasonable accommodations, it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice.") (quoting *McElwee* 700 F.3d at 641).

22   The Court notes that, while New York City recently passed a law to ensure that anyone facing eviction in court will have access to legal help (the Universal Access to Legal Services law), the HRA Office of Civil Justice is implementing the law in phases and it currently applies only to tenants living in certain zip codes, which do not include the area where Wiltz resided at the time of his eviction. *See* https://www1.nyc.gov/site/hra/help/legal-services-for-tenants.page (last visited January 31, 2019).

**\*10** As in *Harris*, 572 F.3d at 74, Wiltz's allegations amount to the contention that applicable standards should be changed in light of his disability. That is not what Title II requires. *See Amato v. McGinty*, No. 17-CV-01280 (GLS) (TWD), 2018 WL 5266872, at *3 (N.D.N.Y. Oct. 23, 2018) (dismissing ADA claim when plaintiffs failed to identify how their disabilities "denied them participation in court proceedings or how their disabilities could be accommodated to allow such participation") (citing *Harris*, 572 F.3d at 74).

Finally, even assuming Wiltz could meet the other elements of a Title II claim, he does not allege that the failure to provide him accommodations was due to his disability. "The fact that plaintiff 'has' a disability does not automatically turn all defendant's conduct into disability discrimination." *Carroll v. Rondout Yacht Basin, Inc.*, No. 14-CV-00531, 2014 WL 4966124, at *5 (N.D.N.Y. Oct. 3, 2014).

For these reasons, I recommend that Wiltz's ADA claims be dismissed.

## II. Plaintiff's Claim Against The City Of New York Should Be Dismissed

Wiltz purports to bring the same claims against the City as against the State. As discussed further below, I recommend that Wiltz's claims against the City be dismissed because (1) the alleged violations relate to conduct by the housing court, which is a state entity for which the City is not liable; (2) Wiltz does not state a claim under the ADA, and thus cannot allege municipal liability on that basis; and (3) Wiltz has not plausibly asserted that any other alleged deprivation of his rights under federal law was caused by a custom or policy of the City of New York.

### A. The Housing Court Is A State Entity

All of Plaintiff's allegations pertain to actions taken by the housing court and/or alleged policies, customs and practices relating to housing court proceedings. The housing court, officially the Civil Court of the City of New York, New York

County, Housing Part, is part of the New York State Unified Court System and, thus, is a state entity. *See Pantoja v. Scott*, No. 96-CV-08593 (LMM), 1997 WL 433472, at *2 (S.D.N.Y. Aug. 1, 1997); *see also Komatsu v. NTT Data, Inc.*, No. 15-CV-07007 (LGS), 2016 WL 2889064, at *5 (S.D.N.Y. May 17, 2016) (noting that the Civil Court of the City of New York is a state court that is part of the New York State Unified Court System) (citing http://www.nycourts.gov/), *aff'd*, 730 F. App'x 98 (2d Cir. 2018). Moreover, housing court judges are state officials. *See Pantoja*, 1997 WL 433472, at *2 ("Not only is the Housing Court a state entity, but its judges are also state officials."). Thus, to the extent that any of Wiltz's claims are based on the actions of state judges, the City cannot be liable.[23] *See Pantoja*, 1997 WL 433472, at *2-3 (housing court judge's actions could not be basis for municipal liability).

[23]     To the extent that Wiltz's claims challenge the actions of any housing court judge, those claims should be dismissed based on judicial immunity. *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions.").

The Court is mindful that, to the extent that Wiltz's allegations are based on policies governing proceedings in housing court, it is not impossible that the City could be liable if it turns out that the City has final policymaking authority over "the action alleged to have caused the particular violation at issue." *See Bellamy v. City of New York*, No. 17-1859-CV, 2019 WL 347201, at *21 (2d Cir. Jan. 29, 2019) ("In searching for the proper local government that is subject to liability on a given *Monell* claim we look for 'those official or governmental bodies who speak with final policymaking authority ... concerning the action alleged to have caused the particular ... violation at issue.' ") (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989) ) (emphasis omitted). However, Wiltz has not alleged sufficient facts to show that the City has final policymaking authority over any housing court policy. In any event, I recommend that Wiltz's claims be dismissed for failure to state a claim.

**B. Plaintiff Fails To State An ADA Claim Against The City**

**\*11**  I recommend that the Court dismiss Wiltz's ADA claim against the City for the same reasons as his ADA claims against the State. *See supra*, Section I(B). To the extent that Wiltz also assert claims under § 1983 to vindicate his ADA rights, those claims should be dismissed as he has not shown an underlying violation of the ADA.[24] *See E.H.*

*v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist.*, No. 05-CV-00972, 2008 WL 3930028, at *14 (N.D.N.Y. Aug. 21, 2008) (dismissing § 1983 claim premised on ADA violations when plaintiff failed to state ADA claim), *aff'd*, 361 F. App'x 156 (2d Cir. 2009); *see also Davis v. McCready*, No. 14-CV-06405 (GHW), 2016 WL 796847, at *8 (S.D.N.Y. Feb. 22, 2016) (dismissing *Monell* claim when plaintiff failed to adequately plead an underlying constitutional violation). In any event, as set forth in Section II(C) below, I find that Wiltz fails to plausibly allege a claim for municipal liability

[24]     Courts in this Circuit are split as to whether a concurrent § 1983 claim may be asserted for violation of Title II of the ADA. *Compare Williams v. City of New York*, 121 F. Supp.3d 354, 371 (S.D.N.Y. 2015) ("a plaintiff can bring a cause of action under § 1983 to enforce rights protected by Title II of the ADA.") *with George v. New York City Transit Auth.*, No. 13-CV-07986, 2014 WL 3388660, at *3 (S.D.N.Y. July 11, 2014) (Title II ADA violation not actionable under § 1983); *see also Freeman v. Rochester Psychiatric Ctr.*, No. 16-CV-06668, 2018 WL 4140426, at *9 (W.D.N.Y. Aug. 30, 2018), *report and recommendation adopted in part, rejected in part*, 2018 WL 4519879 (W.D.N.Y. Sept. 21, 2018) (collecting cases). Even assuming a concurrent § 1983 claim is actionable, I recommend dismissing Wiltz's § 1983 claims for failure to state a claim. *See infra*, Section II(C).

**C. Plaintiff Fails To State A Claim For Municipal Liability**

Even if the City is a proper defendant, Wiltz fails to state a claim for municipal liability because he has not adequately alleged that a deprivation of his rights under federal law was caused by a custom or policy of the City.

**1. Plaintiff Fails To State A *Monell* Claim Under § 1983**

To establish a § 1983 claim against a municipal defendant, a plaintiff must demonstrate that he has been deprived of a constitutional right as the result of an official custom or policy. *See Giaccio v. City of New York*, 308 F. App'x 470, 471-72 (2d Cir. 2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) (§ 1983 "imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights."). A plaintiff can establish the requisite policy or custom by alleging any of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in

question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted).

Wiltz alleges that the City violated his rights to due process and equal protection, and that certain housing court policies and practices violated his rights under the ADA. For the reasons set forth below, I recommend that Wiltz's § 1983 claims be dismissed.[25]

[25]     To the extent that Wiltz purports to bring a claim against the City based on actions of Community Board 2 (*see* Am. Compl. ¶ 15), those allegations also fail to state a claim against the City. Other than stating that the Board is "unduly influenced by NYU" and that its "authority has been compromised" Wiltz does not allege any constitutional or federal right that was violated by the City as a result. (*Id.*)

### a. Due Process And Equal Protection Claims

**\*12** First, Wiltz alleges that he was denied the right to a trial and other substantive and procedural due process rights. (Am. Compl. ¶ 10, 24, 25, 107.) Second, Wiltz alleges that he was denied equal protection because the housing court applied the rules and laws unequally to render decisions that provided a favorable outcome to [NYU]." (Id. ¶¶ 25, 107.) These claims fail to state a claim for municipal liability because Wiltz does not allege any facts to support that these rights were violated pursuant to any official policy or custom. *See Wisoff v. City of Schenectady, N.Y.*, No. 12-CV-01089, 2013 WL 12080917, at \*3 (N.D.N.Y. May 7, 2013), *aff'd*, 568 F. App'x 28 (2d Cir. 2014) (dismissing due process claim against city when plaintiff failed to allege that any municipal policy, practice, or custom caused the alleged violation of his constitutional rights); *see also Kunik v. New York City Dep't of Educ.*, No. 15-CV-09512 (VSB), 2017 WL 4358764, at \*12 (S.D.N.Y. Sept. 29, 2017) (same).

Moreover, as addressed in Section I(A) above, to the extent that Wiltz's claims challenge the decisions and orders of the housing court, the Court lacks jurisdiction to address those claims under the *Rooker-Feldman* doctrine.[26] *See Kitchen v. Phipps Houses Grp. of Companies*, No. 08-CV-04296 (DC),

2009 WL 290470, at \*5 (S.D.N.Y. Feb. 5, 2009), *aff'd*, 380 F. App'x 99 (2d Cir. 2010) (dismissing § 1983 claims under *Rooker-Feldman* ); *Yagan v. Dougherty*, No. 10-CV-00528 (NPM) (ATB), 2010 WL 2594790, at \*9 (N.D.N.Y. June 9, 2010), *report and recommendation adopted*, 2010 WL 2594369 (N.D.N.Y. June 23, 2010) ("plaintiff cannot dress up an appeal of her Housing Court case as a § 1983 claim to provide a jurisdictional basis to bring this action in federal court and relitigate her Housing Court claims.").

[26]     The Court notes that Wiltz did appeal several of the housing court's orders, including the court's order granting NYU's motion to strike his answer. *See Nabulsi*, 62 Misc. 3d 137(A) at \*1. The Appellate Term held that the housing court properly granted NYU's motion because Wiltz failed to produce documents or appear for his deposition and his proffered medical excuse was unsubstantiated and, in any event, would not excuse his failure to produce documents. *Id.* The Court also found that Wiltz "failed to demonstrate the existence of a meritorious succession defense." *Id.*

For these reasons, I recommend that Wiltz's due process and equal protection claims against the City be dismissed.

### b. ADA-Based *Monell* Claims

Even if the Court finds that Wiltz has adequately alleged an underlying ADA violation, I recommend that his *Monell* claims based on the ADA be dismissed for failure to state a claim.

First, Wiltz alleges that the City has a custom and practice of allowing the housing court to arbitrarily determine whether ADA requests are given serious consideration and the housing court does not interfere with Judges' discretion as to whether to address ADA requests (Am. Compl. ¶ 111).[27] Similarly, Wiltz alleges that the City did "not ensure that proper policies, customs, and practices [were] implemented or followed by [the] housing court in giving 'serious consideration' to requests for reasonable accommodations." (*Id.* ¶¶ 26, 107.) However, the "mere assertion" that a municipality has a certain policy or custom is insufficient to state a claim against the City absent "allegations of facts tending to support, at least circumstantially, such an inference." *Smith v. City of New York*, No. 15-CV-04493 (RJS), 2016 WL 4574924, at \*5 (S.D.N.Y. Sept. 1, 2016) (quoting *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) ).

27      To the extent that Wiltz also frames this claim as a claim for racial discrimination, that claim is addressed in Section II(C)(2) below.

**\*13** Further, a policy giving housing court judge's discretion to determine certain accommodations does not itself violate the ADA. In so far as Wiltz alleges that actions taken by housing court judges violated the ADA in exercising that discretion, that claim is not actionable against the City because, as discussed above, housing court judges are state officials. *See supra*, Section II(A). In any event, courts in this Circuit have routinely held that under New York law judges are not considered policymakers for the purposes of evaluating a *Monell* claim and, as a result, a municipality cannot be liable for a § 1983 claim based solely on the actions of its judges. *See Wheeler v. Wallkill*, No. 16-CV-07441 (KMK), 2017 WL 2999503, at \*7 (S.D.N.Y. July 13, 2017) (collecting cases).

Next, Wiltz alleges that the City did "not provide onsite housing court ADA representatives with sufficient capabilities, instructions, and resources to ensure that proper policies, customs and practices [were] implement[ed] or followed by [the] housing court in giving 'serious consideration' to requests for reasonable accommodations." (Am. Compl. ¶ 27). The Court construes this claim as a claim for failure to train. Yet, even assuming that the ADA representatives are City employees, Wiltz fails to state a claim for municipal liability on this ground.

"A municipality's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983 if the failure to train its employees in a relevant respect amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Williams*, 121 F. Supp. 3d at 373 (citing *Connick v. Thompson*, 563 U.S. 51 (2011) (internal quotation marks omitted) ). "When city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers chose to retain that program." *Id.* (internal citation omitted). "Notice may be proved by evidence of a pattern of similar violations or by evidence of one injury if the "need for more or different training [was] so obvious, and the inadequacy [of the training] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for different training. *Id.* (quoting

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ) (additional citation omitted).

Wiltz does not allege any similar violations or that the need for additional training was obvious. To the contrary, the allegations in the Amended Complaint show that Wiltz was able to access ADA resources in the housing court. Moreover, Wiltz acknowledges that the ADA representatives were unable to assist with case matters. As such, no additional training of these representatives could address his alleged harm, namely that he did not receive the result he wanted in his housing case.

For these reasons, I recommend that any § 1983 claim based on a custom or policy violating the ADA be dismissed against the City.

**2. Plaintiff Fails To State A *Monell* Claim Under § 1981**

To the extent that Wiltz asserts a claim of racial discrimination pursuant to § 1981, he still must show that his rights were violated pursuant to an official policy or custom. *See Santiago v. City of New York*, No. 06-CV-15508 (PKC), 2008 WL 2854261, at \*3 (S.D.N.Y. July 21, 2008) ("The *Monell* requirement that the plaintiff must establish that the violation of constitutional rights was pursuant to a municipal policy or practice also applies to claims brought under section 1981[.]") (citing *Jett*, 491 U.S. at 735-36; *Patterson v. County of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) ). Thus, "[a] municipality can be liable for violating Section 1981 only if the injury at issue resulted from the execution of a racially discriminatory policy or custom." *Chin v. New York City Hous. Auth.*, 575 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) (internal citation omitted).

**\*14** The only potentially discriminatory custom or policy that Wiltz alleges is that the City has a custom and policy of arbitrarily determining whether ADA requests are given serious consideration, and that "similarly situated litigants who were white or without disability have received ADA accommodations." (Am. Compl. ¶ 111.) These allegations are insufficient to state a claim under § 1981. To start, if, as Wiltz alleges, the City's policy is to arbitrarily determine whether ADA requests are given serious consideration, that determination is, by definition, not based on discriminatory animus. Wiltz cannot proceed under a disparate impact theory of liability in a claim brought pursuant to § 1981, but instead must show that the discrimination was intentional. *See Reynolds v. Barrett*, 685 F.3d 193, 201-02 (2d Cir. 2012) (citing *Patterson*, 375 F.3d at 226); *see also Morales*,

752 F.3d at 238 (affirming dismissal of § 1981 claim for failure to plead facts showing that defendants acted with discriminatory animus).[28] Wiltz's remaining allegations that he "experienced discrimination based on disability and race" (Am. Compl. ¶ 10), and that the housing court's decision to strike his answer demonstrated bias and discriminatory intent because it criticized Plaintiff without "mention[ing] the mishaps of the Plaintiff's attorney who was white" (id. ¶ 112) are likewise insufficient as they do not indicate a policy or custom of racial discrimination on behalf of the City.

[28]    The same is true for equal protection claims brought pursuant to § 1983. See Reynolds, 685 F.3d at 201 ("equal protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy"). Thus, even construing these allegations as asserting a denial of equal protection, I recommend that they be dismissed.

For these reasons, I recommend that any § 1981 claim against the City be dismissed.

