UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AARON L. HIGHTOWER,

                       Plaintiff,

v.                                                1:19-CV-0577
                                                          (GTS/TWD)

SHAWN THORPE, Patrolman, Saratoga Springs
Police Dept.,

                       Defendant.
_____

APPEARANCES:

AARON L. HIGHTOWER, 17-A-3545
  Plaintiff, *Pro Se*
Fishkill Correctional Facility
Box 1245
Beacon, New York 12508

LAW OFFICES OF THERESA PULEO                NORAH H. MURPHY, ESQ.
  Counsel for Defendant
One Park Place, Suite 402
Albany, NY 12205

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

        Currently before the Court, in this *pro se* civil rights action filed by Aaron L. Hightower ("Plaintiff") against Saratoga Springs Police Department Patrolman Shawn Thorpe ("Defendant"), is Defendant's motion for summary judgment. (Dkt. No. 50.) For the reasons set forth below, Defendant's motion is granted.

**I.**     **RELEVANT BACKGROUND**

        **A.**     **Relevant Procedural History**

Following the Court's Decision and Order of April 28, 2020, four claims in Plaintiff's Amended Complaint survive against Defendant arising from his traffic stop of Plaintiff in the City of Saratoga Springs on December 18, 2015: (1) a claim for racial discrimination under 42 U.S.C. § 1981(a); (2) a claim for unreasonable search and seizure under 42 U.S.C. § 1983 and the Fourth Amendment; (3) a claim for false arrest arising under 42 U.S.C. § 1983 and the Fourth Amendment; and (4) a claim for malicious prosecution arising under 42 U.S.C. § 1983 and the Fourth Amendment.  (Dkt. No. 18.)

### B.     Summary of Parties' Arguments

Generally, in his motion for summary judgment, Defendant asserts seven arguments: (1) to the extent that any of Plaintiff's claims are based on Defendant's stop of Plaintiff's vehicle, those claims must be dismissed because, based on the current record, it is undisputed that Defendant's brief investigatory stop of Plaintiff's vehicle was based on reasonable suspicion that criminal activity might be afoot due to the manner in which Plaintiff was driving his vehicle; (2) to the extent that any of Plaintiff's claims are based on the blood sample taken from Plaintiff following his arrest, those claims must be dismissed because, based on the current record, it is undisputed that the search of Plaintiff's blood was based on his voluntary consent and (in the alternative) the existence of probable cause to arrest him for the crimes charged; (3) to the extent that any of Plaintiff's claims are asserted against Defendant in his official capacity, those claims must be dismissed because it is well settled that state officials acting in their official capacities are "persons" under 42 U.S.C. § 1983; (4) Plaintiff's claim for false arrest must be dismissed because, based on the current record, it is undisputed that probable cause existed to arrest him for the crimes charged due to (a) his admission having used alcohol and drugs prior to driving, (b)

2

his failure of field sobriety tests, and (c) the presence of both alcohol and marijuana in his blood at the time of his arrest; (5) Plaintiff's claim for malicious prosecution must be dismissed because based on the current record, it is undisputed that (a) probable cause existed for Defendant to believe that Plaintiff was guilty of the crimes charged, and (b) the dismissal of the charges against Plaintiff "in the interests of justice" does not constitute a favorable termination of the criminal proceeding against him; (6) in any event, Plaintiff's claims must be dismissed because, based on the current record, Defendant is protected from liability as a matter of law by the doctrine of qualified immunity; and (7) Plaintiff's claim for racial discrimination against Defendant must be dismissed because, based on the current record, no admissible record evidence exists that Plaintiff's race played any role whatsoever in the vehicle stop, search, arrest or prosecution of Plaintiff. (Dkt. No. 50, Attach. 8.)

In his response to Defendant's motion, Plaintiff fails to submit an opposition memorandum of law. (*See generally* Dkt. No. 53.)

In his reply to Plaintiff's response, Defendant asserts an attorney affidavit and no reply memorandum of law. (*See generally* Dkt. No. 54.)