### 3. Plaintiff Fails To State A *Monell* Claim Under 42 U.S.C. §§ 1985 Or 1986

To the extent that Wiltz brings a claim against the City for conspiracy or failure to prevent a conspiracy,[29] he must allege facts sufficient to demonstrate that the deprivation of his rights was caused by a governmental custom, policy, or usage of the municipality" and that "the municipality was the moving force behind the injury alleged" through the municipality's own deliberate conduct. *Chris H. v. New York*, No. 16-CV-06807 (LGS), 2017 WL 2880848, at *5-6 (S.D.N.Y. July 5, 2017) (citing *Zherka*, 459 F. App'x at 12); *see also Santiago*, 2008 WL 2854261, at *3 (applying *Monell* to claims brought under § 1985) (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979) ). "In addition, 'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " *Syfert v. City of Rome*, No. 17-CV-00578 (GTS) (TWD), 2018 WL 3121611, at *6 (N.D.N.Y. Feb. 12, 2018), *report and recommendation adopted*, 2018 WL 2316681 (N.D.N.Y. May 22, 2018) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ).

[29]    The specific allegations in the Amended Complaint pertaining to Wiltz's §§ 1985 and 1986 claims relate to conduct by Defendants other than the City or State. (See Am. Compl. ¶ 131.) Yet, in his opposition papers, Wiltz refers to § 1985 and 1986 claims against the City. (See Opp., ECF No. 119, at 5.) Thus, the Court will

consider these claims. As with claims pursuant to § 1983, any such claims against the State are barred by the Eleventh Amendment. See *Keitt*, 882 F. Supp. 2d at 447 ("Congress has also not abrogated the 11th Amendment immunity of states under Sections 1985 and 1986.") (internal citation omitted).

As discussed above, Wiltz has not adequately alleged any policy or custom motivated by racial animus. As with the § 1981 and § 1983 claims, allegations of disparate treatment are not enough. See *Reynolds*, 685 F.3d at 202. Thus, I recommend that any claim pursuant to § 1985 be dismissed. In addition, because a § 1986 claim only provides a cause of action against anyone with the power to prevent a § 1985 violation who fails to do so, it must be predicated upon a valid § 1985 claim. See *Fountain v. City of White Plains*, No. 13-CV-07016 (LTS) (FM), 2015 WL 5602869, at *9 (S.D.N.Y. Sept. 23, 2015) (citing *Mian v. Donaldson, Lufkin & Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) ). Because I find that Wiltz has not alleged a viable § 1985 claim, I recommend that any § 1986 claim be dismissed as well.

### III. The Court Should Dismiss Any State Law Claims

*15   To the extent that Wiltz raises any state law claims against the City or the State, I recommend that the Court decline to exercise supplemental jurisdiction over those claims. See *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction") (quoting 28 U.S.C. § 1367(c) ); *see also Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 288 (2d Cir. 2014) (noting that district courts "normally decline to retain jurisdiction in such circumstances").

### IV. Plaintiff's Claims For Injunctive Relief Should Be Dismissed

Because I recommend dismissing all of Wiltz's claims against the City and the State, I find he has no basis upon which to seek injunctive relief. Moreover, even with a viable claim, I find that Wiltz lacks standing to pursue injunctive relief.

To demonstrate that he has standing to seek injunctive relief, Wiltz must allege that there is a "real or immediate threat that he will be wronged again" by Defendants. *Naiman v. New York Univ.*, No. 95-CV-06469 (LMM), 1997 WL 249970, at *4 (S.D.N.Y. May 13, 1997). This must be more than a hypothetical or possible likelihood. See *id.* Because Wiltz has not alleged that he faces a real or immediate threat that

he will be wronged again in housing court, I recommend that Wiltz's claims for injunctive relief under the ADA be dismissed. *See DeSouza v. Kennedy*, No. 16-CV-01126, 2017 WL 3431393, at *3 (D. Conn. Aug. 9, 2017) (dismissing claim for injunctive relief when nothing in complaint suggested that plaintiff would encounter defendant again at a housing court proceeding).

**V. Leave To Amend Should Be Denied**

"In this circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.' " *Leneau v. Ponte*, No. 16-CV-00776 (GHW), 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ). However, a District Court may deny leave to amend" for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). Wiltz already has been given one opportunity to amend with respect to his § 1983 claims and the Court finds that further amendment of those claims, as well as any claims pursuant to §§ 1981, 1985 or 1986, would be futile as Wiltz's allegations are properly directed against the State, which is entitled to immunity. As for Wiltz's ADA claims, the Court recommends that leave to amend be denied as any amendment would be futile in light of the applicability of the *Rooker-Feldman* doctrine. *See Weissbrod v. Gonzalez*, 576 F. App'x 18, 19 (2d Cir. 2014) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ).

**CONCLUSION**

For the foregoing reasons, I recommend that the State's motion to dismiss (ECF No. 89) and the City's motion to dismiss (ECF No. 105) both be GRANTED.

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F) ). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods.

*16 THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).

A copy of this Report and Recommendation will be mailed to:

Randall Wiltz

1530 Beach Avenue

Bronx, NY 10460

**All Citations**

Slip Copy, 2019 WL 721658

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 109 of 152
Shuler v. Brown, Not Reported in F.Supp.2d (2009)
2009 WL 790973

2009 WL 790973
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony SHULER, Plaintiff,
v.
BROWN, et al., Defendant.

No. 07–CV–0937.
|
March 23, 2009.

West KeySummary

**1**   **Civil Rights**

👉   Prisons and Jails;  Probation and Parole

An inmate failed to state a § 1983 claim for a
violation of his right to privacy. The inmate did
not allege precisely what medical information
he believed that his counselor had revealed to
a corrections officer. Thus, the court could not
determine from the face of the complaint whether
the inmate suffered from an "unusual" condition
that would be protected by his right to privacy.
Moreover, the inmate did not allege that his
condition, whatever it might be, was revealed to
other inmates. 42 U.S.C.A. § 1983.

**Attorneys and Law Firms**

Anthony Shuler, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, Charles J. Quackenbush, Esq., of Counsel, New
York, NY, for Defendants.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.

*1  This matter brought pursuant to 42 U.S.C. § 1983
was referred to the Hon. George H. Lowe, United States
Magistrate Judge, for a Report–Recommendation pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c). No objections

to the February 2, 2009 Report–Recommendation have been
raised. After examining the record, this Court has determined
that the Report–Recommendation is not subject to attack
for plain error or manifest injustice. Accordingly, this Court
adopts the Report–Recommendation for the reasons stated
therein. Defendant's motion for judgment on the pleadings is
GRANTED and Plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED.

**REPORT–RECOMMENDATION**

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to
42 U.S.C. § 1983, has been referred to me for Report and
Recommendation by the Honorable Thomas J. McAvoy,
Senior United States District Judge, pursuant to 28 U.S.C. §
636(b) and Local Rule 72.3(c) of the Local Rules of Practice
for this Court. Plaintiff Anthony Shuler alleges that two
employees of the New York State Department of Correctional
Services ("DOCS") [1] violated his constitutional rights when
one revealed statements he made during a counseling session
and the other, based on that revelation, issued a misbehavior
report that resulted in a 60–day disciplinary sentence. (Dkt.
No. 1.)

[1]   Plaintiff's complaint also named DOCS as a defendant.
(Dkt. No. 1 at ¶ I(B).) The Court dismissed DOCS as a
defendant upon initial review of the complaint. (Dkt. No.
6.)

Currently pending is Defendants' motion for judgment on the
pleadings pursuant to Federal Rule of Civil Procedure 12(c) [2].
(Dkt. No. 16.) After Defendants filed the pending motion,
Plaintiff requested a voluntary dismissal without prejudice.
(Dkt. No. 19.) The Court denied that request. (Dkt. No. 21.)
Plaintiff has not opposed the pending motion despite having
been granted an extension of time to do so and being advised
of the consequences of failing to do so. (Dkt. No. 21.) Because
I find that Plaintiff's complaint fails to state a cause of action,
I recommend that Defendants' motion for judgment on the
pleadings be granted.

[2]   Defendants' memorandum of law suggests that the Court
find the complaint "wholly insubstantial and frivolous"
and dismiss it for lack of jurisdiction pursuant to
Federal Rule of Civil Procedure 12(h)(3). (Dkt. No.
16–2 at 4–5.) That suggestion did not appear in the
notice of motion, the title page of the memorandum

of law, or the introduction to the memorandum of law. Accordingly, I decline Defendants' suggestion and will address Plaintiff's complaint solely under Federal Rule of Civil Procedure 12(c).

## I. BACKGROUND A. Summary of Plaintiff's Complaint

Liberally construed, the complaint alleges as follows:

On August 25, 2006, Plaintiff went to see his Mental Health Unit counselor, Defendant V. Brown. (Dkt. No. 1 at ¶ II(D).) Thereafter, Defendant Brown informed Defendant Sergeant R.J. Ballard that Plaintiff had behaved inappropriately toward her. (Dkt. No. 1 at 16.) On September 25, 2006, Defendant Ballard issued a misbehavior report. The report stated that when Defendant Ballard interviewed Plaintiff about Defendant Brown's allegations, Plaintiff "began yelling 'I'll do or say what I want to these females. I'm 41 years old and I'll do what I want.' " (Dkt. No. 1 at 10.) After a Tier III hearing on the misbehavior report, Plaintiff was sentenced to 60 days of keeplock along with loss of commissary, package and phone privileges. (Dkt. No. 1 at 17.)

On October 19, 2006, Plaintiff filed an inmate grievance. (Dkt. No. 1 at 8.) He complained that Defendant Brown had revealed the contents of their September 25, 2006, counseling session to Defendant Ballard. *Id.* He requested that Defendant Brown "take or retake a course in patient confidentiality." *Id.* He also asked "to have no future female as my counselor, since it makes me feel very uncomfortable to deal with the other sex on that level." *Id.* The grievance was denied. (Dkt. No. 1 at 16.)

 **\*2** Plaintiff appealed his disciplinary sentence. (Dkt. No. 1 at 11–13.) On November 27, 2006, after Plaintiff had completed his keeplock sentence, DOCS reversed the disciplinary sentence. (Dkt. No. 1 at 15.)

In his complaint, Plaintiff alleges that Defendants violated his civil rights by violating his right to privacy and unlawfully detaining him in keeplock. (Dkt. No. 1 at ¶ II(D).) Liberally construed, Plaintiff's complaint raises a right-to-privacy claim against Defendant Brown and procedural and substantive due process claims against Defendant Ballard. Plaintiff requests $1 million in damages. (Dkt. No. 1 at ¶ V.)

## B. Summary of Grounds in Support of Defendants' Motion For Judgment on The Pleadings

Defendants argue that (1) Plaintiff has not stated a right-to-privacy claim because he has not alleged that he suffers from

a medical condition "unusual" enough to warrant privacy protection; (2) even if Plaintiff had alleged a cognizable privacy interest, the face of the complaint reveals that Defendant Brown's disclosure was reasonably related to legitimate penological interests; (3) the complaint fails to state a due process claim because the face of the complaint reveals that Plaintiff was granted a hearing and given the opportunity to rebut the charges against him [3] ; and (4) they are entitled to qualified immunity. (Dkt. No. 16–2.) Because I find that the complaint fails to state a cause of action, I will not address Defendants' argument regarding qualified immunity.

[3]     Defendants devoted only a four-sentence footnote to their argument regarding Plaintiff's due process claims.

## II. ANALYSIS A. First Basis for Dismissal: Facial Merit of Defendants' Unopposed Motion

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the nonmoving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendants' motion for judgment on the pleadings was properly filed, Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure), and Plaintiff has failed to show good cause why his failure to oppose Defendants' motion should not be deemed as consent to the granting of the motion. Therefore, I must determine whether Defendants have met their burden to "demonstrate entitlement to dismissal" under Rule 12(c). [4]

[4]     *See also* Fed.R.Civ.P. 7(b)(1) (requiring motions to, *inter alia,* "state with particularity the grounds therefor").

An inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] is a more limited endeavor than a review of a contested motion for judgment on the pleadings. Specifically, under such an analysis, the movant's burden has appropriately been characterized as "modest." [5] This is because, as a practical matter, the burden requires only that the movant present an argument that is "facially meritorious." [6]

[5]     *See, e.g., Ciaprazi v. Goord,* 02–CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec.22, 2005) (Sharpe,

J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord, Saunders v. Ricks,* 03–CV–0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report–Recommendation of Lowe, M.J.), *Smith v. Woods,* 03–CV–0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting Report–Recommendation of Lowe, M.J.); *see also Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109–1110 (N.D.N.Y.2003) (Munson, J.) (reviewing merely whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b] [3] ); *Wilmer v. Torian,* 96–CV–1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, 1997 WL 640982, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95–CV–989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

6    *See, e.g., Hernandez v. Nash,* 00–CV–1564, 2003 U.S. Dist. LEXIS 16258, 2003 WL 22143709, at *7–8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b] [3], "the court must review the motion to determine whether it is *facially meritorious*" ) [emphasis added; citations omitted]; *accord, Topliff v. Wal–Mart Stores East LP,* 04–CV–0297, 2007 U.S. Dist. LEXIS 20533, 2007 WL 911891, at *28 & n. 43 (N.D.N.Y. March 22, 2007) (Lowe, M .J.); *Hynes v. Kirkpatrick,* 05–CV–0380, 2007 U.S. Dist. LEXIS 24356, 2007 WL 894375, at *5–6 & n. 2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04–CV–1311, 2007 U.S. Dist. LEXIS 26583, 2007 WL 951447, at *28–29 & n. 40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458, 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey,* 03–CV–0170, 2006 U.S. Dist. LEXIS 95065, 2006 WL 3940592, at *5 & n. 2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336, 2007 WL 189021 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

Here, I find that Defendants have met their lightened burden on their unopposed motion given Defendants' cogent, and legally supported, legal arguments set forth in their memorandum of law. (Dkt. No. 16.) I note that this Court has, on numerous occasions, granted motions to dismiss based on

a similar facial analysis of a defendant's legal arguments (and a plaintiff's claims). [7]

7    *See, e.g., Wilmer v. Torian,* 96–CV–1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Local Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 96–CV–1269, 1997 U.S. Dist. LEXIS 16340, 1997 WL 640982, at *2 (N.D.N .Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95–CV–0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.); *Munoz v. Coombe,* 95–CV–1191, 1996 U.S. Dist. LEXIS 15107, at *3 (N.D.N.Y. Aug. 21, 1996) (Hurd, M.J.), *adopted by* 95–CV–1191, 1996 U.S. Dist. LEXIS 15108, 1996 WL 589369, at *2 (N.D.N.Y. Oct. 11, 1996) (Pooler, J.) (rejecting plaintiff's objections, explaining that "Local Rule 7.1(b) permits the court to grant an unopposed motion"); *Owens v. Long,* 95–CV–0604, 1996 U.S. Dist. LEXIS 6520, at *2 (N.D.N.Y. March 11, 1996) (Hurd, M.J.), *adopted by* 95–CV–0604, 1996 U.S. Dist. LEXIS 4807 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.).

 **\*3** For these reasons, I recommend that the Court grant Defendants' motion for judgment on the pleadings.

## B. Alternative Basis for Dismissal: Substantive Merit of Defendants' Motion

In the alternative, I recommend dismissal based on the sort of detailed scrutiny of Defendants' legal arguments that would be appropriate on a *conteste* d motion for judgment on the pleadings.

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enter .,* 448 F.3d 518, 521 (2d Cir.2006). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); [8] or (2) a challenge to the legal cognizability of the claim. [9]

8    See 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

9    See *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02–CV–6205, 2004 U.S. Dist. LEXIS 23314, 2004 WL 2613993, at *4–5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101–102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01–CV–4430, 2002 U.S. Dist. LEXIS 1658, 2002 WL 313156, at *6–7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion—one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [10] The main purpose of this rule is to "facilitate a proper decision on the merits." [11] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [12]

10    *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

11    *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

12    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95–CV–4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98–CV–0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and

2009 WL 790973

"liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[13] However, it is well established that even this liberal notice pleading standard "has its limits."[14] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[15]

13 *See, e.g., Swierkiewicz,* 534 U.S. at 513–514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

14 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003).

15 *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord, Dura Pharm.,* 125 S.Ct. at 1634–1635, *Christopher v. Harbury,* 536 U.S. 403, 416–422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234–235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208–209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01–7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a] [2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007).[16] Rather than turning on the *conceivability* of an actionable claim, the Court clarified the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74.