  **C.**  **Statement of Undisputed Material Facts**

The following factual assertions have been asserted (and supported by specific citations to the record) by Defendant in his Statement of Material Facts, and either expressed admitted by Plaintiff or not expressly denied by him with a supporting citation to admissible record evidence, as required by Local Rule 56.1 of the District's Local Rules of Practice. (*Compare* Dkt. No. 50,

Attach. 9 [Def.'s Rule 56.1 Statement] *with* Dkt. No. 53, at 1-14 [Plf.'s Rule 56.1 Response].)[1]

1. Defendant was employed as a police officer by the Saratoga Springs Police Department on Friday, December 18, 2015.

2. On that date, Defendant was on patrol duty in the course of that employment.

3. More specifically, at approximately 3:47 a.m. on that date, Defendant was patrolling the area of Henry Street and Caroline Street in the City of Saratoga Springs, when he observed a grey Chevy SUV bearing Vermont registration GMH244 turn right from Henry Street onto Spring Street, and proceed in a westerly direction.[2]

4. Defendant then observed the Chevy SUV come to a stop at a red traffic signal at the intersection of Spring Street and Broadway.[3]

5. After the traffic signal turned green, the Chevy SUV turned right, when Defendant personally observed the Chevy SUV strike the curb.[4]

---

[1] The Court notes that, although Plaintiff has submitted a Statement of Additional Facts in Dispute, the Court finds none of those additional facts to be either material or supported by admissible record evidence sufficient to create a genuine dispute as to any of the facts asserted in Defendant's Statement. (*Compare* Dkt. No. 53, at 14-22 [Plf.'s Statement of Additional Facts *with* Dkt. No. 54, Attach. 1 [Def.'s Response Thereto].)

[2] (Dkt. No. 50, Attach. 4, at 1; Dkt. No. 53, at 26-27.)

[3] (Dkt. No. 50, Attach. 4, at 1.) Although Defendant denies this factual assertion, the purported record evidence he cites in support of his denial (Paragraph 11 of Plaintiff's Affidavit) does not exist. (Dkt. No. 53, at 26-28.) In any event, Defendant's factual assertion is supported by Paragraph 10 of Plaintiff's Affidavit. (*Id*. at 27-28.)

[4] Defendant also asserts that, as or after the Chevy SUV struck the curb, he personally observed the Chevy SUV drive up onto the sidewalk. (Dkt. No. 50, Attach. 4, at 1; Dkt. No. 50, Attach. 5, at 2.) In response to these two specific factual assertions, Plaintiff has asserted a general denial of any violation of the New York Vehicle and Traffic Law. (Dkt. No. 53, at 3 [citing, among other things, Paragraph 12 of Plaintiff's Affidavit, which states that, "[a]t all times while in the City of Saratoga Springs on 12/18/15, I operated the grey Chevy S.U.V. on

6. Defendant was behind the Chevy SUV as it continued to drive north on Broadway.

7. Defendant activated the emergency lights of his patrol car and pulled the Chevy SUV over as it was entering Division Street.[5]

8. Defendant observed the Chevy SUV enter the parking lot of the Saratoga Downtowner in response to the emergency lights.[6]

9. Defendant approached the driver side of the Chevy SUV and observed a male operating the vehicle, a female in the passenger seat and a male in the rear passenger seat.

---

full compliance of all New York State Vehicle and Traffic Laws"].) Although this general denial suffices to controvert the additional fact asserted by Defendant (which regards a violation of New York Vehicle and Traffic Law § 1225-a), it does not suffice to controvert the erratic driving that Defendant asserts he observed (to the extent it does not regard a violation of New York Vehicle and Traffic Law § 1225-a). Furthermore, even if Plaintiff's striking of the curb constituted a violation of another section of the New York Vehicle and Traffic Law, Plaintiff has not shown in Paragraph 12 of his affidavit that he possessed personal knowledge of any slight impact with the curb that could not be felt or heard. Moreover, even if Plaintiff did possess such personal knowledge, grounds exist to find this otherwise unsupported factual assertion incredible under *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005), given Plaintiff's contradictory admission to having smoked marijuana earlier that evening, and having tested positive for both alcohol and marijuana. (Dkt. No. 53, at 12-13 [Plf.'s Rule 56.1 Response, admitting Paragraphs 42 and 46 of Defendant's Rule 56.1 Statement].) The Court notes that the other purported evidence that Plaintiff cites in support of his denial (Paragraph 8 of his Affidavit and Paragraph 15 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact, regardless of whether Defendant included that Amended Complaint in support of his motion for purposes of any admissions by Plaintiff). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 9, 21.)