16 The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic,* 127 S.Ct. at 1969.

***4** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id* .

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic* ).[17] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[18]

17 *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is

plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07–CV–2537, 2008 U.S.App. LEXIS 2241, 2008 WL 269100, at \*14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ) [emphasis in original].

18    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215–16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Rule 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Bell Atlantic*—that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Bell Atlantic,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [19] There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what

the claims are and the grounds on which they rest (in order to shape a defense).

19    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Bell Atlantic,* all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199–2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See , e .g., Rose v. Alvees,* 01–CV–0648, 2004 WL 2026481, at \*6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02–CV–1182, 2004 WL 526740, at \*10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01–CV–6571, 2002 WL 338375, at \*6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99–CV–3208, 2000 WL 760751, at \*9 (S.D.N.Y. June 13, 2000).

2009 WL 790973

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[20] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*[21] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

[20] *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

[21] *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**\*5** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[22] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[23] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[24] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[25] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[26]

[22] "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96–CV–7544, 1997 WL 714878, at \*1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases

where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading—which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138– 39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[23] *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[24] *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

[25] *Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[26] *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05–CV–0836, 2007 WL 1343649, at \*3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report–Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint— the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process— was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07–CV–0166, 2008 WL 3582743, at \*2 (D.Vt. Aug.13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing

his complaint because the errors in his complaint—lack of subject-matter jurisdiction and lack of standing—were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.,* 05–CV–2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint—which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00–CV–1309, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint—the fact that the defendants were protected from liability by Eleventh Amendment immunity—was substantive and not formal in nature, rendering repleading futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[27] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[28] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[29] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[30]

[27] *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06–1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

[28] *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,*

469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

[29] *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

[30] *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

1. *Privacy* a. *Cognizable privacy interest*
Plaintiff alleges that Defendants violated his right to privacy. (Dkt. No. 1 at ¶ II(D).) Defendants argue that Plaintiff has not stated a cause of action. (Dkt. No. 16–2 at 5–7.) Defendants are correct.

There is a constitutional right of privacy[31] that protects the individual interest against disclosure of personal matters such as one's medical condition. *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). In *Doe v. City of New York,* 15 F.3d 264 (2d Cir.1994), the Second Circuit applied *Whalen* to hold that individuals who are HIV positive "clearly possess a constitutional right to privacy regarding their condition." The Second Circuit has extended this protection to prisoners. *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999). These decisions do not create an absolute right of privacy regarding a prisoner's medical condition. Rather, the prisoner's privacy interest will vary with the prisoner's medical condition. *Id.* at 111; *Doe v. City of New York,* 15 F.3d at 267. This privacy interest is at its zenith when

the prisoner suffers from an "unusual" condition, such as HIV or transsexualism, that is "likely to provoke an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell,* 175 F.3d at 111. Courts have refused to recognize a protected privacy interest where a prisoner's medical condition is not "unusual." *Rodriguez v. Ames,* 287 F.Supp.2d 213, 220 (W.D.N.Y.2003). Courts have also refused to recognize a protected privacy interest where there is no evidence that a prisoner's condition was revealed to other inmates. *Leon v. Johnson,* 96 F.Supp.2d 244, 252 (W.D.N.Y.2000) [32] .

[31]    The Supreme Court has ruled that "a right to privacy ... [is] derived from the Fourteenth Amendment or the 'penumbra' of other constitutional rights." *Webb v. Goldstein,* 117 F.Supp.2d 289, 296 (E.D.N.Y.2000) (citing *Whalen v. Roe,* 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)).

[32]    Defendants have not cited, and the Court has not found, authority specifically addressing the standard to be applied where a prison mental health official allegedly reveals statements made by a prisoner during a counseling session. However, the logic underlying the disclosure-of-medical-condition cases—that prisoners have a reduced right to privacy that arises only in unusual situations, such as those that implicate a prisoner's safety —is applicable here.

**\*6** Here, Plaintiff has not alleged precisely what medical information he believes Defendant Brown revealed. He states that "the contents" of his August 25, 2006, session with Brown were disclosed and that "the information released was not a threat to the facility, staff or the inmate population." (Dkt. No. 1 at 8.) Thus, this Court cannot determine from the face of the complaint whether Plaintiff suffers from an "unusual" condition that would be protected by his right to privacy. Moreover, Plaintiff does not allege that his condition, whatever it may be, was revealed to other inmates. Therefore, Plaintiff has not alleged a cognizable privacy interest.

b. *Legitimate penological interest*
Even if Plaintiff had alleged a cognizable privacy interest, his right to privacy claim would be subject to dismissal for failure to state a claim because the face of the complaint reveals that Defendant Brown had a legitimate penological interest in revealing information from her counseling session with Plaintiff.

Prison officials may reveal a prisoner's medical condition, even an "unusual" medical condition that is protected by the zenith of the prisoner's right to privacy, if the disclosure is "reasonably related to legitimate penological interests." *Powell,* 175 F.3d at 112. A court can determine whether a prison official's actions were "reasonably related to legitimate penological interests" on a motion to dismiss. See e.g. *Webb v. Goldstein,* 117 F.Supp.2d 289 (E.D.N.Y.2000).

Here, the face of the complaint reveals that Defendant Brown had legitimate penological reasons for revealing information from her session with Plaintiff. During the session with Defendant Brown, Plaintiff allegedly engaged in "inappropriate sexual behavior/conduct." (Dkt. No. 1 at 10.) Reporting this incident to a correctional officer was reasonably related to the legitimate penological interest of protecting prison personnel from potential threats. See e.g. *Choice v. Coughlin,* No. 94 Civ. 8307, 1996 WL 325627 (S.D.N.Y. June 11, 1996) (prisoner's letter regarding his romantic feelings for a civilian medical employee at prison was "fundamentally inconsistent with the legitimate penological interests of the facility" because it presented "a potential threat to the safety and security of [the employee] and other prison staff.").

Therefore, it is recommended that Plaintiff's cause of action for invasion of his right to privacy be dismissed.

2. *Due Process*
Plaintiff does not explicitly allege that Defendants violated his due process rights. However, the complaint states that Defendant Ballard "wrote up a fabricated misbehavior report that led to me being sentenced to 60 days of keeplock." (Dkt. No. 1 at ¶ II(D).) Liberally construing the complaint, I have deemed this to be a claim that Defendants violated Plaintiff's procedural and substantive due process rights.

a. *Procedural due process*
In order to state a claim for violation of his procedural due process rights, Plaintiff must allege facts plausibly suggesting that (1) he was deprived of a liberty interest; (2) without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000).

**\*7** As Defendants note, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949,

951 (2d Cir.1986)); *accord, Pittman v. Forte,* 01–CV–0100, 2002 WL 31309183, *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something such as "retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03–CV–1263, 2007 WL 965345, at *8 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted]. Here, Plaintiff does not claim that the misbehavior report was issued in retaliation for Plaintiff's exercise of a constitutional right. Accordingly, the complaint does not state a claim for a procedural due process violation based on the filing of an allegedly false misbehavior report.

The complaint could also be construed as stating a procedural due process claim based on the length of Plaintiff's keeplock detention. Although Defendants did not address this claim, I will do so *sua sponte* under 28 U.S.C. § 1915(e)(2). An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU [33]." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). The issue, then, is whether Plaintiff's keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

[33]   Although keeplock confinement and SHU confinement are not identical detention statuses, the Second Circuit has applied the same procedural due process analytical framework to both. See e.g. *Palmer v. Richards,* 364 F.3d 60, 66–67 (2d Cir.2004).

In the Second Circuit, determining whether a disciplinary confinement constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer,* 364 F.3d at 64. Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions

were more severe than the normal SHU conditions [34]." *Palmer,* 364 F.3d at 65. For confinements of an "intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer,* 364 F.3d at 64–65. Disciplinary segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life." *Palmer,* 364 F.3d at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000)).

[34]   "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004).

**8 Here, Plaintiff alleges that he served 60 days in keeplock. Accordingly, a protected liberty interest is implicated only if Plaintiff was confined under conditions "more severe" than "normal" SHU conditions. Plaintiff has alleged no such conditions. Compare *Welch v. Bartlett,* 196 F.3d 389 (2d Cir.1999) (plaintiff alleged that while in the SHU he received "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes); *Palmer,* 364 F.3d at 66 (plaintiff alleged that he suffered unusual SHU conditions such as being deprived of his property, being mechanically restrained whenever he was escorted from his cell, and being out of communication with his family); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (plaintiff alleged that he was confined to his cell for 24 hours a day, not permitted to shower for weeks at a time, denied hygiene products, and denied utensils); *Wheeler v. Butler,* 209 F.App'x 14 (2d Cir.2006) (plaintiff alleged that he was denied the use of his hearing aids during his SHU confinement). Therefore, Plaintiff has not sufficiently alleged that his confinement in keeplock deprived him of a protected liberty interest.

District courts in the Second Circuit are split on whether a prisoner can state a procedural due process cause of action when he alleges that he served less than 101 days in the SHU but does not allege conditions more severe than normal SHU conditions. Compare *Gonzalez–Cifuentes v. Torres,* No. 9:04–cv–1470 GLS/DRH, 2007 WL 499620, at * 3 (N.D.N.Y. Feb.13, 2007) ("The Second Circuit has held that at least where the period of confinement exceeded thirty days, refined fact-finding is required to resolve defendants' claims under *Sandin.* No such fact-finding can occur ... on a motion

2009 WL 790973

to dismiss") and *Smart v. Goord,* 441 F.Supp.2d 631, 641 (S.D.N.Y.2006) ("Smart has not alleged that the conditions of her confinement were more severe than normal SHU conditions ... However, such detailed factual allegations are not necessary to withstand a motion to dismiss ... Since Smart has alleged that she was confined for seventy days, she has met her burden in alleging the deprivation of a protected liberty interest") with *Alvarado v. Kerrigan,* 152 F.Supp.2d 350 (S.D.N.Y.2001) (granting motion for judgment on the pleadings where prisoner's allegations about the conditions of his 93–day SHU confinement failed to "elevate his confinement to the level of deprivation required under *Sandin* ); *Sales v. Barizone,* No. 03 Civ. 6691RJH, 2004 WL 2781752, at *7 (S.D.N.Y. Dec.2, 2004) (granting motion to dismiss with leave to amend because plaintiff's "due process claim arising out of two months' confinement in the SHU ... cannot survive the *Sandin* test absent further allegations") *Tookes v. Artuz,* No. 00 Civ. 4969 RCC HBP, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("No such additional egregious circumstances are pled here. Indeed, the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement. Nor has [plaintiff] responded to the defendants' motion in order to provide further detail. Therefore, dismissal of plaintiff's due process claims is appropriate"); and *Prince v. Edwards,* No. 99 Civ. 8650, 2000 WL 633382, at *5 (S.D.N.Y. May 17, 2000) (dismissing case with prejudice where the complaint contained "no allegations whatever regarding the conditions of [prisoner's 66–day] confinement."). The Second Circuit has never addressed this issue directly [35].

[35] While the Second Circuit has stated that "development of a detailed record will assist appellate review" of SHU cases and that "development of a detailed record of the conditions of the confinement relative to ordinary conditions is required," it has done so only in cases involving "intermediate" SHU confinements of 101 to 305 days. *Colon,* 215 F.3d at 232; *Palmer,* 364 F.3d at 64–65. Even in this "intermediate" context, where a detailed record is "required," the Second Circuit has not remanded a case for further development of the record absent an allegation of severe SHU conditions. For example, in *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007), the plaintiff was confined to a super-restrictive housing unit for six months. He sued, arguing in part that his procedural due process rights were violated. The defendants moved to dismiss. The district court denied the motion, finding that the plaintiff had alleged the deprivation of a liberty interest. The defendants brought an interlocutory appeal. The Second Circuit affirmed, finding that "the Plaintiff's confinement of more than six

months fell in the intermediate range, thereby requiring inquiry into the conditions of his confinement, which he *sufficiently alleges* to have been severe." *Iqbal,* 490 F.3d at 163 (emphasis added).

*9 The undersigned agrees with the *Alvarado, Sales, Tookes,* and *Prince* courts that a motion to dismiss can be granted where a prisoner who served less than 101 days in the SHU alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU conditions. The undersigned adopts this view for two reasons. First, as discussed at length above, Rule 8 requires that a complaint include factual allegations that raise a right to relief above the speculative level to the plausible level. Where a prisoner contends merely that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU conditions, his right to relief under a procedural due process theory is purely speculative. Second, the Second Circuit's manner of reviewing motions to dismiss in SHU confinement cases suggests that dismissal is the better course. In its cases, the Second Circuit has focused on the *content* of the prisoner's allegations regarding SHU conditions rather than establishing a bright-line rule that a determination of whether conditions were "atypical and significant" cannot be resolved on a Rule 12(b)(6) motion. For example, in *Ortiz,* the district court granted the defendants' motion to dismiss a case in which a prisoner complained of a 90–day SHU confinement. The Second Circuit reversed, not because the *Sandin* issue can never be decided at the motion to dismiss stage, but because *the prisoner had alleged the existence of "conditions in SHU far inferior to those prevailing in the prison in general." Ortiz,* 380 F.3d at 655 (emphasis added). Plaintiff's bare allegation that his procedural due process rights were violated by his 60–day keeplock confinement is insufficient to state a claim. Therefore, I recommend that Plaintiff's procedural due process claim be dismiss with leave to amend.

### b. *Substantive due process*

Given the special solicitude due to *pro se* civil rights plaintiffs, I have deemed the complaint to include a substantive due process claim and will address it *sua sponte* under 28 U.S.C. § 1915(e)(2). Defendants have not addressed any possible substantive due process claim.

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against

constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations omitted). Very few conditions of prison life are "shocking" enough to violate a prisoner's right to substantive due process. In *Sandin,* the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs. *Sandin,* 515 U .S. at 479 n. 4, 484. Courts have also noted that a prison official's refusal to obey a state court order to release a prisoner from disciplinary confinement may violate the prisoner's right to substantive due process. *Johnson v. Coughlin,* No. 90 Civ. 1731, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997); *Arce v. Miles,* No. 85 Civ. 5810, 1991 WL 123952, at *9 (S.D.N.Y. June 28, 1991).

*10 Plaintiff's complaint does not allege facts plausibly suggesting that Defendants' actions were arbitrary, conscience-shocking or oppressive in the constitutional sense. As discussed above, the complaint does not indicate that Plaintiff was held in unusual keeplock conditions. Moreover, Plaintiff does not allege that Defendants refused to obey a state court order to release him from disciplinary confinement. Therefore, the complaint fails to state a claim for violation of Plaintiff's right to substantive due process and I recommend that the claim be dismissed with leave to amend.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 16) be ***GRANTED*** with leave to amend.

**ANY OBJECTIONS to this Report–Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report–Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a) (2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [36]

36   *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88–CV–5309, 1993 WL 427409, at *18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638–39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson—Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990– 91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**BE ALSO ADVISED that the failure to file timely objections to this Report–Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 790973

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 632890
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Victor SMITH, Plaintiff,
v.
Brian FISCHER, NYS Docs
Commissioner et al., Defendants.

No. 9:07-CV-1264.
|
Feb. 2, 2009.

**Attorneys and Law Firms**

Victor Smith, Sodus, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Shoshanah V. Bewlay, Esq., Ass't Attorney
General, of Counsel, Albany, NY, for Defendants.

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to me for
Report and Recommendation by the Honorable David N.
Hurd, United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and Local Rule 72.3(c). Plaintiff Victor D. Smith
alleges that seven employees [1] of the New York State
Department of Correctional Services ("DOCS") wrongfully
confined him to the Special Housing Unit ("SHU") and
prevented him from attending his mother's wake. Currently
pending before the Court is Defendants' motion to dismiss the
amended complaint (Dkt. No. 15) for failure to state a claim
upon which relief may be granted pursuant to Federal Rule
of Civil Procedure 12(b)(6). (Dkt. No. 28.) For the reasons that
follow, I recommend that Defendants' motion be granted.

[1]     Brian Fischer (Commissioner of DOCS), Susan Connell
        (Superintendent of Oneida Correctional Facility),
        John Badger, Karl Adamik, Ivy Lombardo (Acting
        Superintendent of Orleans Correctional Facility),
        Anthony Labriola, and Peter Naughton.