[5] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 9 of his Affidavit) is inapposite. (Dkt. No. 53, at 26.)

[6] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraphs 9 and 12 of his Affidavit) is inapposite. (Dkt. No. 53, at 26, 28.)

      10.      Defendant then asked the male driver for his license.[7]

      11.      Defendant identified the driver by his license to be Plaintiff.

      12.      Plaintiff stated to Defendant that he had consumed alcohol at 2:00 a.m.[8]

      13.      Defendant smelled a strong odor of an alcoholic beverage coming from Plaintiff's breath.[9]

      14.      Defendant observed that Plaintiff's speech was slow.[10]

      15.      Defendant observed that Plaintiff's eyes were bloodshot and glassy.[11]

---

[7] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraph 16 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 9, 21.)

[8] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit, Paragraph 38 of his Amended Complaint, and Exhibit 6 to the Affidavit of Norah M. Murphy) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 14, 21; Ex. 6 to Murphy Affid.) The Court notes that, in fact, Exhibit 6 reveals Plaintiff subsequently speaking with a male officer within earshot of the body camera microphone. (*See, e.g.,* Ex. 6 to Murphy Affid., First Video Clip, at Minute Marks 00:12-00:14, 00:27-00:36, and 15:26-15:49.)

[9] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraphs 38 and 39 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 14, 21.)

[10] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraph 38 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 29; Dkt. No. 50, at Attach. 2, at 14, 21.)

[11] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraphs 38 and 39 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 14, 21.)

16. Plaintiff stated to Defendant that he had been drinking Patron tequila and Bud Light beer and had switched to water in the last hour.[12]

17. Plaintiff stated to Defendant that he had smoked a blunt of marijuana at 1:00 a.m.[13]

18. Defendant smelled a strong odor of marijuana coming from the vehicle.[14]

19. Ptl. Brittany Kolomeits of the Saratoga Springs Police Department responded to the scene of the traffic stop, and also smelled an odor of marijuana coming from the vehicle.[15]

20. Ptl. Matthew Miller of the Saratoga Springs Police Department responded to the

---

[12] The purported evidence that Plaintiff cites in support of his denial of this fact (Exhibit 6 to the Affidavit of Norah M. Murphy) does not controvert the fact. (Ex. 6 to Murphy Affid.) The Court notes that, in fact, Exhibit 6 reveals Plaintiff subsequently speaking with a male officer within earshot of the body camera microphone. (*See, e.g.,* Ex. 6 to Murphy Affid., First Video Clip, at Minute Marks 00:12-00:14, 00:27-00:36, and 15:26-15:49.)

[13] *See, supra,* note 12 of this Decision and Order.

[14] In support of his denial of this fact, Plaintiff cites (among other things) Paragraph 13 of his Affidavit, stating that "[a]t no time did I possess any marijuana in the vehicle I had operated in the City of Saratoga Springs on 12/18/15, and there wasn't any marijuana found in the vehicle I had operated while Defendant Shawn Thorpe and PTL Miller searched every compartment." (Dkt. No. 53, at 28.) However, the fact that Plaintiff had not possessed any marijuana in the vehicle, and that no marijuana was found in the vehicle, in no way controverts the fact asserted (which regards the odor that Defendant smelled coming from the vehicle). This is especially true given that Plaintiff and/or the other two passengers in the vehicle could well have consumed all of the marijuana before the traffic stop, thus giving the vehicle a strong odor of it. The other purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraphs 38 and 39 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 14, 21.)

[15] *See, supra,* note 14 of this Decision and Order. The Court notes that Plaintiff's additional reliance on Paragraph 14 of his Affidavit (stating that the other officers "contrived . . . to assist Defendant Shawn Thorpe") is misplaced because, setting aside the fact that the assertion is both vague and based on a lack of personal knowledge, the assertion states nothing about the reports of those officers being false. (Dkt. No. 53, at 28.)

scene of the traffic stop, and also smelled a strong odor of marijuana coming from the vehicle.[16]

21.     Defendant requested that Plaintiff exit the vehicle to perform Standardized Field Sobriety Testing (SFST), including Horizontal Gaze Nystagmus Test (HGN), Walk and Turn Test (WAT) and the One Leg Stand Test (OLS), and Plaintiff complied with this request.