**I. BACKGROUNDA. Summary of Plaintiff's Complaint**

The amended complaint (Dkt. No. 15) ("the complaint") is
the operative pleading in this case. It alleges that:

1. On August 13, 2007, Defendant Adamik issued a
misbehavior report charging Plaintiff with various offenses.
(Dkt. No. 15 at ¶ 6 (1).)

2. Defendants held Plaintiff in the SHU at Oneida
Correctional Facility pending completion of a Tier III hearing.
(Dkt. No. 15 at ¶ 6 (1).)

3. The Tier III hearing was convened on August 17, 2007.
Defendant Badger was the hearing officer. He adjourned the
hearing until August 28, 2007. (Dkt. No. 15 at ¶ 6 (2).)

4. Plaintiff's Tier III Hearing was reconvened on August 28,
2007. Defendant Badger found Plaintiff guilty of all charges.
He sentenced Plaintiff to 90 days of S-Block confinement
at Orleans Correctional Facility, with no credit for the time
Plaintiff served in the SHU pending completion of his
hearing. (Dkt. No. 15 at ¶6(2).) Plaintiff also lost recreation,
packages, commissary, and phone privileges and three days
of good time credits. (Dkt. No. 15, Ex. A.)

5. Thereafter, while Plaintiff was being held in the S-Block,
Defendants Connell, Labriola, Lombardo, and Naughton
denied Plaintiff's requests for discretionary review. (Dkt. No.
15 at ¶ 6 (3).)

**\*2** 6. On October 25, 2007, Plaintiff filed a claim with
the New York State Court of Claims, claiming that DOCS
officials had wrongfully denied him permission to attend his
mother's wake. (Dkt. No. 15 at ¶ 5(b).)

7. On October 26, 2007, Albert Prack, acting on behalf of
Defendant Brian Fischer, reversed the disciplinary charges
against Plaintiff. He concluded that Defendant Adamik's
misbehavior report did not provide enough information to
support the charges. (Dkt. No. 15 at ¶ 6 (3) and Ex. B.)

8. Despite the reversal of the charges on October 26, 2007,
Defendants Labriola and Lombardo denied Plaintiff's request
to be released back into the general population and continued
to hold him in the S-block under a "retention admission"
status. (Dkt. No. 15 at ¶ 6 (4).)

9. Plaintiff was released to the general prison population on
November 21, 2007. (Dkt. No. 15 at ¶ 6 (4).)

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 122 of 152
Smith v. Fischer, Not Reported in F.Supp.2d (2009)
2009 WL 632890

Plaintiff complains that Defendants' actions resulted in him being "falsely confined/imprisoned under sanctions for 98 days," including "14 days [2] prior to completion of a sup't (sic) hearing and 24 days following the reversal of the charges." (Dkt. No. 15 at ¶ 7.) Plaintiff also complains that he was "purposely denied an approved wake visit." (Dkt. No. 15 at ¶ 7.) Defendants' actions, Plaintiff asserts, amounted to "neglect, unfair treatment and reprisal-based conduct" that "served to create mental anxiety, irritability, paranoia and sleep deprivation at a critically sensitive juncture." (Dkt. No. 15 at ¶ 7.)

[2]    Elsewhere in the complaint, Plaintiff alleges that he was "held in the ... SHU pending completion of a Tier III Sup't Hearing *beyond* the 14 day time requirement to complete said hearing." (Dkt. No. 15 at ¶ 6 (1), emphasis added.) According to the timeline presented in the complaint, fifteen days passed between the time Defendant Adamik issued the misbehavior report on August 13 and the completion of the disciplinary hearing on August 28. For the purposes of this decision, I have assumed that Plaintiff was confined for 15 days pending completion of the hearing.

Plaintiff's legal arguments, liberally construed, appear to assert four causes of action: (1) a procedural due process claim under the Fourteenth Amendment; (2) a substantive due process claim under the Fourteenth Amendment; (3) an inadequate-prison-condition claim under the Eighth Amendment; and (4) an equal protection claim under the Fourteenth Amendment.

In his prayer for relief, Plaintiff requests $15,000 in compensatory damages "for mental and emotional injury" plus $10,000 in punitive damages. (Dkt. No. 15 at ¶ 9.)

## B. Summary of Grounds in Support of Defendants' Motion

Defendants argue that (1) the complaint fails to allege facts plausibly suggesting a violation of the Fourteenth Amendment because Plaintiff has not alleged any "atypical and significant hardship"; (2) the complaint fails to allege facts plausibly suggesting a violation of the Eighth Amendment because (a) Plaintiff's confinement in the SHU does not constitute cruel and unusual punishment as a matter of law; and (b) prisoners have no liberty interest in funeral visits; (3) the complaint fails to state a claim under the Equal Protection Clause because Plaintiff does not allege that he was treated any differently than any

other similarly situated person; (4) the complaint fails to allege facts plausibly suggesting that Defendants Connell, Fischer, Labriola, Lombardo, and Naughton were personally involved in any of the constitutional violations alleged; (5) Plaintiff's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e) because he has not alleged any facts plausibly suggesting that he suffered a physical injury; and (6) Defendants are protected by the doctrine of qualified immunity. (Dkt. No. 28-2.) I will address only Defendants' first, second and third arguments, as they are dispositive.

## C. Summary of Plaintiff's Response to Defendants' Arguments

**\*3** In response to Defendants' motion to dismiss, Plaintiff argues that:

1. There can be no governmental immunity extended to Defendants because they negligently performed their ministerial duties;

2. Defendants breached administrative procedures and protocols by mishandling his Tier III hearing, denying his request to attend his mother's wake, and confining him to excessive detention in the SHU after the charges against him were reversed; and

3. As a result of not attending his mother's wake, Plaintiff now suffers from mental anxiety, irritability, paranoia, and sleep deprivation. (Dkt. No. 29.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); [3] or (2) a challenge to the legal cognizability of the claim. [4]

[3]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under

2009 WL 632890

F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

4   *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at \*4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b] [6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at \*6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon

which it rests." [5]   The main purpose of this rule is to "facilitate a proper decision on the merits." [6]   A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [7]

5   *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

6   *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

7   *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at \*2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at \*1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [8]   However, it is well established that even this liberal notice pleading standard "has its limits." [9]   As a result, several Supreme Court

Smith v. Fischer, Not Reported in F.Supp.2d (2009)

2009 WL 632890

and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. [10]

8    *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

9    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

10    *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord, Dura Pharm.,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [11] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice"

standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

11    The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic,* 127 S.Ct. at 1969.

**\*4** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic* ). [12] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [13]

12    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Bell Atlantic* requires ... that the complaint's

'[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Bell Atlantic's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Bell Atlantic* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

13    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Rule 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement is merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Bell Atlantic*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Bell Atlantic,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [14] There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

14    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to

how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Bell Atlantic,* all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [15] "This standard is applied with even greater force where the plaintiff alleges civil rights violations

or where the complaint is submitted *pro se*."[16] In other words, where all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

15    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

16    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**\*5** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[17] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[18] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[19] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[20] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[21]

17    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at \*1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part*

on other grounds, 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

18    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

19    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

20    *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

21    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05-CV-0836, 2007 WL 1343649, at \*3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that DOCS' established grievance procedure-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07-CV-0166, 2008 WL 3582743, at \*2 (D.Vt. Aug.13, 2008) (denying pro se plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.,* 05-CV-2355, 2005 WL 1541049, at \*2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under

42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00-CV-1309, 2001 WL 58834, at * 11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[22] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[23] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[24] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[25]

[22]    *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

[23]    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

[24]    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not

have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

[25]    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1162, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

## III. ANALYSIS A. Plaintiff Has Not Stated a Procedural Due Process Claim

The complaint alleges that Defendants violated Plaintiff's due process rights under the Fourteenth Amendment. (Dkt. No. 15 at ¶ 7.) The undersigned has construed the complaint as asserting both a procedural due process claim and a substantive due process claim[26]. Construed liberally, the complaint asserts that Plaintiff's procedural due process rights

were violated by (1) the length of his detention in the SHU;
(2) the fact that the disciplinary charges were based on a false
report; (3) the fact that he was held for 15 days in the SHU
prior to the completion of his disciplinary hearing; and (4) the
denial of the wake visit.

26      Defendants construed the complaint as asserting only a
procedural due process claim. (Dkt. No. 28-2 at 10-11.)

1. *The length of Plaintiff's detention in the SHU*

Regarding the length of his detention, Plaintiff asserts that
his due process rights were violated because he was "falsely
confined/imprisoned under sanctions for 98 days." (Dkt. No.
15 at ¶ 7.) Defendants argue that the complaint fails to
state such a claim because Plaintiff has failed to allege any
"atypical and significant hardship." (Dkt. No. 28-2 at 3-5.)
Defendants are correct.

In order to state a claim for violation of his procedural due
process rights, Plaintiff must allege facts plausibly suggesting
that (1) he was deprived of a liberty interest; (2) without
due process of law. *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d
Cir.2000).

**\*6** An inmate has a liberty interest in remaining free from
a confinement or restraint where (1) the state has granted
its inmates, by regulation or statute, an interest in remaining
free from that particular confinement or restraint; and (2) the
confinement or restraint imposes "an atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct.
2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier
v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Regarding the
first prong of this test, "[i]t is undisputed ... that New York
state law creates a liberty interest in not being confined to the
SHU." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004).
The issue, then, is whether Plaintiff's confinement in the SHU
imposed "an atypical and significant hardship on [him] in
relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether a disciplinary
confinement in the SHU constituted an "atypical and
significant hardship" requires examining "the extent to which
the conditions of the disciplinary segregation differ from other
routine prison conditions and the duration of the disciplinary
segregation compared to discretionary confinement." *Palmer,*
364 F.3d at 64. Where a prisoner has served less than 101
days in disciplinary segregation, the confinement constitutes
an "atypical and significant hardship" only if "the conditions

were more severe than the normal SHU conditions [27] ."
*Palmer,* 364 F.3d at 65. For confinements of an "intermediate
duration-between 101 and 305 days-development of a
detailed record of the conditions of the confinement relative
to ordinary prison conditions is required." *Palmer,* 364 F.3d
at 64-65. Disciplinary segregation lasting more than 305 days
implicates a protected liberty interest even if served under
"normal" SHU conditions because a term of that length is
a "sufficient departure from the ordinary incidents of prison
life." *Palmer,* 364 F.3d at 65 (quoting *Colon v. Howard,* 215
F.3d 227, 231 (2d Cir.2000)).

27      "Normal" SHU conditions include being kept in solitary
confinement for 23 hours per day, provided one hour of
exercise in the prison yard per day, and permitted two
showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655
(2d Cir.2004).

Here, Plaintiff alleges that he served 98 days in the SHU.
Accordingly, a protected liberty interest is implicated only
if Plaintiff was confined under conditions "more severe"
than "normal" SHU conditions. Plaintiff has alleged no
such conditions. Compare *Welch v. Bartlett,* 196 F.3d 389
(2d Cir.1999) (plaintiff alleged that while in the SHU he
received "inadequate amounts of toilet paper, soap and
cleaning materials, a filthy mattress, and infrequent changes
of clothes); *Palmer,* 364 F.3d at 66 (plaintiff alleged that he
suffered unusual SHU conditions such as being deprived of
his property, being mechanically restrained whenever he was
escorted from his cell, and being out of communication with
his family); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004)
(plaintiff alleged that he was confined to his cell for 24
hours a day, not permitted to shower for weeks at a time,
denied hygiene products, and denied utensils); *Wheeler v.
Butler,* 209 F.App'x 14 (2d Cir.2006) (plaintiff alleged that
he was denied the use of his hearing aids during his SHU
confinement). Therefore, Plaintiff has not sufficiently alleged
that his confinement in the SHU deprived him of a protected
liberty interest.

**\*7** District courts in the Second Circuit are split on whether
a prisoner can state a procedural due process cause of action
when he alleges that he served less than 101 days in the
SHU but does not allege conditions more severe than normal
SHU conditions. Compare *Gonzalez-Cifuentes v. Torres,* No.
9:04-cv-1470 GLS/DRH, 2007 WL 499620, at * 3 (N.D.N.Y.
Feb.13, 2007) ("The Second Circuit has held that at least
where the period of confinement exceeded thirty days, refined
fact-finding is required to resolve defendants' claims under
*Sandin.* No such fact-finding can occur ... on a motion

to dismiss") and *Smart v. Goord,* 441 F.Supp.2d 631, 641 (S.D.N.Y.2006) ("Smart has not alleged that the conditions of her confinement were more severe than normal SHU conditions ... However, such detailed factual allegations are not necessary to withstand a motion to dismiss ... Since Smart has alleged that she was confined for seventy days, she has met her burden in alleging the deprivation of a protected liberty interest") with *Alvarado v. Kerrigan,* 152 F.Supp.2d 350 (S.D.N.Y.2001) (granting motion for judgment on the pleadings where prisoner's allegations about the conditions of his 93-day SHU confinement failed to "elevate his confinement to the level of deprivation required under *Sandin); Sales v. Barizone,* No. 03 Civ. 6691RJH, 2004 WL 2781752, at *7 (S.D.N.Y. Dec.2, 2004) (granting motion to dismiss with leave to amend because plaintiff's "due process claim arising out of two months' confinement in the SHU ... cannot survive the *Sandin* test absent further allegations") *Tookes v. Artuz,* No. 00 Civ. 4969 RCC HBP, 2002 WL 1484391, at *3 (S.D.N.Y. July 11, 2002) ("No such additional egregious circumstances are pled here. Indeed, the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement. Nor has [plaintiff] responded to the defendants' motion in order to provide further detail. Therefore, dismissal of plaintiff's due process claims is appropriate"); and *Prince v. Edwards,* No. 99 Civ. 8650, 2000 WL 633382, at *5 (S.D.N.Y. May 17, 2000) (dismissing case with prejudice where the complaint contained "no allegations whatever regarding the conditions of [prisoner's 66-day] confinement."). The Second Circuit has never addressed this issue directly [28].

While the Second Circuit has stated that "development of a detailed record will assist appellate review" of SHU cases and that "development of a detailed record of the conditions of the confinement relative to ordinary conditions is required," it has done so only in cases involving "intermediate" SHU confinements of 101 to 305 days. *Colon,* 215 F.3d at 232; *Palmer,* 364 F.3d at 64-65. Even in this "intermediate" context, where a detailed record is "required," the Second Circuit has not remanded a case for further development of the record absent an allegation of severe SHU conditions. For example, in *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007), the plaintiff was confined to a super-restrictive housing unit for six months. He sued, arguing in part that his procedural due process rights were violated. The defendants moved to dismiss. The district court denied the motion, finding that the plaintiff had alleged the deprivation of a liberty interest. The defendants brought an interlocutory appeal. The Second Circuit affirmed, finding that "the Plaintiff's confinement of more than six months fell in the intermediate range, thereby requiring inquiry into the conditions of his confinement, which he *sufficiently alleges* to have been severe." *Iqbal,* 490 F.3d at 163 (emphasis added).

The undersigned agrees with the *Alvarado, Sales, Tookes,* and *Prince* courts that a motion to dismiss can be granted where a prisoner who served less than 101 days in the SHU alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU conditions. The undersigned adopts this view for two reasons. First, as discussed at length above, Rule 8 requires that a complaint include factual allegations that raise a right to relief above the speculative level to the plausible level. Where a prisoner contends merely that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU conditions, his right to relief under a procedural due process theory is purely speculative. Second, the Second Circuit's manner of reviewing motions to dismiss in SHU confinement cases suggests that dismissal is the better course. In its cases, the Second Circuit has focused on the *content* of the prisoner's allegations regarding SHU conditions rather than establishing a bright-line rule that a determination of whether conditions were "atypical and significant" cannot be resolved on a Rule 12(b)(6) motion. For example, in *Ortiz,* the district court granted the defendants' motion to dismiss a case in which a prisoner complained of a 90-day SHU confinement. The Second Circuit reversed, not because the *Sandin* issue can never be decided at the motion to dismiss stage, but because *the prisoner had alleged the existence of "conditions in SHU far inferior to those prevailing in the prison in general." Ortiz,* 380 F.3d at 655 (emphasis added).