22.     Defendant observed nystagmus in Plaintiff's eyes in all phases of the HGN test.[17]

23.     Defendant observed that Plaintiff could not maintain his balance and stepped off the line during the WAT test.[18]

24.     Ptl. Thorpe observed that Plaintiff used his arms away from his sides for balance, did not raise his foot above three inches, and had to put his foot down three times during the OLS test.[19]

25.     Plaintiff voluntarily took the prescreen breathalyzer test, which showed a positive

---

[16]     *See, supra,* note 15 of this Decision and Order.

[17]     The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraphs 19 and 38 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 9-10, 14, 21.)

[18]     *See, supra,* note 17 of this Decision and Order. The Court notes that Plaintiff's additional reliance on Paragraph 39 of his Amended Complaint and Exhibit 6 to the Affidavit of Norah M. Murphy is misplaced because, again, the Amended Complaint is not verified, and Exhibit 6 does not show the sobriety test. Indeed, at one point, Exhibit 6 reveals a male officer saying to Plaintiff, "You all right? Don't hurt yourself. What's your question?" (Ex. 6 to Murphy Affid., First Video Clip, at Minute Marks 15:22-15:26.)

[19]     *See, supra,* note 18 of this Decision and Order.

BAC result.[20]

26.     Defendant requested Plaintiff's consent to search the vehicle.

27.     Plaintiff expressly consented to the search of his vehicle by replying to Defendant, "[Y]es."[21]

28.     Plaintiff informed Defendant at this time that he would find a small plastic bag of marijuana in the center console area.[22]

29.     Defendant and Saratoga Springs Police Department Ptl. Miller conducted the search of Plaintiff's vehicle.

30.     In the course of the search of the vehicle, Ptl. Miller observed in plain sight a small plastic Ziploc bag containing a white powder like substance that field-tested positive for cocaine.[23]

---

[20]     The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraphs 38, 39 and 40 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 14-15, 21.)

[21]     The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit, Paragraphs 23 and 24 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 10-11, 21; Ex. 6 to Murphy Affid.)

[22]     The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit, Paragraphs 38 and 39 of his Amended Complaint, and Exhibit 6 to the Affidavit of Norah M. Murphy) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 14, 21.) The Court notes that and Exhibit 6 appears to start after this reply (i.e., as the search is beginning or resuming). (Ex. 6 to Murphy Affid., First Video Clip, at Minute Marks 00:01-02:16.)

[23]     The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraphs 8, 13 and 14 of his Affidavit, and Paragraph 38 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting

31.     The Ziploc bag containing the cocaine was in an immediate reachable area of the vehicle for all three occupants to have possessed the cocaine.[24]

32.     In the course of the search of the vehicle, Ptl. Miller found two straws, which he identified as being commonly used to inhale powdered narcotics, in the driver door compartment.[25]

33.     Defendant thereafter arrested Plaintiff and charged him with a violation of New York Vehicle and Traffic Law § 1192-3 (misdemeanor driving while intoxicated) and New York Penal Law § 220.03 (misdemeanor possession of a controlled substance).[26]

34.     Plaintiff was also thereafter charged with a violation of New York Vehicle and Traffic Law § 1192-4 (misdemeanor driving while ability impaired by drugs) and a violation of New York Vehicle and Traffic Law § 1225-a (driving on sidewalk).

35.     At the Saratoga Springs Police Department at 4:57 a.m., Defendant read Plaintiff the standard NY Refusal Warnings and requested that Plaintiff submit to a chemical test of his blood for alcohol and drugs, to which Plaintiff replied, "[Y]es," providing his consent to the

---

this fact).  (Dkt. No. 53, at 26, 28-29; Dkt. No. 50, at Attach. 2, at 14, 21.)

[24]     *See, supra,* note 23 of this Decision and Order.

[25]     The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraphs 8, 13 and 14 of his Affidavit) is inapposite.  (Dkt. No. 53, at 26, 28-29.)