**\*8** Plaintiff's bare allegation that his procedural due process rights were violated by his 98-day confinement in the SHU is insufficient to state a claim. Therefore, I recommend that this claim be dismissed with leave to amend.

2. *False accusation*

To the extent that Plaintiff claims that his SHU confinement violated his due process rights because it stemmed from a false accusation, I note that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)); *accord, Pittman v. Forte,* 01-CV-0100, 2002 WL 31309183, \*5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.). The only way that false accusations contained in a

misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something such as "retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 WL 965345, at *8 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted]. Here, Plaintiff does not claim that the misbehavior report was issued in retaliation for Plaintiff's exercise of a constitutional right. Read broadly, the complaint alleges that Defendants took some actions in retaliation for Plaintiff's filing of a complaint with the Court of Claims regarding the denial of the wake visit. However, Defendant Adamik issued the misbehavior report several months *before* Plaintiff filed his complaint with the Court of Claims. Therefore, Defendant Adamik could not possibly have been retaliating for Plaintiff's exercise of his constitutional right of access to the courts when he issued the misbehavior report. Accordingly, the complaint does not state a claim for a procedural due process violation based on the filing of an allegedly false misbehavior report and I recommend that the claim be dismissed with leave to amend.

### 3. *SHU confinement pending completion of disciplinary hearing*

Plaintiff alleges that he was "held in the ... SHU pending completion of a Tier III Sup't Hearing beyond the 14 day time requirement to complete said hearing." (Dkt. No. 15 at ¶ 6 (1).) DOCS regulations provide that:

> The disciplinary hearing or superintendent's hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee. Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals.

N.Y. Comp.Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 251-5.1(b). Pursuant to this regulation, New York has granted inmates an interest in remaining free from restraints of more than 14 days pending a disciplinary hearing unless

the commissioner or his designee authorizes a delay. Here, the complaint alleges that Defendant Badger authorized a delay. (Dkt. No. 16 at ¶ 6(2).) The complaint does not state whether or not the record of the hearing reflected the reasons for the delay. However, that fact is immaterial because the regulation does not require that the record reflect the reason: it merely states that the record "should" reflect the reason. See *Dallio v. Spitzer,* 343 F.3d 553, 562 (2d Cir.2003) (" 'Shall' is universally understood to indicate an imperative or mandate, whereas 'should,' to the extent it implies any duty or obligation, generally references one originating in propriety or expediency"). Accordingly, Plaintiff did not have a state-created liberty interest in remaining free from the confinement or restraint of being held in the SHU for 15 days pending completion of his disciplinary hearing. Even if he had such an interest, Plaintiff has not pleaded that a one-day delay imposed an "atypical and significant" hardship on him. Indeed, such delays are reasonably routine. See e.g. *Tookes v. Artuz,* No. 00 CIV 4969 RCC HBP, 2002 WL 1484391 (S.D.N.Y. July 11, 2002) (17-day delay between issuance of misbehavior report and conclusion of disciplinary hearing did not implicate procedural due process). Therefore, Plaintiff has not alleged facts plausibly suggesting that his procedural due process rights were violated by the one-day delay in completing his disciplinary hearing.

### 4. *Wake visit*

**\*9** Plaintiff's allegations regarding the denial of his wake visit do not state a claim for violation of his procedural due process rights. Prisoners do not have a constitutionally protected interest in attending the funeral of a relative. *Jackson v. Portuondo,* No. 9:01-CV-0379 (GLS/DEP), 2007 WL 607342, at * 12 (N.D.N.Y. Feb.20, 2007); *Verrone v. Jacobson,* No. 95 CIV. 10495(LAP), 1999 WL 163197, at *5 (S.D.N.Y. Mar.23, 1999); *Green v. Coughlin,* No. 94 Civ. 3356(JFK), 1995 WL 498808, at *1 (S.D.N.Y. Aug.22, 1995); *Colon v. Sullivan,* 681 F.Supp. 222, 223 (S.D.N.Y.1988). Nor has such a right been created in New York by statute or regulation. The relevant New York statute states:

> [T]he commissioner of correctional services *may* permit any inmate confined by the department except one awaiting the sentence of death to attend the funeral of his or her father, mother, guardian or former guardian, child, brother, sister, husband, wife,

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 131 of 152
Smith v. Fischer, Not Reported in F.Supp.2d (2009)

2009 WL 632890

grandparent, grandchild, ancestral uncle or ancestral aunt within the state, or to visit such individual during his or her illness if death be imminent ... but the exercise of such power shall be subject to such rules and regulations as the commissioner of correctional services shall prescribe, respecting the granting of such permission, duration of absence from the institution, custody, transportation and care of the inmate, and guarding against escape.

N.Y. Correct. Law § 113 (McKinney 2003) (emphasis added). The use of the word "may" indicates that the granting of wake visits is entirely discretionary. See *Jackson,* 2007 WL 607342, at *11. Therefore, Plaintiff has not alleged facts plausibly suggesting that the denial of the wake visit violated his procedural due process rights.

Because Plaintiff has not alleged any facts plausibly suggesting that he was deprived of a liberty interest, the complaint fails to state claim for a violation of Plaintiff's procedural due process rights. I therefore recommend that this cause of action be dismissed with leave to amend.

**B. Plaintiff Has Not Stated a Substantive Due Process Claim**

Although Plaintiff alleges that Defendants violated his right to due process, he has not specifically invoked substantive due process. However, given the special solicitude due to *pro se* civil rights plaintiffs, I have deemed the complaint to include a substantive due process claim and will address it *sua sponte* under 28 U.S.C. § 1915(e)(2). As mentioned above, Defendants have not addressed any possible substantive due process claim.

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations omitted). Very few conditions of prison life are "shocking" enough to violate a prisoner's right to substantive due process. In *Sandin,* the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic

drugs. *Sandin,* 515 U.S. at 479 n. 4, 484. Courts have also noted that a prison official's refusal to obey a state court order to release a prisoner from disciplinary confinement may violate the prisoner's right to substantive due process. *Johnson v. Coughlin,* No. 90 Civ. 1731, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997); *Arce v. Miles,* No. 85 Civ. 5810, 1991 WL 123952, at *9 (S.D.N.Y. June 28, 1991).

**\*10** Plaintiff's complaint does not allege facts plausibly suggesting that Defendants' actions were arbitrary, conscience-shocking or oppressive in the constitutional sense. As discussed above, the complaint does not indicate that Plaintiff was held in unusual SHU conditions. Moreover, Plaintiff does not allege that Defendants refused to obey a state court order to release him from disciplinary confinement. Rather, he alleges that Defendants failed to immediately release him after DOCS itself administratively reversed his disciplinary conviction. (Dkt. No. 15 at ¶¶ 6 (3), 7.) Therefore, the complaint fails to state a claim for violation of Plaintiff's right to substantive due process and I recommend that the claim be dismissed with leave to amend.

**C. Plaintiff Has Not Stated an Equal Protection Claim**

Plaintiff alleges that Defendants denied him equal protection by confining him to the SHU. (Dkt. No. 15 at ¶ 7.) The Equal Protection Clause requires the government to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1989). To state a claim for a violation of the Equal Protection Clause, Plaintiff must allege facts plausibly suggesting that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Travis v. N.Y. State Div. of Parole,* 96-CV-0759, 1998 WL 34002605, at *4 (N.D.N.Y. Aug.26, 1998) (Sharpe, M.J.), *adopted,* 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.).

Prisoners do not comprise a suspect or quasi-suspect class for Equal Protection purposes. *See Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997) ("[N]either prisoners nor indigents are [members of a] suspect class ....") [citations omitted]; *Holley v. Carey,* 04-CV-2708, 2007 WL 2533926, at *7 (E.D.Cal. Aug.31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") (citations omitted) *rejected on other grounds* 2008 WL 2853924; *Coleman v. Martin,* 363

F.Supp.2d 894, 902 (E.D.Mich.2005) ("Prisoners are not members of a protected class ....") (citation omitted).[29]

[29] I note that, in addition, sex offenders, the mentally ill, the mentally handicapped, and the indigent do not comprise a suspect class for Equal Protection purposes. *See Travis v. N.Y. State Div. of Parole,* 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *12-13, 1998 WL 34002605 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.) ("Sex offenders do not comprise a suspect or quasi-suspect class for Equal Protection purposes.") [citations omitted], *adopted,* 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.); *Selah v. Goord,* 04-CV-3273, 2006 U.S. Dist. LEXIS 51051, at *21 (S.D.N.Y. July 24, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened [or strict] equal protection scrutiny.") [citations omitted]; *Holley v. Carey,* 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23, 2007 WL 2533926 (E.D.Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997) ("[N]either prisoners nor indigents are [members of a] suspect class ....") [citations omitted].

In the alternative to alleging membership in a suspect class, a plaintiff may state a claim for an equal protection violation under a "class of one" theory. *Assoko v. City of New York,* 539 F.Supp.2d 728 (S.D.N.Y.2008). In order to state such a claim, a plaintiff must allege (1) that he was intentionally treated differently from other similarly situated individuals; and (2) that the disparate treatment was either (a) "irrational and wholly arbitrary" or (b) motivated by animus[30]. *Id.* Plaintiff has not alleged that he was treated differently from other similarly situated individuals. Therefore, Plaintiff has not stated a cause of action for violation of his rights under the Equal Protection Clause and I recommend that the claim be dismissed with leave to amend.

[30] The standard for proving a "class of one" case becomes much more stringent after a case proceeds beyond the pleading stage. After the pleading stage, a plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (that) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Nielson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005) *overruled to extent that it allows a class of one claim by a public*

employee *Appel v. Spiridon,* 531 F.3d 138 (2d Cir.2008). *See, e.g., Cohn v. New Paltz Central School District,* 171 F. App'x 877 (2d Cir.2006).

**D. Plaintiff Has Not Stated an Eighth Amendment Claim**

**\*11** Plaintiff claims that his SHU confinement and the denial of the wake visit violated his Eighth Amendment rights. (Dkt. No. 15 at ¶ 7.)

In order for Plaintiff to state a claim under the Eighth Amendment, he must show: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious;* and (2) that the defendants acted with *deliberate indifference* to his health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. In considering the types of conditions that constitute a substantial risk of harm, the court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but also any indications that unwilling exposure to that risk violates contemporary standards of decency, in that society does not choose to tolerate this risk in its prisons. *Helling v. McKinney,* 509 U.S. 25, 36, 113 S.Ct. 2475, 2482, 125 L.Ed.2d 22 (1993).

Not every governmental action related to the interest and well-being of a prison inmate, however, demands Eighth Amendment scrutiny. *Sanders v. Coughlin,* No. 87 Civ. 4535, 1987 WL 26872, at *2 (S.D.N.Y. Nov 23, 1987) (citing, *inter alia, Whitley,* 475 U.S. at 319). "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting, *inter alia, Whitley;* internal quotes omitted). Conduct not intended to be punishment must consist of "more than ordinary lack of due care for the prisoner's interests or safety" to be considered cruel and unusual punishment. *Id.* Mere negligence in the treatment of a prisoner, without more, is not actionable under the Eighth Amendment. See *Farmer,* 511 U.S. at 837-38.

The complaint's allegations regarding Plaintiff's SHU confinement do not state an Eighth Amendment claim. Although the service of a disciplinary sentence under ordinary conditions prevailing in the SHU "may implicate

other constitutional rights, [it] does not rise to a level of constitutional significance under the Eighth Amendment and ... fails to support a claim of cruel and unusual punishment under that provision." *Monroe v. Janes,* No. 9:06-CV-0859 FJS/DEP, 2008 WL 508905 at *7 (N.D.N.Y. Feb.21, 2008) (dismissing Eighth Amendment claim where prisoner alleged merely that he had served 76 days in the SHU) (*citing Warren v. Irvin,* 985 F.Supp. 350, 357 (W.D.N.Y.1997)). Here, Plaintiff does not allege that his confinement in the SHU was served in anything other than ordinary conditions. Thus, he has not alleged any cruel and unusual punishment that would provide the foundation for an Eighth Amendment claim.

 *12  The complaint's allegations regarding the denial of the wake visit fail to state an Eighth Amendment claim. Although Plaintiff cursorily states that the denial was "unfair" and "reprisal-based," he states no facts supporting those allegations. The Court of Claims opinion attached to the complaint refers to the denial as a "ministerial error." (Dkt. No. 15, Ex. D.) A "ministerial error" is not sufficiently cruel and unusual to be actionable under the Eighth Amendment. Therefore, the complaint does not allege facts plausibly suggesting that Defendants violated Plaintiff's Eighth Amendment rights and I recommend that the cause of action be dismissed with leave to amend.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 28) be ***GRANTED*** with leave to amend.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a) (2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [31]

[31]  *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 632890

---

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.                    13

2008 WL 268366
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Isidro ABASCAL, Plaintiff,
v.
Bryan HILTON, Psychologist, and
Mitchell Langbart, M.D., Defendants.

No. 9:04-CV-1401 (LEK/GHL).
|
Jan. 30, 2008.

**Attorneys and Law Firms**

Isidro Abascal, New York, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Richard Lombardo, Esq., Assistant Attorney General, of Counsel, Albany, NY, Counsel for Defendant Hilton.

## *DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on December 28, 2007, by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 41). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff Isidro Abascal, which were filed on January 7, 2008. Objections (Dkt. No. 42).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 41) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED** that Defendant Hilton's Motion to dismiss (Dkt. No. 37) is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's Motion to dismiss (Dkt. No. 37) are **DISMISSED** pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B) (ii), 28 U.S.C. § 1915A(b), and/or Fed.R.Civ.P. 12(h)(3), for the reasons stated above; and it is further

**ORDERED,** that Plaintiff's claims against Defendant Langbart are **DISMISSED** with prejudice for failure to serve, for the reasons stated above; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

## *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This action has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Isidro Abascal ("Plaintiff"), while an inmate at Attica Correctional Facility, commenced this *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, against, *inter alia,* two medical care providers employed (at the time) by the State of New York–Bryan Hilton and Mitchell Langbart. Generally, Plaintiff's Third Amended Complaint alleges, in pertinent part, that, between December 27, 2001, and October 29, 2002, while he was incarcerated at Auburn Correctional Facility, Defendants Hilton and Langbart violated his rights under the First, Eighth and Fourteenth Amendments by wrongfully treating or classifying him as mentally ill and wrongfully transferring him to the Central New York Psychiatric Center as a form of punishment and/or retaliation for writing to public officials about certain "symptoms and body scars" that Plaintiff had allegedly experienced or sustained while in the custody of DOCS. (*See generally* Dkt. No. 24 [Plf.'s Third Am. Compl.].)

**\*2** Currently pending before the Court is Defendant Hilton's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 37.) For the reasons that follow, I recommend that Defendant Hilton's motion be granted. I also recommend that those of Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's motion to dismiss be *sua sponte* dismissed pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/or Rule 12(h)(3) of the Federal Rules of Civil Procedure. Finally, I recommend that Plaintiff's claims against Defendant Langbart be *sua sponte* dismissed with prejudice for failure to serve, pursuant to Rules 4(m) and 16(f) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. Relevant Procedural History

Throughout the course of this action, Plaintiff has, in his several pleadings, asserted claims against a number of individuals. All of those claims have been dismissed by Judge Kahn under Rules 8, 10 and/or 12 of the Federal Rules of Civil Procedure, except Plaintiff's claims against Defendants Hilton and Langbart.

Specifically, on January 5, 2005, Judge Kahn dismissed Plaintiff's claims, asserted in his original Complaint, against Defendants Jarkos, Tatum, Graham, Filion, Goodman, and Lape. (Dkt. No. 5, at 9.) On March 1, 2005, Judge Kahn struck Plaintiff's Amended Complaint from the docket, under Rules 8, 10 and 12 of the Federal Rules of Civil Procedure. (Dkt. No. 10.) On June 15, 2006, Judge Kahn dismissed Plaintiff's claims, asserted in his Second Amended Complaint, against Defendants Muse, Smith, Pena, and "Unknown HTE Operators." (Dkt. No. 23, at 8.) On November 6, 2006, Judge Kahn dismissed Plaintiff's claims, asserted in his Third Amended Complaint, against Defendants Burge, Stone, Goord and Conway. (Dkt. No. 25, at 3.)