[26]     The purported evidence that Plaintiff cites in support of his denial of the fact that his arrest occurred after Ptl. Kolomeits' arrival at the scene (Paragraph 8 of his Affidavit, and Paragraph 27 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact).  (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 11, 21.)

chemical tests.[27]

36. At 4:59 a.m., Defendant read Plaintiff his *Miranda* warnings, to which Plaintiff replied, "Yes" and "Yeah."

37. Plaintiff signed a Consent Form and a Your Constitutional Rights Form, acknowledging his consent to the chemical tests and his waiver of his *Miranda* rights.[28]

38. Plaintiff's blood test was taken at the Saratoga Hospital.

39. Ptl. Miller transported Plaintiff to and from the Saratoga Hospital for the blood draw.

40. While transporting Plaintiff, Ptl. Miller smelled the odor of an alcoholic beverage on Plaintiff's breath, observed that Plaintiff's speech was slowed, observed that Plaintiff's eyelids were droopy, and observed that Plaintiff's eyes were glassy and bloodshot.[29]

---

[27] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit, and Paragraphs 31 and 32 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 12, 21.)

[28] (Dkt. No. 50, Attach. 4, at 2; Dkt. No. 50, Attach. 5, at 9-11.) The purported evidence that Plaintiff cites in support of his denial of this fact (Defendant's Exhibits 1 through 6) do not controvert this fact. Indeed, portions of Exhibits 3 and 4 support the fact. (*Id*.) Moreover, although Plaintiff denies "receiving receipt [sic] of the Refusal Warnings" after he signed his Consent Form (Dkt. No. 53, at 11 [citing Paragraph 15 of his Affidavit, stating, "After I signed the consent to my blood drawn, . . . I did not receive receipt [sic] of any Refusal warnings"]), he has already effectively admitted that, *before* he signed the Consent Form, he had been read the standard NY Refusal Warnings (*see, supra,* Statement of Fact No. 35). As a result, the Court has omitted as immaterial Defendant's factual assertion that Plaintiff's signing of the Consent Form constituted an acknowledgment of "his receipt of the Refusal . . . warnings." (Dkt. No. 50, Attach. 9, at ¶ 38.)

[29] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraphs 13 and 14 of his Affidavit) is inapposite. (Dkt. No. 53, at 28-29.) Paragraph 13 of his affidavit regards marijuana (not alcohol), and Paragraph 14 is vague, lacks personal knowledge, and states nothing about the report relied on by Defendant being false. (*Id*.)

41. Plaintiff admitted to Ptl. Miller that he had smoked marijuana earlier that evening.

42. While processing plaintiff at the Saratoga Springs Police Department, Ptl. Kristin VanWert smelled a strong odor of an alcoholic beverage emanating from Plaintiff's breath, and observed that his eyes were bloodshot and glassy.[30]

43. The cocaine found in the vehicle weighed .2 grams.[31]

44. The blood sample from Plaintiff was sent to the New York State Police Crime Laboratory for analysis for alcohol, cocaine and marijuana.

45. The test results from Plaintiff's blood sample tested positive for alcohol and marijuana.

46. Plaintiff was subsequently arrested by the New York State Police on February 15, 2016, and charged with felony and misdemeanor offenses including possession of a controlled substance, criminal possession of a weapon, tampering with evidence, resisting arrest and unlawful possession of Marijuana. As of the date of Plaintiff's trial in the Saratoga Springs City Court on the charges from the December 2015 arrest, he was being held in Warren County on the New York State Police charges.[32]

47. On July 26, 2016, the charges filed by City of Saratoga Springs against Plaintiff

---

[30] *See, supra,* note 29 of this Decision and Order.

[31] The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraph 8 of his Affidavit and Paragraph 38 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26; Dkt. No. 50, at Attach. 2, at 14, 21.)