Remaining in the case, following Judge Kahn's Order of November 6, 2006, were Plaintiff's claims against Defendants Hilton and Langbart. (*Compare* Dkt. No. 25 [Order of 11/6/06] *with* Dkt. No. 24 [Plf.'s Third Am. Compl.].)

### B. Plaintiff's Failure to Serve Defendant Langbart

Prior to Judge Kahn's Order of November 6, 2006, regarding Plaintiff's Third Amended Complaint, none of Plaintiff's prior pleadings had been served on Defendants Hilton or Langbart. (*See generally* Docket.) On November 6, 2006, Judge Kahn ordered, *inter alia*, that (1) "the Clerk shall issue summonses

and forward them, along with copies of the [Third] Amended Complaint, to the United States Marshall for service on the [two] remaining Defendants," and (2) "Plaintiff shall ... comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action." (Dkt. No. 25, at 3-4.) On January 27, 2007, the summonses for Defendants Hilton and Langbart were returned unexecuted because Plaintiff had, on the USM-285 Forms, listed their addresses as Auburn C.F., and both had left Auburn C.F. several years before. (Dkt. No. 27.)

**\*3** On February 5, 2007, the Clerk's Office for this Court sent a letter to the Deputy Counsel for the New York State DOCS requesting his assistance in determining whether DOCS has a current address on file for Defendants Hilton and Langbart (or whether, perhaps, Defendants Hilton and Langbart would designate an agent for service of process). (Dkt. No. 28.) On March 21, 2007, the Deputy Counsel responded with Defendant Hilton's current address but stated that Defendant Langbart was neither currently employed by DOCS nor was he previously employed by DOCS (but by the Central New York Psychiatric Center). (Dkt. No. 29.)

On March 22, 2007, the Clerk's Office reissued summonses for Defendants Hilton and Lanbart. (Dkt. No. 30.) On March 26, 2007, an acknowledgment of service was filed as to Defendant Hilton. (Dkt .33.) However, on April 26, 2007, the summons for Defendant Langbart was returned unexecuted because Plaintiff had, on the USM-285 Form, listed his address as "750 E. Adams St., Syr. N.Y. 13210," and Langbart was "no longer [t]here." (Dkt. No. 34.)

On June 28, 2007, in his motion to dismiss Plaintiff's Third Amended Complaint, Defendant Hilton stated, *inter alia,* that "[o]n April 27, 2007, the summons was returned unexecuted as to defendant Langbart." (Dkt. No. 37, Part 2, at 1, n. 1.) However, the docket contains no record of Plaintiff having completed another USM-285 Form as to Defendant Langbart. Consequently, it appears he was never served with a copy of Plaintiff's Third Amended Complaint.

Because Plaintiff has not offered "good cause" for his failure to enable the Marshals Service to effect service on Defendant Langbart, Plaintiff has violated Rule 4(m) of the Federal Rules of Civil Procedure. Alternatively, Plaintiff has violated Rule 16(f) of the Federal Rules of Civil Procedure due to the fact that he violated Judge Kahn's Order of November 6, 2006 (directing him to comply with any requests by the Clerk's Office for any documents that are necessary to maintain

this action," *see* Dkt. No. 25, at 4) by failing to complete new USM-285 Forms listing Defendant Langbart's current address.

As a result, the Court should dismiss Plaintiff's claims against Defendant Langbart. I note that the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte. See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just....").

Remaining in the case, then, are only Plaintiff's claims against Defendant Hilton.

## C. Summary of Plaintiff's Claims Against Defendant Hilton

In federal court, all pleadings must be liberally construed. *See* Fed.R.Civ.P. 8(e). Generally, pleadings filed by *pro se* civil rights litigants must be construed with an *extra* degree of liberality or leniency. This is because, generally, *pro se* litigants are unfamiliar with legal terminology and the litigation process, and because the civil rights claims they assert are of a very serious nature. However, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or extra leniency that is normally afforded *pro se* litigants.[1] Generally, the rationale for withdrawing of this extra leniency (at least in the Second Circuit) is that the *pro se* litigant's extreme litigiousness demonstrates his *experience,* the lack of which is the reason for extending extraordinary leniency to a *pro se* litigant in the first place.[2]

[1]  *Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *3 & n. 17 (N.D.N.Y. Sept.26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

[2]  *Koehl,* 2007 WL 2846905, at *3 & n. 18 [citations omitted].

**\*4**  Here, Plaintiff is certainly no stranger to the court system, having filed some 13 federal or state court actions or appeals (other than the current action)[3] I note that, by the time Plaintiff filed his Third Amended Complaint in this action on July 14, 2006, Plaintiff had filed some 12 federal

or state court actions or appeals.[4] Ordinarily, I would find that the Court should withdraw from Plaintiff, or at least diminish, the extraordinary leniency normally afforded to *pro se* litigants. However, because Plaintiff, may well have been laboring under a mental illness at the time he drafted his Third Amended Complaint (for the reasons discussed below in this Report-Recommendation), I will continue to afford him special solicitude.[5]

[3]  **Federal Court Actions:** *Abascal-Montalvo v. I.N.S.,* 901 F.Supp. 309 (D.Kan.1995) (habeas corpus proceeding, filed by Plaintiff *pro se* ); *Abascal v. Thornburgh,* 90-CV-1399, Order of Dismissal (W.D. Okla. filed March 13, 1991) (habeas corpus proceeding, filed by Plaintiff *pro se* ).

**Federal Court Appeals:** *Abascal v. Thornburgh,* No. 91-6136, 1993 WL 118840 (10th Cir. Apr.13, 1993) (appeal from decision by W.D. Okla., in habeas corpus proceeding, filed by Plaintiff *pro se* ).

**State Court Actions:** *Abascal v. Marshall,* Index No. 000520/2007 (N.Y. Sup.Ct., Bronx County) (Walker, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 1/11/07); *Abascal v. City of New York,* Index No. 401171/2006 (N.Y. Sup.Ct., New York County) (Feinman, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 5/31/06); *Abascal v. N.Y.S. Bd. of Parole,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed March 1, 2005) (Canfield, J.); *Abascal v. Maczek,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed Aug. 6, 2004) (Canfield, J.); *Abascal v. Roach,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed Feb. 14, 2004) (Teresi, J.) (dismissing Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Levy,* Index No. 402959/2003 (N.Y. Sup.Ct., New York County) (Wetzel, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 9/12/03).

**State Court Appeals:** *Abascal v. Maczek,* 5 N.Y.3d 713, 806 N.Y.S.2d 164, 840 N.E.2d 133 (N.Y.2005) (denying motion for poor person relief during appeal from decision by Third Department in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. N.Y.S. Bd. of Parole,* 23 A.D.3d 740, 802 N.Y.S.2d 803 (N.Y.App.Div., 3d Dept., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Roach,* 802 N.Y.S. 569 (N.Y.App. Div., 3d Dept ., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Maczek,* 19 A.D.3d 913, 796 N.Y.S.2d 757 (N.Y.App.Div., 3d Dept., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ).

2008 WL 268366

4      (*Id.*)

5      I note that Plaintiff appears to have made a material misrepresentation to the Court in his Third Amended Complaint. Specifically, in his Third Amended Complaint (which was verified), Plaintiff swore that, as of July 8, 2006 (the date of his Third Amended Complaint), the only "lawsuit[ ] [that Plaintiff had ever filed] in any state [or] federal court relating to [his] imprisonment" was the action of *Abascal v. New York,* Index No. 107872 (N.Y. Ct. of Cl.) (Minarik, J.) (action filed on 6/12/03, and judgment entered for Plaintiff on 11/22/04). (Dkt. No. 24, ¶ 6 [Plf.'s Third Am. Compl.].) While I have not found any record of this action in the New York State Unified Court System's electronic docketing system (and I therefore have not taken it into account in assessing Plaintiff's litigation experience), I have found record of at least *seven* other actions regarding Plaintiff's imprisonment which had been filed by Plaintiff before July 8, 2006. (*See, supra,* note 3 of this Report-Recommendation.) Generally, such information is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude. While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff chose to provide the information and swore to the truthfulness of it. Ordinarily, I would find such a material misrepresentation to be sanctionable. However, because Plaintiff may well have been laboring under a mental illness at the time he drafted his Third Amended Complaint, I will not recommend that the Court sanction him for his material misrepresentation.

Construed with an *extra* degree of liberality, Plaintiff's Third Amended Complaint alleges as follows.

1. On December 27, 2001, Plaintiff was transferred from the Central New York Psychiatric Center ("CNYPC") to Auburn Correctional Facility ("Auburn C.F."), where he was interviewed by Defendant Hilton. (*Id.* at ¶ 10.) During the interview, Defendant Hilton asked Plaintiff if he wanted to live in the Intermediate Care Program ("ICP"). (*Id.*) Plaintiff responded that he neither wanted to live in ICP nor take psychotropic medication, but that he wanted to live in the prison's general population. (*Id.*)

2. At some point between December 27, 2001, and April 25, 2002, Plaintiff sent a letter to then-Governor George Pataki concerning "symptoms and body scars" that Plaintiff had experienced or sustained while in the custody of DOCS. (*Id.* at ¶ 12.) While Plaintiff does not attach a copy of this letter to his Third Amended Complaint, he does describe the substance of the letter in some detail. (*Id.* at ¶ 12.a.-12.d.) Among the symptoms described in the letter were the following: (1) the sensation that Plaintiff's "mind was being read" and that he had been subjected to the "broadcasting of [his] thoughts [by someone else]"; (2) the sensation that Plaintiff had also been subjected to "sleep deprivation," "changes to [his] hearing," "waking visions ... synced with body motions," "wild flailing of arms and legs, sometimes followed by rigor mortis," "very high body heat," "sudden, violent itching" in "hard-to-reach areas," "electrical shock[s]," "cigarette burn type scars," and "penis shriveling"; and (4) the fact that he had been "sexually provoked by female staff for many years while in the custody of the DOCS." (*Id.*)

3. Apparently, Plaintiff alleges that these symptoms and scars were caused by the "pscyho-electronic weapons" and "behavior modification experimentation" (including "personality breaking techniques") to which he has been involuntarily subjected by DOCS. (*Id.* at ¶¶ 16, 40, 41 & Ex. 8.)

4. On April 25, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had sent to Governor Pataki. (*Id.* at ¶ 12.)

 **\*5** 5. At some point before June 17, 2002, Plaintiff sent a letter to DOCS Deputy Commissioner of Corrections Lucien LeClaire, concerning the above-described "symptoms and body scars." (*Id.* at ¶ 13 .)

6. On June 17, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had sent to Deputy Commissioner LeClaire. (*Id.*) During the meeting, Defendant Hilton asked Plaintiff if the symptoms he alleged were becoming worse, and Plaintiff responded that they were. (*Id.*)

7. At some point before July 18, 2002, Plaintiff sent a letter to the DOCS Inspector General concerning the above-described "symptoms and body scars." (*Id.* at ¶ 14.)

8. On July 18, 2002, a correctional sergeant informed Plaintiff that he could not leave his cell until he had been interviewed by a Mental Health Unit psychologist because of the letter he had written to the DOCS Inspector General, concerning the above-described "symptoms and body scars." (*Id.*)

9. On July 19, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had written to the DOCS Inspector General. (*Id.* at ¶ 15.) During the meeting, Plaintiff told Defendant Hilton that he just wanted to be left alone so that he could pursue his college education. (*Id.*) In addition, Plaintiff showed Defendant Hilton his "irritated face," which bore "multiple little bumps, and patches of redness." (*Id.*)

10. At some point before October 24, 2002, Plaintiff sent a letter to a New York State senator concerning the above-described "symptoms and body scars." (*Id.* at ¶ 16.)

11. On October 24, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had written to the New York State senator. (*Id.*) During the meeting, Defendant Hilton (and Dr. Mitchell Langbart, who was also present) tried to persuade, or "coerce," Plaintiff to stop writing such letters. (*Id.*) Specifically, Dr. Langbart asked Plaintiff, "Do you want to be transferred to CNYPC and miss your college semester, or stay in the facility and be able to finish it?" (*Id.*) [6] Plaintiff responded that he would "do what he had to do," and that Langbart and Hilton would do "what they wanted to do." (*Id.*) Defendant Hilton responded that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (*Id.*) Subsequently, Plaintiff was placed in a "strip cell" with just his underwear and a mattress. (*Id.*)

[6]    Apparently, during the time in question, Plaintiff had already received his college degree and was pursuing an advanced degree at Cornell University. (Dkt. No. 24, Ex. 5 [Plf.'s Third Am. Compl., attaching Plaintiff's letter of 31/1/03 to James L. Stone, Commissioner of New York State Office of Mental Health]; *see also* Dkt. No. 24, Ex. 8 at 3 [attaching medical record summarizing Plaintiff's education].)

12. On October 29, 2002, Plaintiff was transferred back to CNYPC. (*Id.* at ¶ 18.) While at CNYPC, Plaintiff was told by Dr. Qamar Abassi that he had been sent to CNYPC because

he had not been eating. (*Id.*) Plaintiff responded that that was false. (*Id.*)

13. On December 6, 2002, Plaintiff was again transferred from CNYPC to Auburn C.F. (*Id.* at ¶ 28.) Plaintiff alleges that, during the two months that followed the transfer, he wrote a letter to a politician concerning the above-described "symptoms and body scars," and that he was "interviewed" by "an individual from [the Mental Health Unit" because of the letter (and apparently urged not to write such letters). (*Id.* at ¶ 29.) He also alleges that, during the six months that followed the interview, he was interviewed by two other psychologists. (*Id.* at ¶¶ 37, 39.) However, he does not allege that any of these three interviews were conducted by, or even were caused by, Defendant Hilton. (*See generally id.* at ¶¶ 28-45 [not mentioning Defendant Hilton]; *see also id.* at Exs. 1-3, 5 [attaching grievances and complaint-letters not mentioning Defendant Hilton].)

### D. Summary of Arguments on Defendant Hilton's Motion to Dismiss

**\*6** In his memorandum of law, Defendant Hilton argues that Plaintiff's claims against him, asserted in Plaintiff's Third Amended Complaint, should be dismissed for failure to state a claim for two alternative reasons: (1) Plaintiff fails to allege facts plausibly suggesting that Defendant Hilton was personally involved in any of the constitutional violations alleged by Plaintiff; and (2) even assuming as true all of the factual allegations of Plaintiff's Third Amended Complaint, Defendant Hilton is protected from liability by the doctrine of qualified immunity, as a matter of law. (Dkt. No. 37, Part 2, at 4-7.)

In his memorandum of law, Plaintiff responds to both of Defendant Hilton's arguments. With regard to Defendant Hilton's personal-involvement argument, Plaintiff argues that (1) Paragraphs 10, 15 and 18 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "arbitrarily classified plaintiff as mentally ill," (2) Paragraphs 12, 13, 14 and 16 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "persecuted him for writing to public officials," (3) Paragraph 16 of his Third Amended Complaint alleges facts plausibly suggesting that Defendant Hilton "threatened" and "coerced" him not to write to public officials, (4) Paragraphs 14 and 16 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton, wrongfully "secluded" him in a "strip cell," and (5) Paragraph 18 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton transferred

2008 WL 268366

Plaintiff to the Central New York Psychiatric Center for writing to a State Senator. (Dkt. No. 40, Part 1, at 3-6.)

With regard to Defendant Hilton's qualified immunity argument, Plaintiff essentially argues that Defendant Hilton fails to appreciate that it was clearly established that the First Amendment forbade Defendant Hilton from inhibiting Plaintiff from, or retaliating against him for, exercising his right to send letters of complaint to public officials about his prison conditions. (*Id.* at 6-9.)