[32] The Court has eliminated Defendant's factual assertion that Plaintiff was being held "without bail," because it is of little if any materiality, and because Plaintiff has adduced admissible record evidence that his bail had been "later reduced" after being "set." (Dkt. No. 53, at 13 [citing Paragraph 16 of Plaintiff's Affidavit].)

were dismissed in the interests of justice.[33]

48.     The fact that the Plaintiff is an African-American was not a conscious factor in any action Defendant took or decision he made in the course of investigating this incident or in the subsequent arrest of Plaintiff.[34]

## II.    GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

---

[33]     (Dkt. No. 50, Attach. 6.) Defendant has also asserted (and adduced admissible record evidence) that the above-referenced charges were dismissed because of Plaintiff's subsequent arrest and incarceration. (Dkt. No. 50, Attach. 9, at ¶ 48 [citing Paragraph 7 of Def.'s Affid.].) However, Plaintiff has adduced admissible record evidence suggesting that these charges were dismissed for lack of supporting evidence. (Dkt. No. 53, at 14 [citing Paragraphs 13 and 17 of Plaintiff's Affidavit].) Granted, Plaintiff's evidence does not squarely controvert this additional factual assertion and in fact conflicts with various undisputed facts asserted in this part of the Decision and Order (as well as evidence Plaintiff himself submission in opposition to Defendant's motion). (*See, e.g.,* Dkt. No. 56, at 77-80.) However, the Court has omitted this additional factual assertion of Defendant because it is of little materiality, given the Supreme Court's decision in *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022) ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction."), and the undisputed existence of evidence against Plaintiff.

[34]     The purported evidence that Plaintiff cites in support of his denial of this fact (Paragraphs 8, 13 and 14 of his Affidavit and Paragraphs 12-21, 23-25, 27-29, 38-40 and 43 of his Amended Complaint) is either inapposite or not verified (and thus does not constitute admissible record evidence controverting this fact). (Dkt. No. 53, at 26, 28-29; Dkt. No. 50, at Attach. 2, at 14, 21.)

13

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[35] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[36] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[37]

---

[35] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[36] *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[37] *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[38]–even where the non-movant was proceeding *pro se*.[39]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consent[ed]" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[40] Stated another way, when a non-movant fails to oppose a legal argument

---

[38] Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[39] *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

[40] *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's

asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### III.   ANALYSIS

After carefully considering the matter, the Court accepts each of the arguments asserted in Defendant's memorandum of law for the reasons stated therein (*see, supra,* Part I.B. of this Decision and Order), *except* the second part of their fifth argument (that the dismissal of the charges against Plaintiff "in the interests of justice" constitutes a favorable termination of the criminal proceeding against him) and their sixth argument (that Defendant is protected from liability as a matter of law by the doctrine of qualified immunity).[41]  To those reasons, the Court adds only four points, which are intended to supplement and not supplant Defendant's reasons.

First, although the Court has afforded Plaintiff special solicitude in construing his responsive papers, such solicitude has its limits. Here, the Court has assured itself that, before

---

failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[41]     The reason the Court rejects the second part of Defendant's fifth argument is the Supreme Court's recent decision in *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). *See, supra,* note 33 of this Decision and Order. The reason the Court rejects Defendant's sixth argument is that treading onto the often-disputed ground of qualified immunity here would be unnecessary (given the lack of any underlying constitutional violation).

filing his responsive papers, Plaintiff clearly had received adequate notice of the consequences of failing to comply with the Local Rule 56.1 of the District's Local Rules of Practice. For example, setting aside the fact that courtesy copies of the District's Local Rules of Practice and *Pro Se* Handbook were on file at Great Meadow Correctional Facility when Plaintiff filed his responsive papers, Defendant included in his motion papers adequate notice of those consequences. (Dkt. No. 50, at 1-2.) Moreover, Plaintiff's Response to Defendant's Statement of Facts is structured in matching numbered paragraphs and followed by a Statement of Additional Material Facts in Dispute, all of which contain (or attempt to contain) citations to accompanying record evidence (demonstrating Plaintiff's familiarity with Local Rule 56.1). (*See generally* Dkt. No. 53.) Nonetheless, Plaintiff's responsive papers are deficient in at least two respects: (1) they fail to include an opposition memorandum of law; and (2) the evidence cited in support of their factual assertions often is either inapposite or inadmissible. (*See generally* Dkt. No. 53.) Although the Court has excused the first deficiency and not treated Defendant's legal arguments as unopposed (out of special solicitude to Plaintiff as a *pro se* civil rights litigant), the Court cannot excuse the second deficiency. The Court has no duty to *sua sponte* scour the record in search of a genuine dispute of material fact; and, even if it were to do so, it is confident that it would find none (other than those it has found and recognized during its ordinary review of the record).