## II. GENERAL LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); [7] or (2) a challenge to the legal cognizability of the claim. [8]

[7] *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

[8] *See* *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should

hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice; *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [9] The purpose of this rule is to "facilitate a proper decision on the merits." [10] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [11]

[9] *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley,* 355 U.S. at 47).

[10] *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

[11] *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S.

Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

**\*7** The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [12] However, it is well established that even this liberal notice pleading standard "has its limits." [13] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [14]

[12]   *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[13]   2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

[14]   *See, e.g., Bell Atlantic Corp. v. Twombly,* ---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1968-1969, 167 L.Ed.2d 929 (2007). [15] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-1974. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.; see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme Court [in *Bell Atlantic Corp. v. Twombly]* is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*") [emphasis in original],

[15]   The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

It must be remembered that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [16] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is

submitted *pro se.*"[17] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[18] Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[19]

16  *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

17  *Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

18  *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

19  *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

**\*8** Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[20] Moreover, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[21] This is because, even when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[22]

20  *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at \*2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at \*5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at \*2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at \*4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at \*5,

n. 18 (N.D.N.Y. Sept. 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at \*4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

21  *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

22  *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at \*6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at \*2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at \*3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at \*3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at \*5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at \*2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at \*4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

## III. ANALYSIS
### A. Whether Plaintiff Has Failed to State a First Amendment Claim

Liberally construed, Plaintiff's Third Amended Complaint asserts two related but different types of First Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton retaliated against Plaintiff for engaging in speech or activity that was protected by the First Amendment; and (2) a claim that Defendant Hilton impermissibly interfered with Plaintiff's right to petition the government for the redress of grievances. (Dkt. No. 24, ¶ 47 & Prayer for Relief, ¶ A.1.)

### 1. Retaliation for Engaging in Protected Activity

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[23] Central to such claims is

the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[24] Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[25] As the Second Circuit has noted,

[23]    See *Gill v. Pidlypchak,* 389 F.3d 379, 380-81 (2d Cir.2004).

[24]    See *Gill,* 389 F.3d at 381-383.

[25]    See *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.[26]

[26]    *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) [citations omitted], *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a First Amendment claim of retaliation under 42 U.S .C. § 1983, a plaintiff must prove by a preponderance of the evidence the following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff-namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[27] Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[28]

[27]    *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ).

[28]    *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) [citations omitted].

**\*9** Here, Plaintiff appears to argue that the "protected" speech or conduct in which he had engaged when he was punished by Defendant Hilton consisted of sending letters to four New York State officials (Governor George Pataki, DOCS Deputy Commissioner Lucien LeClaire, the DOCS Inspector General, and a New York State senator) concerning "symptoms and body scars" that he had allegedly experienced or sustained while in the custody of DOCS. (Dkt. No. 24, ¶¶ 12-14, 16.) Although Plaintiff does not specifically allege that his letters contained complaints of mistreatment and requests for intervention, I liberally construe them as doing so. Furthermore, for the sake of argument, I will assume that such letters constituted speech or conduct that was "protected" by the First Amendment.

The first problem with Plaintiff's retaliation claim is that, by and large, it fails to allege any facts plausibly suggesting that Defendant Hilton took any "adverse action" against Plaintiff. For example, Plaintiff alleges that, following his letters to Governor Pataki, Deputy Commissioner LeClaire, and the Inspector General, Defendant Hilton only "interviewed" Plaintiff about the subject matter of the letters. (Dkt. No. 24, ¶¶ 12, 13, 15, 16.) It is difficult for me to imagine circumstances under which an inquiry by a prison psychologist about a prisoner's complaints that his "mind was being read," and he was being subjected to "waking visions," "changes to [his] hearing," and the involuntary "flailing of [his] arms and legs" could be construed as anything other than sound medical treatment. (I certainly cannot conceive of it as being "adverse action.") I note that, in the sole detailed account of these "interviews" that Plaintiff provides in his Third Amended Complaint, he acknowledges that Defendant Hilton had asked him if the symptoms alleged in his letters were getting worse. (*Id.* at ¶ 13.)

The only "adverse action" that Plaintiff has even remotely alleges is Plaintiff's placement in a "strip cell with just his underwear and mattress" on October 24, 2002, after Defendant Langbart tried to "coerce" Plaintiff to stop writing letters like his recent letter to a New York State senator concerning his alleged "symptoms and body scars," and Plaintiff had responded that he would "do what he had to do." (*Id.* at ¶ 16.) For the sake of argument, I will assume this is "adverse action." Even it were an "adverse action," Plaintiff's retaliation claim would fail.

Case 1:19-cv-00577-GTS-TWD    Document 13    Filed 01/21/20    Page 143 of 152
Abascal v. Hilton, Not Reported in F.Supp.2d (2008)
2008 WL 268366

This is because the second problem with Plaintiff's retaliation claim is that he alleges absolutely no facts plausibly suggesting that this particular instance of "adverse action" was *causally connected* to the "protected conduct" in which Plaintiff had engaged. Plaintiff's allegation that, immediately before he was placed in a "strip cell," Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge" is too cryptic and innocuous to plausibly suggest a causal link between the "protected conduct" and the "adverse action." (*Id.*) Moreover, any shred of a conceivable causal connection between Defendant Hilton's statement and Plaintiff's placement in a "strip cell" is severed when one considers the *nature* of the symptoms of which Plaintiff had complained, which, included a belief that his "mind was being read," that his hearing was being manipulated, that he saw "waking visions," that he felt "violent itching" which could not be stopped, that he lacked control of his arms and legs, that he was being scarred and burned by "electrical shock[s]," and that he was being "provoked by female staff." (*Id.* at ¶ 12.) By any rational assessment, it was these symptoms, and not Defendant Hilton, that *caused* Plaintiff to be placed in a strip cell.

**\*10** Indeed, Plaintiff does not even allege sufficient facts to plausibly suggest that it was Defendant Hilton, and not Defendant Langbart, who took the "adverse action" of placing Plaintiff in the "strip cell." (*Id.* at ¶ 16.) I note that it was Defendant Langbart, not Defendant Hilton, whom Plaintiff alleges wrongfully transferred him to the CNYPC less than a week after this October 24, 2002, placement in a "strip cell." (Dkt. No. 24, ¶ 18 & Exs. 1-2.) As a result, I am persuaded that Defendant Hilton's lack-of-personal-involvement argument serves as an alternative ground for dismissing Plaintiff's retaliation claim against Defendant Hilton. [29]

[29]    I note that none of the paragraphs (of Plaintiff's Third Amended Complaint) cited in Plaintiff's opposition memorandum of law actually alleges facts plausibly suggesting Defendant Hilton's personal involvement in any constitutional violation. (Dkt. No. 40, Part 1, at 4.) For example, Paragraphs 10, 15 and 18 of Plaintiff's Third Amended Complaint do not allege facts plausibly suggesting either that it was Defendant Hilton who "classified" Plaintiff as mentally ill or that such classification was "arbitrary," as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶¶ 10, 15, 18.) Nor do Paragraphs 12, 13, 14 and 16 of Plaintiff's Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "persecuted" Plaintiff for writing

to public officials, as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶¶ 12-14, 16.) Nor does Paragraph 18 of Plaintiff's Third Amended Complaint allege facts plausibly suggesting that it was Defendant Hilton who caused Plaintiff to be transferred to CNYPC, as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶ 18.)

For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's First Amendment retaliation claim against Defendant Hilton.

**2. Interference with Right to Petition Government**

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances." [30] This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." [31] "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.' " [32] As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. [33] It is worth noting that "[t]his actual injury requirement 'is not satisfied by just any type of frustrated legal claim,' because the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." [34] " 'Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.' " [35]

[30]    *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

[31]    *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *modified on other grounds, Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also Bourdon v. Loughren,* 386 F.2d 88, 92 (2d Cir.2004) [citations omitted].

2008 WL 268366

32    *Collins v. Goord,* 438 F.Supp.2d 399, 415 (S.D.N.Y.2006) (quoting *Lewis v. Casey,* 518 U.S. 343, 351 [1996] ).

33    *Lewis,* 518 U.S. at 353; *Renelique v. Duncan,* 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr.12, 2007) (Strom, J.); *Howard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994) (Hurd, M.J.).

34    *Collins,* 423 F.Supp.2d at 415-16 (quoting *Lewis,* 518 U.S. at 355).

35    *Id.*

Here, Plaintiff has not alleged facts plausibly suggesting that Defendant Hilton acted *deliberately* and *maliciously* in interfering with Plaintiff's right to petition government officials for the redress of grievances. The closest that Plaintiff comes to doing so is when he alleges that, immediately before he was placed in a "strip cell" on October 24, 2002, Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (Dkt. No. 24, ¶ 16.) Again, this is too cryptic and innocuous a statement to plausibly suggest deliberate malice, especially when one considers Plaintiff's other allegations, which plausibly suggest that Defendant Hilton (who was a prison psychologist) rather promptly responded to Plaintiff's claims of experiencing delusional symptoms, at least one time with an inquiry as to whether the symptoms were getting worse. (*Id.* at ¶¶ 12, 13, 15, 16.)

*11    Even if Plaintiff had alleged such facts, he has not alleged facts plausibly suggesting that Plaintiff suffered any actual injury or that such actual injury was *caused* by Defendant Hilton (as opposed to being caused by someone else, such as Defendant Langbart). For example, as stated earlier, it was Defendant Langbart, not Defendant Hilton, whom Plaintiff alleges wrongfully transferred him to the CNYPC less than a week after this October 24, 2002, placement in a "strip cell." (*Id.* at ¶ 18 & Exs. 1-2.) As a result, I am persuaded that Defendant Hilton's lack-of-personal-involvement argument serves as an alternative ground for dismissing Plaintiff's interference claim against Defendant Hilton. [36]

36    As stated earlier, I note that none of the paragraphs (of Plaintiff's Third Amended Complaint) cited in Plaintiff's opposition memorandum of law actually allege facts plausibly suggesting Defendant Hilton's personal involvement in any constitutional violation. (*See, supra,* note 29 of this Report-Recommendation.)

For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's First Amendment interference claim against Defendant Hilton.

**B. Whether Plaintiff Has Failed to State an Eighth Amendment Claim**

Liberally construed, Plaintiff's Third Amended Complaint asserts two related but different types of Eighth Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton was deliberately indifferent to Plaintiff's serious medical needs (for example, by "arbitrarily classifying him as mentally ill"); and (2) a claim that Defendant Hilton subjected Plaintiff to "cruel and unusual" prison conditions by harassing him for writing to public officials, and by placing him, without justification, in a "strip cell with just his underwear and a mattress." (Dkt. No. 24, ¶¶ 16, 47 & Prayer for Relief, ¶ A.1.)

**1. Deliberate Indifference to a Serious Medical Need**

Generally, to prevail on such a claim, a plaintiff must show two things: (1) that the plaintiff had a sufficiently serious medical need; and (2) that the defendant was deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

Here, the only serious medical needs that Plaintiff plausibly alleges are (1) a mental illness involving delusions and/or (2) a collection of skin irritations coupled with possible exposure to cold temperatures (due to his placement in a "strip cell" with only his underwear and a mattress for five days). (Dkt. No. 24, ¶¶ 15, 16, 18, 47.) For the sake of argument, I will set aside the fact that Plaintiff appears to deny that he is, in fact, mentally ill. (*Id.* at ¶¶ 10, 47.) I will also assume that, taken together, these conditions constitute a *serious medical need* for purposes of the Eighth Amendment.

The problem is that Plaintiff has asserted no facts plausibly suggesting that Defendant Hilton acted with any deliberate indifference with regard to this (presumed) serious medical need. To the contrary, Plaintiff alleges facts plausibly suggesting that Defendant Hilton "interviewed" him five times regarding his mental condition, always promptly responding to Plaintiff's claims of experiencing delusional symptoms, and at least once specifically inquiring as to whether the symptoms were getting worse. (*Id.* at ¶¶ 10, 12, 13, 15, 16.) [37] Granted, Plaintiff also alleges that, immediately before he was placed in a "strip cell" on October 24, 2002, Defendant Hilton told him that "all the pain

and discomfort that plaintiff was suffering was maybe a revenge." (*Id.* at ¶ 16.) However, this statement-in addition to being cryptic in nature-is too innocuous to plausibly suggest that Defendant Hilton possessed the state of mind necessary to be *deliberately indifferent,* which is a state of mind akin to *criminal recklessness.* [38] Plaintiff is not alleging facts plausibly suggesting criminal recklessness, only facts plausibly suggesting negligence or malpractice. (*See, e.g., id.* at 47 [alleging that Defendant Hilton "arbitrarily classif[ied] plaintiff as mentally ill"].) A claim of negligence or malpractice by a prison medical care provider is not actionable under 42 U.S.C. § 1983. [39]

[37]   I note that Plaintiff also alleges facts plausibly suggesting that, during the relevant time period (December 27, 2001, to October 29, 2002), he received medical care from other employees of Auburn C .F. (*See, e.g.,* Dkt. No. 24, ¶ 11, 16.)

[38]   *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

[39]   *Farmer,* 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].

**\*12**  For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's Eighth Amendment inadequate-medical-care claim against Defendant Hilton.

## 2. Inadequate Prison Conditions

Generally, to prevail on such a claim, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious;* and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005).

Here, the only serious conditions of confinement that Plaintiff plausibly alleges are (1) repeated "interviews" by Defendant Hilton (regarding Plaintiff's complaints of the symptoms described above in Part I.C. of this Report-Recommendation), which conceivably caused Plaintiff to experience anxiety or pressure, and/or (2) incarceration in a "strip cell" for five days (with only his underwear and a mattress) when Plaintiff was suffering from a skin irritation and presumably a mental illness. (Dkt. No. 24, ¶¶ 15, 16, 18, 47.) I have some difficulty concluding that these conditions of confinement, even taken together, are *sufficiently serious* for purposes of the Eighth Amendment. *See Lock v. Clark,* 90-CV-0327, 1992 U.S. Dist. LEXIS 21991, at *1, 11-12, 1992 WL 559660 (N.D.Ind. March 17, 1992) ("The deprivations alleged by Mr. Lock in this case [which consisted of being confined for seven days in a "strip cell" in a segregation unit] fail to satisfy the objective component of his Eighth Amendment conditions claim, and they do not rise to the level of a constitutional violation."); *Dunkley v. Tate,* 07-CV-0465, 2007 U.S. Dist. LEXIS 73166, at *2-4, 2007 WL 2900169 (W.D.Va. Oct. 1, 2007) (confinement in "strip cell" for three days did

not violate Eighth Amendment as a matter of law).[40] For example, Plaintiff does not allege that, while in the "strip cell" for five days, he was deprived of "the minimal civilized measure of life's necessities," *Farmer,* 511 U.S. at 834, such as medical care, food, water, warmth or a toilet.

[40]    *See also Lewis v. Angelone,* 00-CV-0161, 2001 U.S. Dist. LEXIS 25539, at *12 (E.D.Va. May 16, 2001) ("Lewis has failed to allege facts which suggest his [24-hour] confinement in the strip cell and his confinement in segregation were sufficiently severe and prolonged as to give rise to an Eighth Amendment claim.") [citation omitted]; *Winn v. Delaware Dept. of Corr.,* 02-CV-0034, 2003 U.S. Dist. LEXIS 18678, at *11, 2003 WL 21456628 (D.Del. Sept. 30, 2003) ("Plaintiff has not presented any facts proving that State Defendants' placing him on strip cell status involves the wanton and unnecessary infliction of pain [sufficient to establish an Eighth Amendment claim.").

Moreover, I note that, in this cruel-and-unusual *punishment* claim, Plaintiff has alleged facts plausibly suggesting that he was placed in a strip cell not as *punishment* but for non-punitive reasons such as (1) to protect his own safety,[41] (2) to protect other prisoners' safety,[42] (3) to protect prison employees' safety,[43] and/or (4) to await a transfer to CNYPC.[44]

[41]    (Dkt. No. 24, ¶¶ 7, 9, 12 [alleging that he was physically assaulted by other inmates on November 23, 2001, and December 24, 2001, and that, *inter alia,* he felt "violent itching" which could not be stopped, and he lacked control of his arms and legs].)

[42]    (*Id.* at ¶ 7 [alleging that, on November 23, 2001, Plaintiff got in a fight with another inmate].)