Second, Plaintiff's claim for unreasonable search and seizure is clearly without merit regardless of what particular search he is challenging. More specifically, based on the current record, it is indisputable that Defendant possessed the minimal justification necessary to conduct a routine traffic stop of Plaintiff based on Defendant's personal observation of Plaintiff's SUV

striking a curb during a right turn at a late hour of night (regardless of whether that impact constituted a violation of the New York Vehicle and Traffic Law and regardless of whether Plaintiff felt or heard that impact). *See, supra,* Fact No. 5 in Part I.C. of this Decision and Order.[42] It is also indisputable that Defendant had probable cause to search Plaintiff's vehicle based on the statements voluntarily made by Plaintiff, and Defendant's personal observations of Plaintiff. *See, supra,* Fact Nos. 12-25 in Part I.C. of this Decision and Order. Alternatively, it is indisputable that Defendant had probable cause to search Plaintiff's vehicle based on Plaintiff's consent to that search. *See, supra,* Fact Nos. 26-27 in Part I.C. of this Decision and Order.[43] Finally, it is indisputable that Defendant had probable cause to search Plaintiff blood based on the evidence obtained before that search. *See, supra,* Fact Nos. 12-25 and 28-32 in Part I.C. of this Decision and Order. Alternatively, it is indisputable that Defendant had probable cause to

---

[42] *See New York v. Ingle*, 369 N.Y.S.2d 67, 74 (N.Y. 1975) ("It should be emphasized that the factual basis required to support a stop for a 'routine traffic check' is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. . . . All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity."); *New York v. Sherwood*, 555 N.Y.2d 464, 466 (N.Y. App. Div., 3d Dep't 1990) ("Nor was evidence of a violation of the Vehicle and Traffic Law required before the stop . . . because Trooper Cason had himself observed defendant's erratic driving."); *accord, New York v. Vici,* 936 N.Y.S.2d 60, at *2 (N.Y. App. Div., 2d Dep't 2011) ("Even where an actual violation of the Vehicle and Traffic Law [is] not . . . detectable . . . , a stop based on considerations of public safety may be warranted . . . . Defendant's erratic driving provided sufficient justification for the initial stop of defendant's vehicle . . . .") (internal quotation marks and citations omitted); *New York v. Lochan*, 885 N.Y.S.2d 712, at *4 (Sup. Ct., Queens Cnty. 2009) ("Sergeant Summa testified that he was prompted to stop the defendant's car when he saw it swerve 'on a narrow one-way street . . . especially at that hour of the night . . . with vehicles parked on both sides of the street.' While none of these observations constitute a traffic violation, the Court of Appeals has recognized that police officers are duty bound to stop motorists who, by the way they drive, present a threat to public safety even in the absence of an actual violation of the Vehicle and Traffic Law . . . .") (internal citations omitted).

[43] At the very least, Defendant could perform a post-arrest inventory search of Plaintiff's vehicle before it was moved to a legal parking spot.

18

search Plaintiff's blood based on consent. *See, supra,* Fact Nos. 35-37 in Part I.C. of this Decision and Order.

Third, Plaintiff's claims for false arrest and malicious prosecution are also clearly without merit. Based on the current record, it is indisputable that probable cause existed to arrest and prosecute him for misdemeanor driving while intoxicated (in violation of New York Vehicle and Traffic Law § 1192-3), misdemeanor possession of a controlled substance (in violation of New York Penal Law § 220.03), and/or misdemeanor driving while ability impaired by drugs (in violation of New York Vehicle and Traffic Law § 1192-4). *See, supra,* Fact Nos. 12-32 in Part I.C. of this Decision and Order. The fact that the charges were subsequently dismissed against him "in the interests of justice" does not change this fact.

Fourth and finally, Plaintiff's claim for racial discrimination is without merit for the additional reason that he has not adduced any admissible evidence of any racial animus by Defendant, for example, in the form of race-based comments by Defendant or unequal treatment of Plaintiff as compared to Caucasian motorists.

For all of these reasons, the Court must, and does, grant Defendant's motion.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 50) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 10) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of Court shall enter a Judgment for Defendant and close this action.

Date: August 17, 2022
      Syracuse, New York

                                        Hon. Glenn T. Suddaby
                                        Chief U.S. District Judge