[43]    (*Id.* at ¶¶ 12, 40, 42 [alleging that the symptoms he experienced included a belief that his "mind was being read" by DOCS, that his hearing was being manipulated by DOCS, that he was being scarred and burned by "electrical shock[s]" administered by DOCS, and that he was being "sexually provoked by female staff."].)

[44]    (*Id.* at ¶¶ 16, 18 [alleging that, five days after Plaintiff was placed in a "strip cell," he was transferred to CNYPC].)

However, even if one were to assume that, taken together, the conditions of confinement alleged by Plaintiff are *sufficiently serious* for purposes of the Eighth Amendment, Plaintiff's inadequate-prison-condition claim would fail. This

is because, again, Plaintiff has asserted no facts plausibly suggesting that Defendant Hilton acted with any deliberate indifference to Plaintiff's health or safety. (*See, supra,* Part III.B.1. of this Report-Recommendation.) Indeed, the allegations of Plaintiff's Third Amended Complaint plausibly suggest that Defendant Hilton acted with due regard to Plaintiff's health or safety. (*Id.*) I note that the "symptoms" of which Plaintiff repeatedly complained to public officials included a belief that his "mind was being read," that he saw "waking visions," that he felt "violent itching" which could not be stopped, that he lacked control of his arms and legs, that he was being scarred and burned by "electrical shock[s]," and that he was being "provoked by female staff." (*Id.* at ¶ 12.) Simply stated, Plaintiff's allegations plausibly suggested that he was a danger to himself (and others) and in need of "interviews" conducted by Defendant Hilton, and placement in a "strip cell" for five days pending a transfer to the CNYPC, where he could receive further evaluation and appropriate treatment.

**\*13** For this reason, I recommend that the Court dismiss Plaintiff's Eighth Amendment prison-conditions claim against Defendant Hilton.

**C. Whether Plaintiff Has Failed to State a Fourteenth Amendment Claim**

Liberally construed, Plaintiff's Third Amended Complaint asserts two different Fourteenth Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton violated Plaintiff's substantive due process and/or procedural due process rights; and (2) a claim that Defendant deprived Plaintiff of equal protection under the laws. (Dkt. No. 24, ¶ 47 & Prayer for Relief, ¶ A.1.)

**1. Due Process**

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon,* 494 U.S. at 125 [internal quotations marks and citation omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... *without due process of law." Id.* at 125-126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is

that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id.*

#### a. Substantive Due Process

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91-CV-1196, *Memorandum-Decision and Order* (N.D.N.Y. Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

The first step in a substantive due process analysis is to identify the constitutional right at stake. Plaintiff does not indicate what right he is claiming. For the sake of argument, I will assume that Plaintiff possessed a protected liberty interest in remaining free from confinement in a strip cell and/or transfer to CNYPC unless DOCS has obtained reasonable grounds to believe that he was suffering from a mental illness involving delusions to such an extent that he poses a threat to himself or others in the correctional facility. [45]

[45]    I note that I do *not* liberally construe Plaintiff's Third Amended Complaint as alleging that he was forcibly injected with anti-psychotic medications (or that he possessed a protected liberally interest in being free from such forcible injections)-a constitutional claim that I understand he tried to assert in his original Complaint. (*See* Dkt. No. 5, at 5-6 [Order of Judge Kahn, referring to this attempted claim].) The closest Plaintiff comes to making this claim is when he alleges that, on December 27, 2001, he told Defendant Hilton that he did not want to "take any psychotrophic medication." (Dkt. No. 24, ¶ 10.) Notably missing is any allegation that he was subsequently forced (by Defendant Hilton or anyone) to take any such medication.

The next step in a substantive due process analysis is to consider whether the state action was arbitrary in the constitutional sense and therefore violative of substantive due process. Here, I find that Plaintiff has alleged no facts plausibly suggesting that the state action was arbitrary in the constitutional sense and therefore violative of substantive due process. Indeed, Plaintiff has alleged facts plausibly suggesting that, far from being arbitrary, the actions of

Defendant Hilton were reasonable and appropriate. In addition to the litany of delusional symptoms acknowledged by Plaintiff (described above), I note that, when "interviewed" about them, Plaintiff steadfastly persisted in his beliefs, [46] and refused treatment. [47]

[46]    (Dkt. No. 24, ¶¶ 13, 15, 16.)

[47]    (*Id.* at ¶¶ 10, 15 & Exs. 8-9.)

**\*14** As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Hilton.

#### b. Procedural Due Process

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient...." *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Here, I find that the Due Process Clause does not give Plaintiff a liberty interest in remaining free from confinement to a "strip cell," given the duration and conditions of that confinement, as alleged by Plaintiff (described above). *See Dunkley v. Tate,* 07-CV-0465, 2007 U.S. Dist. LEXIS 73166, at *2-4, 2007 WL 2900169 (W.D.Va. Oct. 1, 2007) ("In this case, while the conditions of Dunkley's confinement in the strip-cell [for three days] were more restrictive than those applied to inmates in the general population and possibly even segregation, they were not nearly so restrictive and atypical as those at issue in *Wilkinson [v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ]. Therefore, the court finds that Dunkley did not have a liberty interest in remaining out of the strip-cell and, thus, his due process claim fails."). [48]

[48]    *See also Winn v. Delaware Dept. of Corr.,* 02-CV-0034, 2003 U.S. Dist. LEXIS 18678, at *8, 14, 2003 WL 21456628 (D.Del. Sept. 30, 2003) ("Because plaintiff does not have a constitutionally protected liberty interest at issue, plaintiff's claims [arising from his placement in a 'strip cell' apparently several times for periods of 24 hours] will be dismissed.").

Even if I were to find that Plaintiff possessed a limited such liberty interest, I would find that Plaintiff was, according to his own allegations, given all the process to which he was due

under the circumstances. For example, I note that Plaintiff's placement in a "strip cell," and transfer to the CNYPC, was immediately proceeded by not only three "interviews" with a psychologist about claims of delusional symptoms but a fourth "interview" with both a psychologist *and* a psychiatrist. (Dkt. No. 24, ¶¶ 12, 13, 15, 16.) This last "interview," conducted by two doctors, is reminiscent of the examination conducted by two physicians, under the New York State law, prior to a patient's involuntary commitment to a psychiatric hospital. *See* N.Y. Correction Law § 402(1); N.Y. Mental Hygiene Law ¶ 9.27(a). Furthermore, here, Plaintiff was not even involuntarily *committed* to a psychiatric hospital, only temporarily *transferred* to one (where he previously had been committed) on an emergency basis (for "closer observation" and "diagnostic clarification" as stated in one medical record).[49]

[49]    (Dkt. No. 24, ¶¶ 8, 10, 18 & Ex. 9.)

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Hilton.

**2. Equal Protection**

To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Travis v. N.Y. State Div. of Parole,* 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *11, 1998 WL 34002605 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted,* 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.). Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. *Travis,* 1998 U.S. Dist. LEXIS 23417, at *11, 1998 WL 34002605. However, neither prisoners nor the mentally ill comprise a suspect or quasi-suspect class for Equal Protection purposes. *See Holley v. Carey,* 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23, 2007 WL 2533926 (E.D.Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Coleman v. Martin,* 04-CV-72534, 363 F.Supp.2d 894, 902 (E.D.Mich.2005). As a result, the alleged classification is subject to only "rational basis scrutiny." *Holley,* 2007 U.S. Dist. LEXIS 64699, at *23, 2007 WL 2533926; *Coleman,* 363 F.Supp.2d at 902. To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest." *Holley,* 2007 U.S.

Dist. LEXIS 64699, at *23, 2007 WL 2533926; *Coleman,* 363 F.Supp.2d at 902.

 *15  Here, Plaintiff has not even alleged facts plausibly suggesting there has been any *classification* at all in this case, i.e., that he was treated differently from anyone else. In any event, he has not alleged any facts plausibly suggesting that the "discrimination" he allegedly experienced was not rationally related to a legitimate state interest, namely, the preservation of safety and order in its prisons, and the diagnosis and treatment of mentally ill prisoners.

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Hilton.

**D. Defendant Hilton's Qualified Immunity Argument**

Because I have already concluded that adequate grounds exist upon which to base a recommendation of dismissal of Plaintiff's claims against Defendant Hilton, I need not, and do not, reach the merits of Defendant Hilton's alternative argument in favor of dismissal, namely, his qualified immunity argument.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendant Hilton's motion to dismiss (Dkt. No. 37) be ***GRANTED;*** and it is further

**RECOMMENDED** that those of Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's motion to dismiss (Dkt. No. 37) be ***DISMISSED*** pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/or Fed.R.Civ.P. 12(h)(3), for the reasons stated above; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Langbart be ***DISMISSED*** with prejudice for failure to serve, for the reasons stated above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

2008 WL 268366

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 268366

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 31399119
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Han Jie YANG, Plaintiff,
v.
NEW YORK CITY TRANSIT
AUTHORITY, Defendant.

Case No. 01–CV–3933 (FB).
|
Oct. 24, 2002.

**Synopsis**

Employee brought pro se action against employer, city transit authority, alleging that employer's grievance hearings violated certain procedural requirements of the Railway Labor Act (RLA), and his due process and equal protection claims. Employer moved to dismiss. The District Court, Block, J., held that city transit authority was not "carrier" within meaning of RLA.

Motion granted.

West Headnotes (1)

[1]  **Labor and Employment**
    👉 Carriers

City transit authority was not "carrier" within meaning of the Railway Labor Act (RLA), which expressly excluded any interurban electric railway, unless it was operating as part of general steam-railroad system of transportation, and thus city transit authority's employee grievance procedures were not required to conform to RLA requirements; transportation system operated by transit authority was solely within the city, entirely electric, and did not connect with any steam-railroad system. Railway Labor Act, § 1, 45 U.S.C.A. § 151.

15 Cases that cite this headnote

**Attorneys and Law Firms**

Han Jie Yang, Pro Se, Brooklyn, NY, for Plaintiff.

Richard Levy, Esq, Brooklyn, NY, for Defendant.

*MEMORANDUM AND ORDER*

BLOCK, District Judge.

**\*1** The Court construed *pro se* plaintiff Han Jie Yang's ("Yang") original complaint to allege that defendant New York City Transit Authority ("NYCTA") had violated the Railway Labor Act ("RLA"), 45 U.S.C. § 151, and Yang's equal protection and due process rights. The Court granted the NYCTA's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) with respect to Yang's equal protection and due process claims, but granted Yang leave amend his complaint as to those claims. *See Yang v. New York City Transit Auth.,* No. 01–CV–3933, 2002 WL 576079, at *4 (E.D.N.Y. April 16, 2002). The Court also ordered both parties to file, pursuant to Fed.R.Civ.P. 43(e), submissions with regard to the applicability of the RLA to the NYCTA. *Id.* at * 2. Yang filed an amended complaint amending his equal protection claim [1], and both parties have submitted declarations as to the applicability of the RLA to the NYCTA. The NYCTA now moves to dismiss Yang's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the motion is granted.

1  Yang does not pursue a due process claim in his amended complaint. In an affirmation in support of his amended complaint Yang states that he "never allege[d] [that] the Defendant violated [his] due process right[s].... [D]ue process ... is not a question ... [in] dispute in this action." Yang Affirmation at ¶ 5, June 27, 2002.

**DISCUSSION**

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). The Court may grant the motion only when "it appears beyond doubt ... that the plaintiff can prove no set of facts [in support of his claim] which would entitle him to relief." *Sec. Investor Prot. Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000).

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," and they are to be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir.1999).

### I. RLA Claim

Yang alleges that the NYCTA's grievance hearings violated certain procedural requirements of the RLA. In its previous decision, the Court concluded that Yang's original complaint failed to set out sufficient facts for the Court to determine whether the NYCTA is a carrier under the RLA. *See Yang,* 2002 WL 576079, at * 2.

The parties' supplemental submissions make clear that the NYCTA is not a "carrier" as defined by the RLA and thus is not subject to the RLA. The RLA specifically excludes from the definition of an RLA "carrier" "any street, interurban, or suburban electric railway, unless such railway is operating as part of a general steam-railroad system of transportation." 45 U.S.C. § 151. The Second Circuit has noted that the RLA "applies to every interstate carrier...." *Burke v. Morphy,* 109 F.2d 572, 575 (1940). The NYCTA's subway system, in which Yang works, is entirely electric, operates solely within New York City and does not have tracks that connect or interchange with any "steam-railroad system of transportation."

*See* Schoolman [2] Decl. at ¶¶ 3–4. Yang himself admits that the NYCTA "performs ... passenger transportation service and transfer in transit service in ... New York City only. It does not have any connection with ... Interstate Commerce...." Yang Affirmation, May 24, 2002.

[2]      Schoolman is Special Counsel in the Office of the General Counsel of the NYCTA.

**\*2** The RLA, like other federal legislation, distinguishes between carriers engaged in interstate commerce and purely local carriers such as the NYCTA. In *Felton v. Southeastern Pennsylvania Transp. Auth.,* 952 F.2d 59, 62 (3d Cir.1992), the Third Circuit noted that "urban rapid transit systems, often referred to as subways or street railways, are not common carriers by railroad for purposes of the [Federal Employers Liability Act]" because such urban rapid transit systems do not operate in interstate commerce. The court conducted "a review of [federal] legislation affecting commuter railroad transportation" and concluded that such legislation "reveal[ed] a consistent congressional intent to distinguish between intraurban rail transportation and interstate railroads." *Id.; cf. Omaha and Council Bluffs*

*Street Ry. Co. v. Interstate Commerce Comm'n,* 230 U.S. 324, 336, 33 S.Ct. 890, 57 L.Ed. 1501 (1913) (finding that street railroads were not part of a "general system of rail transportation" because "street railroads transport passengers from street to street, from ward to ward, from city to suburbs, but the commerce to which Congress referred was that carried on by railroads engaged in hauling passengers or freight between States, between States and Territories, between the United States and foreign countries" (internal quotation marks omitted)).

The Court's conclusion that the RLA is inapplicable to the NYCTA is further supported by the findings of the National Mediation Board ("NMB"), a body established in the RLA. *See* 45 U.S.C. § 152. The NMB has noted that it does not exercise jurisdiction over the NYCTA under the RLA. *See Metropolitan Transportation Authority,* 8 NMB 1 (1980).

Yang's RLA claim is dismissed.

### II. Constitutional Claims

As explained in the Court's previous opinion, the Court construes Yang's equal protection claim as one brought pursuant to 42 U.S.C. § 1983. *See Yang,* 2002 WL 576079, at *3 (citing 42 U.S.C. § 1983; *Pauk v. Bd. of Trustees of City Univ. of New York,* 654 F.2d 856, 865 (2d Cir.1981)).

The Court granted Yang "leave to amend his equal protection claim, to allege, if he [could], that the NYCTA intentionally discriminated against him because of his membership in a particular class." *Id.* Yang's amended complaint fails to remedy this defect in his pleadings. Instead, he engages in a rambling discussion of the Supreme Court's decision in *Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) and cites the Declaration of Independence for the proposition that "all men are created equal." Am. Compl. at 16. His equal protection claim is dismissed.

### CONCLUSION

The NYCTA's motion is granted and Yang's complaint is dismissed in its entirety. Even though Yang is a *pro se* plaintiff, the Court will not grant him leave to once again amend his complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [*pro se* plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *U.S. ex rel. Phipps v. Comprehensive Community Development Corp.,*

2002 WL 31399119

152 F.Supp.2d 443, 455–56 (S.D.N.Y.2001) (denying leave to amend where the court had determined that it did not have subject matter jurisdiction over plaintiff's claim and plaintiff could not "proffer[ ] any evidence to suggest that she could ... cure the [jurisdictional] deficiencies [of] her complaint"); *see also Anatian v. Coutts Bank Ltd.,* 193 F.3d 85, 89 (2d Cir.1999) (affirming district court's denial of leave to amend where plaintiffs made no attempt to seek leave to amend or make any showing as to how they might amend their complaint to cure their pleading deficiencies); *Advanced*

*Marine Tech. v. Burnham Sec ., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

**\*3** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 31399119

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.